## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Bruce Exum, Jr. and Emilie Palmer, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>National Tire and Battery and TBC Corporation,<br><br>                              Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## <u>INTRODUCTION</u>

1.      Plaintiffs, Bruce Exum, Jr. ("Mr. Exum") and Emilie Palmer ("Ms. Palmer"), bring this action on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, against Defendants, National Tire and Battery and TBC Corporation, and for their Complaint allege the following based upon their personal knowledge as to allegations regarding themselves, and on information and belief or the investigation of their attorneys as to all other allegations:

2.      Defendants, National Tire and Battery ("NTB") and TBC Corporation ("TBC") are independent tire dealers/distributors, meaning their business is not owned or controlled by a tire manufacturer or brand name owner ("Independent Tire Dealer").   *See* 49 C.F.R. § 574.3(c)(1). Class Members are Plaintiffs and others who purchased tires from Defendants.

3.     This class action seeks monetary damages, restitution, injunctive and declaratory relief from Defendants arising from its willful failure to register or otherwise provide federally required tire-registration forms to Class Members who purchased tires from Defendants.

4.     As explained more fully below, federal law requires that, for each tire sold, Independent Tire Dealers like Defendants must either (1) provide the tire purchaser with a paper tire-registration form containing the Independent Tire Dealer's contact information and the entire, federally mandated tire identification number ("TIN") of each tire sold, so that the purchaser can add his or her name and contact information to the tire-registration form and send it to the tire manufacturer, or (2) transmit that information directly to the tire manufacturer for the purchaser, either in paper form or electronically. [1]  See 49 C.F.R. § 574.8.

5.     In the event of a safety recall, this federally-required information plays a crucial role, because it enables the tire manufacturer to fulfill its statutory mandate to promptly notify the tire owner of that recall by first-class or certified mail, so that the consumer can replace his or her defective tires with non-defective tires.

---

[1] Unlike Independent Tire Dealers, tire dealers and distributors controlled by a manufacturer or brand name owner are required to directly register newly purchased tires for the consumer and to forward the registration information to the tire manufacturer. 49 C.F.R. § 574.8(b).

6.     If the tire manufacturer does not have a consumer's name and address, the tire manufacturer cannot reach the consumer to notify him or her in case of a recall, which exposes consumers to injury or death.

7.     During the Class Period[2] (defined below), Defendants sold millions of tires to Class Members without registering those tires with the tire manufacturer or providing Class Members with the tire-registration forms necessary to enable them to register the tires themselves.

8.     Defendants' conduct spared its tire sales personnel from taking the extra few moments required to comply with federal law, freeing up those sales personnel to sell more tires.  Defendants were unjustly enriched by the sales it made during the time it would have taken to register Class Members' tires with the tire manufacturer or provide Class Members with the tire-registration forms.

9.     This dangerous practice has exposed and continues to expose Class Members to harm, and deprives them of the full benefit of their tire purchases. For example, Class Members were harmed because they received only part of what they paid for.  More specifically, when buying tires, Class Members not only pay for the tires, but also pay the cost of Defendants' compliance with federal law, which enables tire makers to be able to reach them in the event of a tire recall.

---

[2] The Class Period shall encompass all sales of tires by Defendants from October 1, 2012 through the present.

10.     Defendants' failure to comply with the tire registration requirements constitutes a misrepresentation that those tire sales comply with federal law, when they do not.

11.     Alternatively, non-registration constitutes an actionable representation by omission because it leaves Class Members with the false impression that they can be reached by the tire manufacturer in the event of a safety-related recall.

## PARTIES

12.     Plaintiff Bruce Exum, Jr. is a resident of Virginia Beach, Virginia. Plaintiff purchased tires from NTB during the class period.

13.     Plaintiff Emilie Palmer is a resident of Virginia Beach, Virginia. Plaintiff purchased tires from NTB during the class period.

