# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

------------------------------X

BRUCE EXUM, JR., and EMILIE PALMER, individually and on behalf of all others similarly situated,

                     Plaintiffs,

  vs.

NATIONAL TIRE AND BATTERY and TBC CORPORATION

                   Defendant.

Case No.: 9:19-CV-80121-RLR

------------------------------ X


## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... **1**

**LEGAL STANDARD** ...................................................................................................... **2**

**ARGUMENT** .................................................................................................................... **3**

   **I.**   **PLAINTIFFS' COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY.** ......................... 3

      **A.**   **Plaintiffs Lack Standing Under Article III Of The United States Constitution.** ................... 3

      **B.**   **The Regulation Creates No State Law Tort Or Contractual Duty Enforceable** ................... 7

      **C.**   **The Complaint Does Not Contain Sufficient Facts To Support The Assertion That Defendants Failed To Comply With The Regulation.** ..................................................................... 9

   **II.**   **EACH CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.** ......................................................................................................... 11

      **A.**   **Plaintiffs Lack Standing To Assert Claims On Behalf Of Absent Class Members From States Other Than Virginia.** ........................................................................................... 12

      **B.**   **Plaintiffs Fail To State A Viable Claim For Breach Of The Implied Warranty Of Merchantability Or The Magnuson Moss Warranty Act.** ........................................................ 13

      **C.**   **Florida's Deceptive And Unfair Trade Practices Act Provides No Basis For Recovery.** ... 14

      **D.**   **Plaintiffs' Unjust Enrichment Claims Fail.** ................................................................. 16

      **E.**   **Plaintiffs Cannot State A Negligence Claim.** ............................................................. 17

      **F.**   **The Injunctive Relief Plaintiff Requests To Enforce The Regulation Is Improper.** ........... 18

**CONCLUSION** .............................................................................................................. **19**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Nissan N. Am., Inc.*,
   17-cv-2653, 2018 WL 2338871 (S.D. Tex. May 4, 2018) ................................................ 6

*Alabama v. U.S. Army Corps. of Eng'rs*,
   424 F.3d 1117 (11th Cir. 2005) ........................................................................................ 18

*Almanza v. United Airlines, Inc.*,
   851 F.3d 1060 (11th Cir. 2017) .......................................................................................... 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 2, 9

*Ayres v. GMC*,
   234 F.3d 514 (11th Cir. 2000) .................................................................................. 5, 6, 8

*Bartholf v. GM*,
   18-cv-35, 2018 WL 1614122 (W.D. KY Apr. 3, 2018) ...................................................... 6

*Bell Atlantic Co. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 2, 3

*Bellasteros v. JPMorgan Chase Bank, N.A.*,
   16-cv-22386, 2016 WL 6082406 (S.D. Fla. Oct. 18, 2016) ................................................ 3

*Carlson v. General Motors Corp.*,
   883 F.2d 287 (4th Cir. 1989) ........................................................................................... 13

*Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*,
   770 F. Supp. 2d 1261 (S.D. Fla. 2011) ............................................................................ 16

*In re Checking Account Overdraft Litig.*,
   694 F. Supp. 2d 1302 (S.D. Fla. 2010) ............................................................................ 12

*Coker v. DaimlerChrysler Corp.*,
   2004 N.C.B.C. ................................................................................................................. 18

*Computer Network, Inc. v. AM Gen. Gcompr.*
   265 Mich. App. 309 (2005) .............................................................................................. 13

*Cort v. Ash*,
   422 U.S. 66 (1975) ............................................................................................................ 8

*Crayton v. Oceana Cruises, Inc.*,
   600 F. Supp. 2d 1271 (S.D. Fla. 2009) ............................................................................ 17

*David v. American Suzuki Motor Corp.*,
    629 F. Supp. 2d 1309 (S.D. Fla. 2009) ............................................................. 14

*Espinoza v. Countrywide Home Loans Servicing, L.P.*,
    14-20756-CIV, 2014 WL 3845795 (S.D. Fla. Aug. 5, 2014), *aff'd sub nom. Espinoza
    v. Countrywide Home Loans Servicing, L.P.*, 708 Fed.Appx. 625 (11th Cir. 2017) ........................... 18

*Fla. Digital Network, Inc. v. N. Telecom, Inc.*,
    No. 6:06-cv-889, 2006 WL 2523163 (M.D. Fla. Aug. 30, 2006).................................................. 10, 15

*FW/PBS Inc. v. City of Dallas*,
    493 U.S. 215 (1990), *overruled in part on other grounds by City of Littleton v. Z.J.
    Gifts D-4, LLC*, 541 U.S. 774 (2004) ................................................................... 2

*In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*,
    966 F. Supp. 1525 (E.D. Mo. June 11, 1997), *aff'd sub nom., Briehl v. Gen. Motors
    Corpo.,* 172 F.3d 623 (8th Cir. 1999)................................................................... 13

*Gen Motors Corp. v. Brewer*,
    966 S.W.2d 56 (Tex. 1998) ............................................................................. 13

*GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*,
    131 F. Supp. 3d 1291 (M.D. Fla. 2015) ............................................................... 18

*In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice
    Litigation*,
    955 F. Supp. 2d 1311 (S.D. Fla. 2013)................................................................. 16