14.     Defendant National Tire and Battery ("NTB") is a Delaware corporation with a principal place of business at 4280 Professional Center Dr., Suite 400, Palm Beach Gardens, Florida. NTB is a wholly owned subsidiary of Defendant TBC Corporation. NTB – directly and/or through its subsidiaries, which it wholly owned and/or controlled – sold tires to consumers throughout the United States, including in this District, during the Class Period. Upon information, NTB's failure to follow the tire-registration rule when it sold tires to Plaintiffs was either (1) the result of a corporate decision made at Defendants' Florida headquarters, or (2) the result of a corporate failure to investigate and monitor whether Defendants' local retail stores were following the federal rule, and if not, why not

15.     Defendant TBC Corporation ("TBC") is a Delaware corporation with a principal place of business at 4300 TBC Way, Palm Beach Gardens, Florida. The TBC

Retail Group does business under the trade names Tire Kingdom, NTB, Merchant's Tire and Auto Centers and Big O Tire. NTB maintains and operates more than 1200 locations in 41 states, and Washington DC, Alberta & British Columbia, Canada. TBC – directly and/or through its subsidiaries, which it wholly owned and/or controlled – sold tires to consumers throughout the United States, including in this District, during the Class Period. Upon information, TBC's failure to follow the tire-registration rule when it sold tires to Plaintiffs was either (1) the result of a corporate decision made at Defendants' Florida headquarters, or (2) the result of a corporate failure to investigate and monitor whether Defendants' local retail stores were following the federal rule, and if not, why not.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) because: (1) this is a class action involving more than 100 class members; (2) some members of the proposed Classes are citizens of a state different from the Defendants; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

17.     Alternatively, this Court has subject-matter jurisdiction because of Plaintiffs' claims arising under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.

18.     This Court has personal jurisdiction over Defendants because Defendants conduct significant business in Florida. Defendants voluntarily submitted to the jurisdiction of Florida when they engaged in substantial business activities in Florida and purposefully directed their actions towards Florida.

531384.3                                5

19.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants are believed to maintain records in this District relevant to their stores' compliance or noncompliance with the federal tire-registration requirement; and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### Ineffective recalls are causing death and injury to consumers

20.     Tires are among the most important components on a vehicle. They are expected to be durable and versatile enough to maintain friction through thousands of acceleration, braking, and turning events under varying weather conditions, such as snow and rain.

21.     According to data published in the *Modern Tire Dealer*, a leading industry publication, in 2013, the tire industry shipped 278.3 million new tires for passenger vehicles and light trucks.[3] That total included 44 million original equipment tires for new passenger vehicles and 201.6 million replacement tires for passenger vehicles. Another 4.4 million original equipment tires and 28.3 million replacement tires were shipped for light trucks. In 2016, the tire industry was estimated to be a $ 38.1 billion industry, as illustrated below.[4]

---

[3] *MTD* is a periodical publication (available in digital and print formats) intended to "ensure that independent tire dealers and their suppliers succeed." *See* http://mediakit.moderntiredealer.com/Default.aspx, accessed July 23, 2018.

[4] *See* http://www.moderntiredealer.com/uploads/stats/mtd-51st-facts-1.pdf, last accessed May 18, 2018.



22.     Quality and durability of tires have been improving throughout time. Nevertheless, tire-related crashes still occur regularly. In 2013, a total of 539 people died in passenger vehicle tire-related crashes in the United States. From 2007 to 2012, about 33,000 tire-related crashes occurred annually, resulting in about 19,000 injuries each year, according to the National Transportation Safety Board ("NTSB").[5]

23.     In 2014, the NTSB launched a special investigation following four tire-related accidents in Florida, Louisiana, Arizona and California that killed 12 people and injured 42 others. The board found that only one in five defective tires was being taken out of service via recall. More than half of recalled tires remained in use.

24.     A 2015 NBC News report regarding unregistered tires provided examples of motor vehicle fatalities that occurred while operating vehicles with recalled, unregistered tires.

---

[5] NTSB Special Report at 1.

25.    These accidents include a multi-passenger van that crashed in Lake City, Florida in 2014.  In that crash, the driver thought he might have an issue with a tire, but since the defect was internal, he couldn't find the problem and kept driving. The tire failed and the van flipped over. Two passengers were killed, and eight were injured:



26.    The tire in the Florida crash had been recalled more than a year earlier because of an internal defect, but had not been registered with the tiremaker.