*Hughes v. Chattem, Inc..*,
    818 F. Supp. 2d 1112 (S.D. Ind. 2011)................................................................. 13

*Hyundai Motor Co., Ltd. V. Duncan*,
    766 S.E.2d 893 (Va. 2015) ............................................................................. 13

*Jerue v. Drummond Co., Inc.*,
    17-cv-587, 2017 WL 10876737 (M.D. Fla. Aug. 17, 2017)................................................. 17

*King v. Flinn & Dreffein Engineering Co.*,
    09-cv-00410, 2012 WL 3133677 (W.D. Va. July 30, 2012)................................................. 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .................................................................................... 2

*Kwiatkowski v. Volvo Trucks N. Am., Inc.*,
    500 F. Supp. 2d 875 (N. D. Ill 2007).................................................................. 13

*Llado-Carreno v. Guidant Corp.*,
    No. 09-20971, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011).............................................. 10, 15

*Lustig v. Bear Sterns Residential Mortg. Corp.*,
    411 F. App'x 224 (11th Cir. 2011)...................................................................... 14

*Lydia Security Monitoring, Inc. v. Alarm One, Inc.*,
   No. 07-80145, 2007 WL 2446889 (S.D. Fla. Aug. 23, 2007) (J. Ryskamp)........................ 15

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013)........................................................................... 8, 9

*Merrill Lynch Bus. Fin. Serv., Inc. v. Performance Machine Sys. U.S.A., Inc.*,
   04-60861-CIV, 2005 WL 975773 (S.D. Fla. Mar. 4, 2005)........................................... 15, 16

*Minkler v. Apple, Inc.*,
   No. 5:13-CV-05332-EJD, 2014 WL 4100613 (N.D. Cal. Aug 20, 2014)........................... 13

*Montgomery v. New Piper Aircraft, Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2002) .................................................................................... 14

*Nicklaw v. Citimortgage, Inc.*,
   839 F.3d 998 (11th Cir. 2016) ................................................................................*passim*

*Patel v. Specialized Loan Servicing, LLC*,
   904 F.3d 1314 (11th Cir. 2018) ...................................................................................... 2

*Pope v. City of Clearwater*,
   138 F.R.D. 141 (M.D. Fla. 1991) .................................................................................... 12

*Prohias v. AstraZeneca Pharm., L.P.*,
   958 So. 2d 1054 (Fla. 3d DCA 2007)............................................................................... 14

*Renzi v. Demilec (USA) LLC*,
   12-civ-80516, 2013 WL 6410708 (S.D. Fla. Dec. 9, 2013) ............................................... 12

*Shibata v. Lin*,
   133 F. Supp. 2d 1311 (M.D. Fla 2000) ........................................................................... 15

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ..............................................................................................*passim*

*Stone v. Crispers Restaurants, Inc.*,
   06-cv-1086, 2006 WL 2850103 (M.D. Fla. Oct. 3, 2006)................................................. 12

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001)............................................................................ 12

*Timm v. Goodyear Dunlop Tires N. Am. Ltd.*,
   309 F. Supp. 3d 595 (N.D. Ind. 2018) .............................................................................. 6

*Walsh v. Ford Motor Co.*,
   130 F.R.D. 260 (D. D.C. 1990) ....................................................................................... 6

**Statutes**

15 U.S.C.S. § 2310(d)(1) .................................................................................................. 14

49 U.S.C. Chapters 301-331 ....................................................................................................... 4

49 U.S.C. § 30101 ...................................................................................................................... 4

Am. Law .................................................................................................................................... 17

FDUTPA ................................................................................................................. 10, 12, 14, 15

Magnuson Moss Warranty Act ............................................................................................... 1, 14

National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. § 30101, et seq................... 4

RICO ........................................................................................................................................... 8

Safety Act .......................................................................................................................... *passim*

108 Stat. 745 P.L. 103-272 ........................................................................................................ 4

Title 15, the Safety Act ............................................................................................................... 4

**Other Authorities**

49 C.F.R. 574.8 ................................................................................................................ *passim*

49 C.F.R. 574.8 ................................................................................................................... 11, 17

49 C.F.R. 574.8(1) .................................................................................................................... 11

49 C.F.R. 574.8 (a)(1)(ii) ............................................................................................................ 7

49 C.F.R. Part 553 ...................................................................................................................... 5

49 C.F.R. Part 554 ...................................................................................................................... 5

49 C.F.R. Part 571 ...................................................................................................................... 5

Federal Rule of Civil Procedure 9(b) .............................................................................. 3, 10, 15

Federal Rule of Civil Procedure 12(b)(1) ................................................................................... 2

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 2, 17, 18

Rule 8(a) ................................................................................................................................... 10

United States Constitution Article III ............................................................................... *passim*

**INTRODUCTION**

Plaintiffs in this putative class action seek to enforce a federal record-keeping and transmission regulation, 49 C.F.R. 574.8 (the "Regulation"). Notably, however, neither Congress nor any agency granted a private cause of action to enforce the Regulation. Accordingly, the alleged violations of the Regulation create no duty that Plaintiffs can enforce. Plaintiffs' Complaint fails for other reasons as well. Specifically, Plaintiffs cannot establish Article III standing to bring this action, pursuant to *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) and the precedential Eleventh Circuit authority, including *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016).[1] Additionally, the Complaint contains, at most, conclusory allegations that Defendants do not comply with the Regulation. For each of these reasons, the entire Complaint should be dismissed, *with prejudice.*