27.    In a second such accident in 2014, a woman was killed and her husband gravely injured after a recalled tire blew out on a pickup truck and forced their SUV off the road on Interstate 95 in South Carolina:



28.     The couple's son alleged in a lawsuit that the South Carolina accident was caused by a tire that had been recalled by Michelin, without the knowledge of the pickup truck's owner or driver.

29.     A lawsuit in 2015 over defective tires sold by a tire store in North Carolina revealed that the tires at issue were not registered. As a result, one person died and others suffered permanent, disabling injuries that were caused by the defective tires. Through discovery, the plaintiffs found the tire store never provided the purchasers in their case with registration cards or registered their tires, nor had it provided forms or registration to *any* of their customers for years until the lawsuit.  Because of the store's failure to comply with the law, when the tire manufacturer, Michelin North America, Inc., issued a recall of the tires, the notices could not reach the victims in time.  Consequently, the tires caused fatal and disabling injuries to the victims.

30.     These examples illustrate how consumers are exposed to foreseeable harm and injury by Defendants' unlawful practice, described below, of selling unregistered tires without providing registration cards.

31.     As referenced above, though 3.2 million tires were recalled between 2009 and 2013, most of the drivers using them were unaware of the recalls.[6]

32.     Federal regulations require that each tire manufacturer compile a list of individuals or entities that have purchased its tires, so tire manufacturers can contact these individuals and entities in the event of a recall. *See* 49 C.F.R. § 574.7.

---

[6] NTSB Special Report at 11.

9

33.     Under normal circumstances, this list is compiled through the process of tire registration, which plays the most vital role in the recall process, because, without it, tire manufacturers cannot identify and notify a tire purchaser in the event of a safety recall.[7]

34.     Federal investigators have determined that the failure of Independent Tire Dealers to comply with the federal tire registration law is a major contributor to the ineffectiveness of tire recalls.[8] For example, in 2015, the NTSB reported that only about 20 percent of affected tires are returned to the manufacturer in a typical tire recall.[9] NTSB also reported that while manufacturer-controlled tire dealers registered nearly all the tires they sold, only about 10% of tires sold by Independent Tire Dealers are registered.

35.     As alleged above, an Independent Tire Dealer is "one whose business is not owned or controlled by a tire manufacturer or brand name owner." 49 C.F.R. § 574.3(c)(1). Defendants are an Independent Tire Dealer.  As Independent Tire Dealers, Defendants are, in relevant part, required to do one of the following each and every time they sell tires:

> **(a)** provide each tire purchaser with a paper tire registration
>
> form[10] to send to the tire manufacturer at the consumer's
>
> expense, on which the Independent Tire Dealer has recorded
>
> the entire TIN of each tire sold or leased to the tire purchaser,
>
> along with the Independent Tire Dealer's contact information.

---

[7] *Id.* at 12.

[8] *Id.* at 15.

[9]     https://www.ntsb.gov/news/press-releases/Pages/PR20151027.aspx;     NTSB Special Report at 19.

[10] Paper tire registration forms must comply with 49 C.F.R. § 574.7(a).

The tire purchaser needs to add his or her name and address to the form and mail it to the tire manufacturer or the tire manufacturer's designated agent to complete the tire registration process;

**(b)** record the following information on a paper tire-registration form and return that form to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within a specified time period (generally 30 days): (i) the tire purchaser's name and address, (ii) the entire TIN of each tire sold or leased to the tire purchaser; <u>or</u>

**(c)** electronically transmit the following information to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within a specified time period (generally 30 days): (i) the tire purchaser's name and address, (ii) the entire TIN of each tire sold or leased to the tire purchaser. Independent Tire Dealers who chose option No. 3 must include a statement to that effect on the invoice and provide the invoice to the tire purchaser.

36.     Through lobbying by industry trade groups (which opposes a more robust tire-registration system), the federal tire-registration system imposes a responsibility on Independent Tire Dealers that does not take much for Defendant to fulfill: Defendants' personnel could have jotted down the TIN from each tire sold on a piece of paper or entered

it into a computer, added some contact information, and either handed the form to the consumer to mail his or herself, or transmitted that information to the tire manufacture for the consumer. Alternately, there are many other ways that Defendant could have chosen to comply with the statutory requirements.