And at the risk of piling on, each separate cause of action is deficient for additional reasons. For example, the breach of implied warranty and Magnuson Moss Warranty Act claims fail because Plaintiffs do not allege that the tires they purchased were unsafe or otherwise unfit for their ordinary purpose. The consumer fraud and negligence claims fail for various reasons, including Plaintiffs' inability to establish the requisite elements of damage and causation. The unjust enrichment claim cannot stand because the benefit Plaintiffs allege they and the proposed class conferred on Defendants—that Defendants saved a few seconds off each sale which permitted it to sell additional tires—is speculative and not measurable. And finally, with respect to Count Seven of the Complaint, injunctive relief is a remedy and not a separate cause of action.

---

[1] Even if they otherwise had standing to proceed generally (they do not) Plaintiffs lack standing to assert claims on behalf of absent class members in states other than Virginia. (*See, infra,* fn. 2).

**<u>LEGAL STANDARD</u>**

Under Federal Rule of Civil Procedure 12(b)(1), this Court must dismiss a complaint when the Court lacks subject matter jurisdiction. When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has jurisdiction to decide the claim. *See FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("And it is the burden of the party who seeks the exercise of jurisdiction in this favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.") (quotations and citations omitted), *overruled in part on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 781 (2004). Federal courts are of limited jurisdiction, and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Where, as here, a plaintiff lack constitutional standing under the Article III "case or controversy" requirement, subject matter jurisdiction is lacking. *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001-2 (11th Cir. 2016).

Furthermore, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court has explained, pleadings that "are no more than conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017), *quoting*, *Iqbal*, 556 U.S. at 678. Similarly, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018), *citing*, *Twombly*, 550

U.S. at 555, *quoting*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986). For "all averments of fraud or mistake," Federal Rule of Civil Procedure 9(b) requires that allegations be stated with "particularity." *Twombly*, 550 U.S. at 576 n.3.

## ARGUMENT

## I.   PLAINTIFFS' COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY.

### A.   Plaintiffs Lack Standing Under Article III Of The United States Constitution.

To ensure that federal courts consider only "Cases" and "Controversies," a plaintiff must establish standing under Article III of the United States Constitution. *See Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547-48 (2016).* The "irreducible constitutional minimum" of standing consists of three elements: 1) the plaintiff must have suffered an injury in fact; 2) that is fairly traceable to the challenged conduct of the defendant; and 3) that is likely to be redressed by a favorable judicial decision. *Id.*[2] Of standing's three elements, injury in fact is the first and foremost. *Id.*

An injury in fact can establish standing when it constitutes a "concrete and particularized" and "actual or imminent" injury to a legally protected interest. *Id., citing, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). A concrete injury must be *de facto*; that is, it must actually exist. *See Spokeo*, 136 S. Ct. at 1548. While intangible injuries can still be "concrete," a bare procedural violation cannot satisfy the requirement for an injury in fact. *See id.* Congress' decision not to establish a private cause of action for a statutory or regulatory violation reflects its determination that the violation does not result in a concrete or actionable injury. *See id.* While a close relationship to a traditional tort may suggest a concrete injury, an

---

[2] In a putative class action, the named plaintiffs must allege and show that they personally have been injured. *See Bellasteros v. JPMorgan Chase Bank, N.A.*, 16-cv-22386, 2016 WL 6082406, at *2 (S.D. Fla. Oct. 18, 2016) (internal quotations omitted) ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'")

attenuated relationship to traditional torts indicates no concrete injury results from a violation of a procedural statute or regulation. *See id.* Violations of a statute or regulation for which Congress has not sanctioned a private cause of action and for which no traditional tort analogy exists, then, do not result in concrete injuries that confer standing on the plaintiff.

The Eleventh Circuit recently applied *Spokeo* and found that a violation of a statutorily mandated procedure did not result in an injury in fact and did not confer standing on the plaintiff to pursue the case. *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016). In *Nicklaw*, plaintiff filed a putative class action against CitiMortgage after plaintiff learned that CitiMortgage failed to record the satisfaction of mortgage until more than 90 days after the date of satisfaction. *Id*. at 1000. The Eleventh Circuit concluded that the plaintiff was not injured and, therefore, did not have the requisite standing under Article III. *Id*. at 1003. The situation presented here is even more attenuated than the ones presented in *Spokeo* or *Nicklaw*.

The Regulation was promulgated pursuant to authority delegated in the National Traffic and Motor Vehicle Safety Act of 1966 ("the Safety Act"), 49 U.S.C. § 30101, et seq.[3] The Safety Act aims to reduce traffic accidents and deaths and injuries resulting from traffic accidents. *See* 49 U.S.C. § 30101. Through the Safety Act, Congress regulated many areas of motor vehicle use and safety, including the safety of motor vehicles themselves, motorcycles, tires, helmets and other motor vehicle equipment. *See* Title 49 U.S.C. Chapters 301-331. Congress also regulated the importation of motor vehicles and motor vehicle equipment. *See id*. In short, Congress enacted a comprehensive system for regulating the field of motor vehicle and motor vehicle equipment safety.