37.     Nonetheless, Defendant has chosen to willfully refuse to comply with these very minimal requirements in order so that its sales personnel can spend those extra few moments selling more tires.

38.     Collectively, Defendants' decision to sell, rather than register, more tires has put and continues to put the health and welfare of each and every Class Member at risk, because, as the tire-registration form Defendants have chosen **not** to give class members plainly warns "IMPORTANT" . . .   "In case of a recall, we can reach you only if we have your name and address."    574.7(a)(2)(iii)(B)(1)-(2) (all caps in prescribed by statute).

39.     The purpose of this lawsuit is to remedy the harm done to Class Members by Defendants' dangerous practice of ignoring this fundamental safety regulation, and to obtain injunctive relief requiring Defendant to comply with federal tire-registration law in the future.

***Facts specific to named Plaintiffs Bruce Exum, Jr. and Emilie Palmer***

40.     Plaintiff Bruce Exum, Jr. is a resident of Virginia Beach, Virginia.

41.     Plaintiff Emilie Palmer is a resident of Virginia Beach, Virginia.

42.     On January 8 and January 9, 2019, Mr. Exum bought tires from an NTB store in Virginia Beach, Virginia and was not handed a tire-registration form, nor does Mr.

Exum's invoice indicate that NTB transmitted the federally-required information directly to the tire manufacturer.

43.     On January 4, 2019, Ms. Palmer bought tires from an NTB store in Virginia Beach, Virginia and was not handed a tire-registration form, nor does Ms. Palmer's invoice indicate that NTB transmitted the federally-required information directly to the tire manufacturer.

44.     As a result, Defendant has failed to provide the information necessary to let the tire manufacturer know Mr. Exum and Ms. Palmer are purchasers of its tires.

45.     When Mr. Exum and Ms. Palmer purchased the tires from NTB, they paid and expected to be reachable if such representations are no longer accurate and if the tires are recalled by the manufacturer.

46.     Mr. Exum's and Ms. Palmer's situations are typical and representative of millions of consumers who bought tires from independent tire retailers such as Defendant, without being provided with registration cards or having the tires registered for them, in violation of federal law.

## CLASS ALLEGATIONS

47.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs seek to represent the following classes:

(a) The "**Nationwide Class**," which consists of: All consumers in the United States and its territories who purchased a tire from Defendant or their subsidiaries during the class period for their personal use, rather than for resale or distribution, without being provided with a registration card. Excluded from the Nationwide Class are Defendants' current or former officers, directors, employees, Defendants' parents, any entity in which

Defendant has a controlling interest; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

(b) The "**Virginia Subclass**," which consists of: All consumers within the State of Virginia who purchased a tire from the Defendant or their subsidiaries during the class period for their personal use, rather than for resale or distribution, without being provided with a registration card. Excluded from the Virginia Subclass are Defendants' current or former officers, directors, employees, Defendants' parents, any entity in which Defendant has a controlling interest; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

48.     Should the Court decide not to certify the Nationwide Class described above, Plaintiffs seek certification of state Subclasses corresponding to Class members' state of residency.

49.     Plaintiffs reserve the right to expand, limit, modify, or amend these class definitions, including the addition of more subclasses, in connection with his motion for class certification, or any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

50.     The members of the Classes are so numerous that joinder is impractical. While the exact number of class members is presently unknown to Plaintiffs, based on Defendants' volume of sales, Plaintiffs estimate each class numbers in the thousands.