---

[3] Originally codified in Title 15, the Safety Act provisions were reclassified into Title 49, by Act July 5, 1994, P.L. 103-272, 108 Stat. 745. The current citations are used herein.

Congress also delegated to the Secretary of Transportation, and ultimately to the National Highway Traffic Safety Administration ("NHTSA") authority to develop, enact and implement the regulations necessary to carry out and enforce the Safety Act's purposes. *See* 49 C.F.R. Part 553. Among other regulations, NHTSA enacted Federal Motor Vehicle Safety Standards ("FMVSS"). *See* 49 C.F.R. Part 571. It also enacted procedures governing the investigation of potential motor vehicle or equipment defects, the reporting of such defects and recalls of vehicles or equipment found to have such defects. *See* 49 C.F.R. Part 554. The Regulation is but one of many procedural regulations within the comprehensive regulatory scheme that implements the Safety Act.

Congress also chose a comprehensive administrative procedure to enforce and remedy violations of the Safety Act. *See Ayres v. GMC*, 234 F.3d 514, 522 (11th Cir. 2000). Congress delegated authority to the Secretary of Transportation to determine that a defect exists, to notify customers or to take specific action to meet the Safety Act's notification requirements. *See id.* The Safety Act provides for hearings on the motion of the Secretary of Transportation or any other interested person. *See id.* At such a hearing, any interested person can present information on whether the manufacturer reasonably met the notification requirements. *See id.* Interested persons can file petitions requesting the commencement of enforcement proceedings. *See id.* The Attorney General is authorized to bring a civil action to enforce the Safety Act and its provisions. *See id.* Congress detailed the civil penalties for violations. *See id.* And last, Congress decided not to make violations of the Safety Act and its notification requirements criminal. *See id.* But in choosing this comprehensive enforcement scheme, Congress also chose not to grant private causes of action for alleged violations of the Safety Act or its procedures.

Not only did Congress decline to create a private cause of action for violations of Safety Act provisions pertaining to notification of defects, it declined to create a private cause of action to remedy *any* violation of the Safety Act. Not surprisingly then, courts consistently have confirmed that violations of the Safety Act do not give rise to private causes of action. *See Ayres*, 234 F.3d at 521-525 (alleged violation of provision requiring notice of an alleged defect); *Adams v. Nissan N. Am., Inc.*, 17-cv-2653, 2018 WL 2338871, at *3-4 (S.D. Tex. May 4, 2018) (alleged failure to disclose a defect cannot constitute fraudulent concealment that tolls the statute of limitations); *Bartholf v. GM*, 18-cv-35, 2018 WL 1614122, at *3 (W.D. KY Apr. 3, 2018) (collecting cases); *Timm v. Goodyear Dunlop Tires N. Am. Ltd.*, 309 F. Supp. 3d 595, 602 (N.D. Ind. 2018) (neither the Safety Act nor NHTSA's regulations provide a private cause of action).  In deciding that civil law should not be the venue to remedy violations of the Safety Act or its regulations, Congress determined that private persons should *not* have standing to sue over a violation of the Act's procedures.  As in *Spokeo* and *Nicklaw*, the Court here should enforce Congress' intent and find Plaintiffs lack standing to pursue any of the asserted claims.

The historical analysis utilized in *Spokeo* and *Nicklaw* likewise establishes that Plaintiffs here can claim no concrete harm.  No traditional tort corresponds to the wrongful conduct alleged here–the failure to record and transmit information to a manufacturer to increase the chances of a successful recall in the event the manufacturer determines a defect exists in its product.  No common law duty to recall a product even exists.  *See, e.g., Walsh v. Ford Motor Co.,* 130 F.R.D. 260 (D. D.C. 1990).  Much less does any common law analogy to a failure to record and transmit information useful *only in the event of a recall* exist.  As in *Spokeo* and *Nicklaw,* then, historical practice supports a finding that Plaintiffs have suffered no concrete injury and lack standing to bring this case.

And Plaintiffs do not assert actual, tangible harm such as personal injury or actual property damage. Rather, Plaintiffs merely allege that they "expected to be reachable" if their tires were recalled by the manufacturer. *See* Cmpl. No. 1, ¶ 45. Plaintiffs do not allege that any manufacturer *in fact* recalled the tires they purchased or that the tires they purchased were defective. *See* Cmpl. No. 1. Accordingly, Plaintiffs have not alleged any actual harm.

Similarly, Plaintiffs fail to sufficiently allege a "real risk of harm." The chain of events necessary to connect the failure to provide a tire registration form to injury or damage is long: 1) the dealer fails to provide a tire registration form; 2) the dealer also fails otherwise to provide information to the manufacturer pursuant to 49 C.F.R. 574.8 (a)(1)(ii) or (iii); 3) the manufacturer discovers the tire purchased from the dealer contains a defect that can cause property damage or personal injury; 4) the manufacturer initiates a recall; 5) the tire purchaser still has the tires; 6) the tire purchaser is still reachable by the information recorded on the tire registration form; 7) the tire purchaser does not otherwise learn of the recall; 8) the defect that led to the recall results in an accident; and 9) the injured party sustains injury or property damage as a result of the defect. This type of attenuated chain of events that could follow a bare procedural violation does not provide a sufficient basis for Article III standing.