51.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants engaged in unfair, unlawful, or fraudulent business practices under states' consumer protection law;

(b) Whether Defendants misrepresented and/or failed to disclose material facts about their tire-registration process;

(c) Whether Defendants have made false or misleading statements of fact concerning the existence of its tire registration process;

(d) Whether Defendants' conduct, as alleged herein, was intentional and knowing;

(e) Whether Class members are entitled to damages and/or restitution, and in what amount;

(f) Whether Defendants are likely to continue using false or misleading sales of unregistered tires such that an injunction is necessary; and

(g) Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

52.     Plaintiffs' claims are typical of the claims of the members of the Classes because he, like all members of the Classes, purchased tires from Defendant while Defendant made either (1) a false representation to them that the tires were safe, when in fact they were not safe because they were not registered, or (2) a half-truth or omission by leaving Plaintiffs with the false impression that the tire manufacturer would be able to reach them in the event of a safety-related recall.   Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

53.     Plaintiffs will fairly and adequately represent and protect the interests of the members of each Class. Plaintiffs do not have any interests which are adverse to those of the class members. Plaintiffs have retained competent counsel experienced in class-action litigation and intends to prosecute this action vigorously.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are significant, the individual damages

531384.3

15

incurred by each member of the Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

55.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

56.     The conduct of Defendant is generally applicable to the Classes as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Classes as a whole. As such, the systematic policies and practices of Defendant make declaratory relief appropriate.

## **FIRST CAUSE OF ACTION**

**Breach of the Implied Warranty of Merchantability**
**Va. Code Ann. § 8.2–314 *et seq.***

57.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

58.     Defendants are "merchant[s]" as defined under the VUCC.

59.     The unregistered tires are "goods" as defined under the VUCC.

60.     Defendants impliedly warranted that the unregistered tires were of a merchantable quality.

61.     Defendants breached the implied warranty of merchantability because consumers were harmed by being exposed to high risk of injury without their knowledge or consent when they purchased tires that were unregistered.

62.     During the Class Period, Defendants marketed, sold, or distributed unregistered tires in Virginia by engaging in the acts and practices described above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, have made the tires purchased by Plaintiffs and the other Class members not "fit for the ordinary purposes for which such goods are used."   Va. Code Ann. § 8.2–314(2)(c).

63.     Plaintiffs and Class Members' interactions with Defendants suffice to create privity of contract between Plaintiffs and Class Members, on the one hand, and Defendants, on the other hand.

64.     Plaintiffs and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

65.     Defendants knew that they were required to follow federal law governing tire registration.

66.     Defendants' unlawful conduct had the following effects: Plaintiffs and Class members were not provided with any registration cards as required by federal law, could not be reached by manufacturers when tires were recalled by manufacturers, and were not made aware of their rights to replace tires in the event of a tire recall. As a direct and

proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their property and are threatened with further injury.

67.     Plaintiffs and Class members suffered injury in fact and lost money or property as a result of breach of warranty by Defendants.

68.     Defendants' acts violated the tires' implied warranty under Va. Code Ann. § 8.2–314 and, accordingly, Plaintiffs and Class members were injured and are entitled to damages.

## SECOND CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Act ("MMWA")
### 15 U.S.C. § 2301 *et seq.*

69.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

70.     Plaintiffs and Class members are "consumers" within the meaning of the MMWA.  15 U.S.C. § 2301(3).

71.     The unregistered tires are "consumer products" within the meaning of the MMWA.   15 U.S.C. § 2301(1).

72.     Defendants are "supplier[s]" and a "warrantor[s]" within the meaning of the MMWA.  15 U.S.C. § 2301(4)-(5).

73.     The amount in controversy in each Plaintiff's individual claim meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

74.     As set forth herein, Defendants breached their warranties with Plaintiffs and Class members.

75.     During the Class Period, Defendants marketed, and sold unregistered tires nationwide without providing registration cards to consumers. Defendants' unlawful conduct had the following effects: Plaintiffs and Class members were not provided with any registration cards as required by federal law, were not made aware of their rights to replace tires in the event of a tire recall, and could not be reached by manufacturers when tires were recalled by manufacturers.

76.     As a direct and proximate result of Defendants' breach of implied warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members were injured and are entitled to damages.

77.     Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA.  15 U.S.C. § 2310(d)(2).