In summary, based on the same reasoning that led to the dismissals in *Spokeo, Nicklaw* and the other cases cited above, this Court likewise should dismiss Plaintiffs' Complaint in this case, *with prejudice.*

**B.     The Regulation Creates No State Law Tort Or Contractual Duty Enforceable By The Plaintiffs.**

Plaintiffs rely on the Regulation as the purported bases for the asserted claims. Neither the Regulation nor the Safety Act, however, create a duty enforceable by a consumer.

The Eleventh Circuit addressed this exact scenario in *Ayers v. GMC*, 234 F.3d 514, 521-525 (11th Cir. 2000).  There, the plaintiff premised a state law RICO claim on alleged mail and wire fraud committed by vehicle and parts manufacturers who failed to disclose promptly an alleged defect, as required by the Safety Act. *Id.* at 516-517.  After noting that the language and scheme of the Safety Act do not create a duty of disclosure enforceable by plaintiffs or the general public, the court examined whether Congress implicitly created a private remedy.  *Id.* at 522-523. Applying the four-part test from *Cort v. Ash,* 422 U.S. 66, 78 (1975),[4] the Eleventh Circuit found no indication that Congress intended any private cause of action for breach of the disclosure obligation.  *Ayers*, 234 F.3d at 523.  The court also concluded that allowing a private cause of action would actually undermine the Safety Act's comprehensive scheme of administrative remedies.  *Id*. at 524.  Accordingly, the Eleventh Circuit concluded that Congress did not intend a violation of the Safety Act's notification requirement to constitute mail or wire fraud.  *See id.* Without mail or wire fraud, the state law RICO claim failed. *Id*. at 525.

A similar rationale defeated state law unjust enrichment claims in another case. *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013).  There, the plaintiffs brought a putative class action contending the automobile manufacturer was unjustly enriched when the plaintiffs bought replacement parts that should have been covered in a recall campaign mandated by the Safety Act (the original warranties had expired).  *Id.* at 1354-1355.  The court characterized the claims as an effort to use the common law to enforce the Safety Act's recall mandate.  *Id.* at 1366.  The court refused to allow the plaintiffs to fashion an alternative theory

---

[4] The four part test consists of: 1) determining whether the plaintiff is one of the class for whose special benefit the statute was enacted; i.e., does the statute create a federal right in favor of the plaintiff; 2) identifying any indication of legislative intent to create or deny such a remedy; 3) determining whether a private cause of action is consistent with the underlying purpose of the legislative scheme; and 4) determining whether the cause of action is one traditionally relegated to state law so that inferring a cause of action based solely on federal law would be inappropriate. *Cort*, 422 U.S. at 78.

that "would effectively be the private right of action that Congress declined to create." *Id.* Accordingly, the court held that the state law claims that rested on an alleged breach of the Safety Act must be dismissed.

Here, each claim in the Complaint rests solely on the alleged breach of the Regulation. For example, the First Cause of Action alleges the failure to provide registration cards breached the implied warranty of merchantability under Virginia law. The Third Cause of Action characterizes the failure as an unfair trade practice compensable under Florida law. And the Fourth Cause of Action alleges unjust enrichment because store personnel used the seconds they would have spent handing a tire registration form to Plaintiffs or adding a note to the invoice to sell more tires. These and the rest of the claims asserted in the Complaint seek what Congress decided should not exist: private causes of action for a breach of the Regulation. As Congress has determined that no private causes of action should exist, each of the claims asserted in the Complaint should be dismissed.

### C.   The Complaint Does Not Contain Sufficient Facts To Support The Assertion That Defendants Failed To Comply With The Regulation.

To comply with the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As an overarching matter, all of the claims must be dismissed to the extent they seek relief against TBC.  Plaintiffs do not allege that they purchased any tires from TBC.  Instead, they merely allege that TBC is the parent company of NTB and "upon information, the failure to follow the tire registration rule was either "(1) the result of a corporate decision made at Defendants' Florida headquarters, or (2) the result of a corporate failure to investigate and monitor whether Defendants' local retail stores were following the federal rule, and if not, why not." (Cmpl. ¶ 15.)  This

allegation is plainly insufficient to state a claim upon which relief may be granted against TBC under the Rule 8(a) pleading standard, let alone the heighted pleading standard set forth in Rule 9(b), which is applicable to Count Three.[5]

And the limited factual allegations directed at NTB fair no better.  For example, Plaintiffs intimate that Defendants do not comply with the Regulation, relying on the assertion that Defendants must either (1) provide the tire purchaser with a paper tire registration form; or (2) transmit that information directly to the tire manufacturer for the purchaser.  (*See* Cmpl. ¶¶ 4, 42 and 44.)   As an initial matter, it is noteworthy that the operative section of the Regulation provides multiple ways a distributor or dealer can comply.  Specifically, the Regulation provides as follows:

> (a)(1) Each independent distributor and each independent dealer selling or leasing new tires to tire purchasers...shall comply with paragraph (a)(1)(i), (a)(1)(ii) or (a)(1)(iii) of this section:
>
> (i)   At the time of sale or lease of the tire, provide each purchaser with a paper tire registration form...
>
> (ii)  Record the following information on a paper tire registration form and return it to the tire manufacturer, or its designee, on behalf of the tire purchaser, at no charge to the tire purchaser and within 30 days of the date of sale or lease...
>
> (iii) Electronically transmit the following information on the tire registration form by any means listed on the form by the tire manufacturer, or by such other means as may be authorized by the tire manufacturer, to the tire manufacturer or its designee, using secure means (e.g., https on the Web), at no charge to the tire purchaser and within 30 days of the date of sale or lease...