## THIRD CAUSE OF ACTION
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. Ann. § 501.201 *et seq.*

78.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

79.     Defendants committed unfair, false, misleading, and/or deceptive acts with regard to the sale and distribution of unregistered tires in violation of the Florida Deceptive and Unfair Trade Practices Act by engaging in the acts and practices described above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

80.     During the Class Period, Defendants' unlawful conduct had a substantial effect on Florida commerce.

81.     Defendants' unlawful conduct had the following effects: Plaintiffs and Class members were not provided with any registration cards as required by federal law, could not be reached by manufacturers when tires were recalled by manufacturers, and were not made aware of their rights to replace tires in the event of a tire recall. Additionally, Plaintiffs and Class members overpaid for the tires because they paid for safe tires about whose details they could be contacted if necessary.  Defendants made extra sales during the time it would have taken to registering Class Members' tires with the tire manufacturer or provide Class Members with the tire-registration forms.

82.     Therefore, as a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury.

83.     Defendants have engaged in unfair and deceptive acts or practices in violation of Fla. Stat. Ann. § 501.201 *et seq.*

84.     Plaintiffs are entitled under Fla. Stat. Ann. §501.211(1) *et seq.* to bring a civil action to remedy Defendants' violations and collect damages and attorney's fees.

85.     Accordingly, Plaintiffs and Class members seek all relief available under Fla. Stat. Ann. §501.211.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

86.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

87.     Plaintiffs have alleged that (1) a benefit or value conferred on the defendants by the plaintiffs, (2) appreciation of such benefit by the defendants, and (3) acceptance and retention of such benefit or value under circumstances such that it would be inequitable for the defendants to retain the benefit or value without payment to the plaintiffs.

88.     Plaintiffs and Class members have conferred a measurable benefit on Defendants by purchasing the unregistered tires and purchasing tires without receiving any registration cards.

89.     As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct. Defendants were unjustly enriched when it made extra sales during the time it would have taken to registering Class Members' tires with the tire manufacturer or provide Class Members with the tire-registration forms.  As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched.

90.     Retention of such revenues under these circumstances is unjust and inequitable.

91.     Plaintiffs and Class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation,

and benefits that may have been obtained by Defendants as a result of such wrongful practices, as ordered by the Court.

## FIFTH CAUSE OF ACTION
### Common-Law Negligence

92.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

93.     To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and loss or damage caused by the breach, and actual loss or damage to another. All such essential elements exist here.

94.     Based on Defendants' actions as detailed above, Defendants had and has a duty to exercise reasonable care in the marketing and selling of tires, including providing registration cards to consumers.  Defendants' duty is created in part by the fact that between Defendants and Plaintiffs, Defendants exclusively had the expertise regarding the safety of the tires they sold and the need for the tires to be registered so that their purchasers could be reached in the event of a recall.

95.     Defendants' duty also arises from their legal obligation under federal law to provide registration cards to consumers.  See 49 C.F.R. 574.8(a).

96.     Defendants breached this duty by their conduct previously described above.

97.     As a proximate result, Defendants have caused Plaintiffs and the members of the Classes injury related to the purchase of their tires.

98.    Defendants owed the aforesaid duties to Plaintiffs and the members of the Classes because the injuries alleged herein were foreseeable by the Defendants, and because Defendants were obligated by federal law to provide the registration forms.

99.    The injuries to Plaintiffs and Class members would not have happened in the ordinary course of events had Defendants used due care.

100.    Plaintiffs and the member of the Classes seek compensatory damages for its monetary losses, plus interest and the cost of this action.

## SIXTH CAUSE OF ACTION
### Negligence per se

101.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

102.    Defendants had and has a duty to comply with above-cited federal rule.

103.    Defendants violated 49 C.F.R. § 574.8 by knowingly or intentionally omitting registration or provision of registration forms for tires sold to consumers, and by continuously selling unregistered tires without providing consumers with registration forms.

104.    Failure to comply with 49 C.F.R. § 574.8 constitutes negligence per se.

105.    Defendants have by their acts and omissions, proximately caused and substantially contributed to damages to Plaintiffs and members of the Classes by violating federal rules, and by their negligent and reckless disregard of the interest and safety of consumers, and of standards and practices within their own industry.

106.   Plaintiffs and Class members have suffered and will continue to suffer damages as the proximate result of the failure by Defendants to comply with federal rules.

## SEVENTH CAUSE OF ACTION
### Injunctive Relief

107.   Plaintiffs repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

108.   Plaintiffs and Class members are purchasers of unregistered tires or tires without registration cards sold by Defendants.