---

[5] Numerous Florida courts have held that FDUTPA claims must satisfy the heightened pleading requirements of Rule 9(b).  *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403, *5 (S.D. Fla. Feb. 22, 2011) (dismissing plaintiff's FDUTPA claim because plaintiff failed to support his conclusory allegations of deceptive conduct with any specific facts, and thus, failed to satisfy 9(b)); *Fla. Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing plaintiff's FDUTPA claim because plaintiff made only vague and conclusory allegations that were insufficient to state a viable claim under the heightened pleading standard).

49 C.F.R. 574.8(1).

Plaintiffs conveniently ignore the fact that compliance with the Regulation can be accomplished in one of many ways and the Complaint contains insufficient facts regarding whether Defendants have or have not complied with the Regulation.  For example, although the Complaint asserts that Plaintiff's invoices do not contain the language required by subsection (a)(4), Plaintiffs assert no facts indicating that Defendants failed to transmit the required tire information electronically to the manufacturer or its designee as permitted by subsection (iii).

The Complaint also fails to aver that the alleged failure to comply with the Regulation resulted in any accidents, personal injury or damage. Specifically, the Complaint contains no factual allegation that any tire manufacturer actually recalled any tire sold to Plaintiffs or that they otherwise were not reachable by the manufacturer.

Finally, it is clear that no cause of action for violating the Regulation could exist if Defendants provided the tire purchase information to the manufacturer (i.e., if Defendants complied with the Regulation).  Thus, Plaintiffs' inability to allege facts indicating Defendants failed to comply with all three compliance options provided in the Regulation reflects the inability to state a cognizable cause of action.

## II.     EACH CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Dismissal of the Complaint on any one of the bases set out above, of course, eliminates the need to examine further each claim individually. Nevertheless, as discussed below, such an examination, reveals additional deficiencies with the asserted claims.

### A.   Plaintiffs Lack Standing To Assert Claims On Behalf Of Absent Class Members From States Other Than Virginia.

In a class action, the named plaintiff must allege and prove that he or she personally has standing with respect to each claim being made, "not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Pope v. City of Clearwater*, 138 F.R.D. 141, 145 (M.D. Fla. 1991), *citing*, *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (citing cases).   Where a representative plaintiff is lacking for a particular state, all claims based on that state's laws must be dismissed because no named plaintiff has standing to assert them. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010) (dismissing claims based on the laws of states where none of the named plaintiffs resided*); Renzi v. Demilec (USA) LLC*, 12-civ-80516, 2013 WL 6410708, at *3 (S.D. Fla. Dec. 9, 2013) (holding that Florida plaintiff lacked standing to bring state statutory claims parallel to her FDUTPA claim on behalf of a national class because "plaintiff may only assert a state statutory claim if the named plaintiff resides in that state"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371-72 (S.D. Fla. 2001) (named plaintiffs could not pursue antitrust claims under state statutes from state in which they did not reside because '[n]one of these statutes authorizes antitrust actions based on commerce in other states"); *Stone v. Crispers Restaurants, Inc.*, 06-cv-1086, 2006 WL 2850103, at *1-2 (M.D. Fla. Oct. 3, 2006) (named plaintiff himself lacked standing to pursue claims under wage law of his or other states).   Simply stated, a named plaintiff who does not reside in or purchase the product in the state under whose law it purports to assert a claim lacks standing to pursue those extra-territorial claims on behalf of foreign class members.

Here, the named Plaintiffs reside in and are citizens of Virginia. They apparently have no connection to any other state. Plaintiffs, therefore, lack standing to bring claims on behalf of

absent class members pursuant to the law of the other forty-nine states. The claims should be dismissed with prejudice.

**B.   Plaintiffs Fail To State A Viable Claim For Breach Of The Implied Warranty Of Merchantability Or The Magnuson Moss Warranty Act.**

To maintain a claim for breach of the implied warranty of merchantability under Virginia law, (Count One) a plaintiff must allege that the product was not fit for the ordinary purpose for which the good is used.  *See King v. Flinn & Dreffein Engineering Co.*, 09-cv-00410, 2012 WL 3133677, at *12 (W.D. Va. July 30, 2012).   The "ordinary purpose" of automobiles is to provide transportation.  *See id.*   Where an automobile provides safe, reliable transportation, it is generally considered merchantable. *See id.; see also Carlson v. General Motors Corp.,* 883 F.2d 287, 297-98 (4th Cir. 1989) ("Where a car can provide safe, reliable transportation, it is generally considered merchantable" and fit for ordinary purpose.); *In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.,* 966 F. Supp. 1525, 1533 (E.D. Mo. June 11, 1997), *aff'd sub nom., Briehl v. Gen. Motors Corpo.,* 172 F.3d 623 (8th Cir. 1999) (implied warranty claim dismissed when plaintiff failed to allege a defect that made vehicles unfit for the ordinary purpose of providing transportation); *Hyundai Motor Co., Ltd. V. Duncan,* 766 S.E.2d 893, 898 (Va. 2015) (plaintiffs required to show vehicle was unreasonably dangerous for use to which it would ordinarily be put and such dangerous condition existed when the vehicle left manufacturer's control.[6]