109.   Defendants' willful and continuous sale of a large quantity of unregistered tires or tires without providing registration cards to Plaintiffs and Class members constitutes an actual and substantial injury to Plaintiffs and Class members.

110.   Plaintiffs and Class members have no other complete, speedy, and adequate remedy at law by which to prevent harm to themselves.

111.   Defendants have acted or refused to act on grounds that apply generally to the Class, so that injunctive relief or corresponding declaratory relief under Fed. R. Civ. P. 23(b)(2) is appropriate respecting the class as a whole.  Class members' claims are so inherently intertwined that injunctive relief as to anyone in the Class will constitute injunctive relief as to all.  Further, the Class's claims are so common that they may be determined without reference to individual circumstances and will justify injunctive relief appropriate for all members of the Class.

112.   To the extent a Court in this district would apply the so-called "necessity doctrine" to an injunctive-relief Class, a class action is necessary here as the only just way

to adjudicate Plaintiffs' and the Class's claims.  Defendants' actions create doubt that they would apply required relief here to consumers across the board, and Defendants may seek to render named Plaintiffs' claims moot.

113.    Plaintiffs and the Class are therefore entitled to an injunction preventing Defendants from selling unregistered tires or tires without registering those tires with the manufacturer or providing registration cards to consumers.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs and the members of the Classes demand a jury trial on all claims so triable and judgment against Defendants as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

B.    Restitution and/or disgorgement of amounts paid by Plaintiffs and members of the Classes for the purchase of the replacement tires, together with interest from the date of payment;

C.    Actual damages;

D.    An order granting injunctive relief;

E.    Statutory prejudgment interest;

F.    Reasonable attorneys' fees and the costs of this action, including costs of administration and notice;

G.    Other legal and equitable relief under the causes of action state herein; a

H.    A trial by jury on all issues so triable; and

I.      Such other relief as this Court may deem just and proper.

Dated: January 29, 2019                         Respectfully submitted,

                                                */s/* Jordan L. Chaikin
                                                Jordan L. Chaikin
                                                Florida Bar No. 0878421
                                                CHAIKIN LAW FIRM PLLC
                                                12800 University Drive, Suite 600
                                                Fort Myers, Florida 33907
                                                Tel: 239.470.8338
                                                Fax: 239.204.2425
                                                jordan@chaikinlawfirm.com

                                                Cuneo Gilbert & LaDuca, LLP
                                                Charles J. LaDuca
                                                Brendan S. Thompson
                                                Yifei ("Evelyn") Li
                                                4725 Wisconsin Avenue, NW, Suite 200
                                                Washington, DC 20016
                                                Telephone: (202)789-3960
                                                charles@cuneolaw.com
                                                brendant@cuneolaw.com
                                                evelyn@cuneolaw.com

                                                LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                                Robert K. Shelquist, #021310X (MN)
                                                Rebecca A. Peterson, #0392663 (MN)
                                                Eric N. Linsk, #0388827 (MN)
                                                100 Washington Avenue South, Suite 2200
                                                Minneapolis, MN 55401
                                                Telephone: (612) 339-6900
                                                Facsimile: (612) 339-0981
                                                rkshelquist@locklaw.com
                                                rapeterson@locklaw.com
                                                rnlinsk@locklaw.com

                                                The Kessler Law Firm PLLC
                                                Chris C. Kessler, #18696 (NC)
                                                PO Box 8064
                                                Greenville, NC 27835
                                                (252) 321-2535
                                                cck@kesslerlawfirmpllc.com

                                                MCDOUGALL LAWFIRM, LLC
                                                J. Olin McDougall, II, *Esquire*
                                                Post Office Box 1336
                                                115 Lady's Island Commons
                                                Beaufort, South Carolina 29901-1336
                                                (843) 379-7000
                                                (843) 379-7007-Fax

lin@mlf.law

Fazio | Micheletti LLP
Dina E. Micheletti
2410 Camino Ramon, Suite 315
San Ramon, CA  94583
T:  925.543.2555
F:  925.369.0344
dem@fazmiclaw.com

*Attorney for Plaintiffs*