While the Magnuson Moss Warranty Act, 15 U.S.C.S. § 2301 et seq. ("MMWA") (Count Two), allows civil actions against parties who fail to comply with an implied warranty, it does

---

[6] *See also Computer Network, Inc. v. AM Gen. Gcompr.*  265 Mich. App. 309, 317 (2005);*Minkler v. Apple, Inc.,* No. 5:13-CV-05332-EJD, 2014 WL 4100613, *5 (N.D. Cal. Aug 20, 2014); *Hughes v. Chattem, Inc..,* 818 F. Supp. 2d 1112, 1122 (S.D. Ind. 2011); *Gen Motors Corp. v. Brewer,*  966 S.W.2d 56, 57 (Tex. 1998).

not provide an independent cause of action.  *See Kwiatkowski v. Volvo Trucks N. Am., Inc.*, 500

F. Supp. 2d 875, 876 (N. D. Ill 2007); 15 U.S.C.S. § 2310(d)(1).  Where a plaintiff cannot state a

claim for breach of the underlying implied warranty, the MMWA claim fails as well. *David v.

American Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009) ("Plaintiff's implied

warranty fails under Florida law. Therefore, a MMWA claim based on breach of implied

warranty fails.")

Here, the First Cause of Action asserts a claim for breach of the implied warranty of

merchantability under Virginia law.  *See* Cmpl. No. 1, First Cause of Action.  Nowhere,

however, does the Complaint assert that the Plaintiffs could not use the tires or operate their

vehicles safely.  *See id.*  Nor does the Complaint allege that their tires were unsafe or unreliable–

let alone that any of the tires were subject to a recall.  *See id.*  Accordingly, the Complaint does

not plead the facts necessary to support a cause of action for breach of the implied warranty of

merchantability under Virginia law or the MMWA.


**C.**     **Florida's Deceptive And Unfair Trade Practices Act Provides No Basis For
         Recovery.**

Plaintiffs, both of whom are Virginia residents, assert an unfair trade practices claim under

Florida law. Like the other causes of action asserted in the Complaint, Plaintiffs claim under the

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is fatally defective.

A cause of action for a FDUTPA violation requires a plaintiff to allege:  (1) a deceptive

act or unfair practice; (2) causation; and (3) actual damages.  *See Lustig v. Bear Sterns

Residential Mortg. Corp.*, 411 F. App'x 224, 225 (11th Cir. 2011); *Montgomery v. New Piper

Aircraft, Inc.,* 209 F.R.D. 221, 229 (S.D. Fla. 2002) (*citing* Fla. Stat. § 501.211(2)) (Plaintiffs

must plead and prove that the alleged unfair and deceptive act caused injury.); *Prohias v.*

*AstraZeneca Pharm., L.P.,* 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007) (affirming dismissal of claim because the named plaintiff "fail[ed] to allege that [d]efendants' alleged wrongs caused her to purchase" [the product]); *see also Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145, 2007 WL 2446889 (S.D. Fla. Aug. 23, 2007) (J. Ryskamp) (dismissing plaintiff's FDUTPA claim for failure to sufficiently plead damages and causation); *Shibata v. Lin*, 133 F. Supp. 2d 1311, 1321 (M.D. Fla 2000) ("No where [sic] in the amended complaint are there allegations explaining how the defendants' conduct deceived [plaintiff].")  Plaintiffs must do more than merely allege causation in a conclusory fashion.  *Merrill Lynch Bus. Fin. Serv., Inc. v. Performance Machine Sys. U.S.A., Inc.,* 04-60861-CIV, 2005 WL 975773, at *9 (S.D. Fla. Mar. 4, 2005).  Importantly, numerous Florida courts have held that FDUTPA claims must satisfy the heightened pleading requirements of Rule 9(b).  *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403, *5 (S.D. Fla. Feb. 22, 2011) (dismissing plaintiff's FDUTPA claim because plaintiff failed to support his conclusory allegations of deceptive conduct with any specific facts, and thus, failed to satisfy 9(b)); *Fla. Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing plaintiff's FDUTPA claim because plaintiff made only vague and conclusory allegations that were insufficient to state a viable claim under the heightened pleading standard).  The Complaint in the present case fails to satisfy these pleading requirements.

Plaintiffs fail to identify a specific misrepresentation (or who made the misrepresentation) as required under the heightened pleading standard for fraud.  Likewise, Plaintiffs fail to provide sufficient factual allegations to support their inference that Defendants did not comply with the Regulation (the purported unfair practice). [7]  And Plaintiffs essentially ignore the requisite

---

[7] As discussed above, failure to comply with a record-keeping regulation simply does not constitute a misrepresentation.

elements of causation and damage.  Plaintiffs merely assert that "as a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury." (Cmpl. ¶ 82).  Such conclusory allegations are insufficient to state a viable claim.  *Merrill Lynch Bus. Fin. Serv., Inc.,* 2005 WL 975773, at *9.

### D.      Plaintiffs' Unjust Enrichment Claims Fail.

In order to state a claim for unjust enrichment under Florida law, a party must "allege that it had *directly* conferred a benefit on the defendants."  *Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011), *quoting, Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996). Specifically, the prima facie case for a claim of unjust enrichment under Florida law requires (1) that the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit; (2) that the defendant voluntarily accepted and retained the benefit conferred; and (3) that the circumstances are such that it would be inadequate for the defendant to retain the benefit without paying the value of it to the plaintiff.  *Id.*; *citing*, *Hillman Const. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994). "The measure of damages for unjust enrichment is the amount of unfair gain received by those unjustly enriched."  *In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F. Supp. 2d 1311, 1336 (S.D. Fla. 2013), *quoting*, *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir 1996) (citations omitted).

The benefit Plaintiffs allege they and the proposed class conferred on Defendants—that Defendants saved a few seconds off each sale which permitted it to sell additional tires—is simply speculative and not measurable. A few seconds of time cannot correlate to measurable damages from additional sales, nor is it possible to determine whether additional sales were

made because of the extra few seconds of time Plaintiffs allege. Since these speculative and intangible damages are insufficient to support a claim for damages, Plaintiff's Fourth Cause of Action must be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

      **E.**    **Plaintiffs Cannot State A Negligence Claim.**

Plaintiffs assert two negligence based claims–common law negligence and negligence per se. Neither claim can stand.

In order to prevail under a common law negligence theory (Count Five) a plaintiff must plead and prove, among other things, that a defendant owed a legal duty, breached that duty, and that the breach was a proximate cause of the plaintiff's injuries. *See Crayton v. Oceana Cruises, Inc.*, 600 F. Supp. 2d 1271, 1275 (S.D. Fla. 2009), citing Prosser & Keaton On Torts § 30 (5th ed. 1984). To proceed under a negligence per se theory (Count Six), a plaintiff must show that the defendant breached a duty of care by failing to comply with a statute. *See Jerue v. Drummond Co., Inc.*, 17-cv-587, 2017 WL 10876737, at *11, fn. 7 (M.D. Fla. Aug. 17, 2017) ("Negligence per se is a theory that 'relies on a specific *statutory* standard to pretermit reference to the more general reasonable-care standard for adjudicating the question of breach of duty") (emphasis in original; quoting Restatement (Third) of Torts § 38 cmt. D (Am. Law. Inst. 2012)). Here, Plaintiffs two negligence claims are based on the assertion that Defendants have not complied with 49 C.F.R. 574.8. As discussed above, the Regulation does not establish a duty of care to a private citizen. NHTSA did not convey a private right of action, and Congress did not intend the Regulation to govern civil liability between private parties. Second, the Complaint does not contain sufficient factual allegations that Defendants breached any obligations imposed by the Regulation. And third, even assuming that a duty to Plaintiffs exists in this context (it does not) and Defendants failed to comply with the Regulation (they did comply), Plaintiffs fail

to allege facts sufficient to establish that they were injured as a proximate cause of Defendants' actions or inactions.  For each of these reasons the Fifth and Sixth Causes of Action should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

     **F.**     **The Injunctive Relief Plaintiff Requests To Enforce The Regulation Is Improper.**

Injunctive relief to prevent future injury from a design defect in an automobile is solely within the purview of NHTSA.  *See Coker v. DaimlerChrysler Corp.*, 2004 N.C.B.C. LEXIS 2, 14-15 (N.C. Super. Ct. Jan. 5, 2004), *aff'd*, 617 S.E.2d 306 (N.C. App. 2005).  Moreover, injunctive relief is a remedy and not a separate cause of action.  *See GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015); *Espinoza v. Countrywide Home Loans Servicing, L.P.*, 14-20756-CIV, 2014 WL 3845795, at *7 (S.D. Fla. Aug. 5, 2014), *aff'd sub nom. Espinoza v. Countrywide Home Loans Servicing, L.P.*, 708 Fed.Appx. 625 (11th Cir. 2017) (citing *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 09-cv-61436, 2010 WL 1531489, at *10 (S.D. Fla. Aug. 16, 2010) (dismissing count pleading remedy of equitable lien for failure to state separate cause of action)); *see also Alabama v. U.S. Army Corps. of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . There is no such thing as a suit for a traditional injunction in the abstract." (citations and quotations omitted)). And here, only NHTSA can craft the requested relief.  Thus, the Seventh Cause of Action should be dismissed.

## <u>CONCLUSION</u>

For the reasons cited herein and in the attached Motion to Dismiss, Defendants respectfully request that this Honorable Court grant its motion and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:     */s/ Alex Drummond, Esq.*
     Alex Drummond, Esq.
     Florida Bar No. 0038307
     1075 Peachtree Street, N.E.
     Suite 2500
     Atlanta, Georgia 30309-3958
     Telephone: (404) 881-5467
     E-mail: adrummond@seyfarth.com

     Attorney for Defendants National Tire and Battery and TBC Corporation

## <u>CERTIFICATE OF SERVICE</u>

I, Alex Drummond, Esquire, hereby certify that on this date a true and correct copy of the enclosed document was filed and served upon all counsel of record via the Court's electronic filing system.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:      */s/ Alex Drummond, Esq.*
       Alex Drummond, Esq.
       Florida Bar No. 0038307
       1075 Peachtree Street, N.E.
       Suite 2500
       Atlanta, Georgia 30309-3958
       Telephone: (404) 881-5467
       E-mail: adrummond@seyfarth.com

       Attorney for Defendants National Tire and Battery
       and TBC Corporation