**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:19-CV-80121-SMITH-MATTHEWMAN**

Bruce Exum, Jr. and Emilie Palmer,
individually and on behalf of all others
similarly situated,

                              Plaintiffs,

v.

National Tire and Battery and TBC
Corporation,

                              Defendants.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION………………………………………………………………...…1

FACTUAL BACKGROUND……………………………………..……………………3

ARGUMENT ..................................................................................................................... 4

    I.    Class Certification should be granted because Plaintiffs' Complaint satisfies all of the requirements of Fed. R. Civ. P. 23. ....................................................................................... 4

        1.    The proposed classes are ascertainable. .......................................................... 5

        2.    The Rule 23(a) requirements are satisfied......................................................... 6

            a.  The class members are so numerous that joinder is impracticable………..…………..…7

            b.  There are issues of law and fact common to all class members ……..………………..8

            c.  Plaintiffs' claims are typical of class members' claims ………..…………………...9

            d.   Plaintiffs will adequately represent the classes. ....................................... 10

    II.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2). ........................ 10

    III.    The Requirements of Rule 23(b)(3) Are Satisfied. ....................................................... 12

        1.    Plaintiffs Meet the Predominance Requirement....................................................... 12

            a.   Counts I & II: Breach of Implied Warranty and the MMWA ................................... 12

            b.   Count III: Violation of the Florida Deceptive and Unfair Trade Practices Act ......... 13

            c.   Count IV: Unjust Enrichment.................................................................................. 14

            d.   Counts V & VI: Negligence and Negligence Per Se .................................................. 15

        2.    Plaintiffs Meet the Superiority Requirement. .............................................................. 16

    IV.    The Court should appoint the undersigned as Class Counsel. ...................................... 17

CONCLUSION.................................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................ 20

### TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) ............................. 12

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997) ...................................................... 4

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 133 S. Ct. 1184, 185 L.Ed.2d 308 (2013) .............................................................................................................................. 4

*Appleyard v. Wallace*, 754 F.2d 955 (11th Cir. 1985) ..................................................... 10

*Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011) ................................. 14

*Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014) ............. 5

Carriuolo v. Gen. Motors Co., 823 F.3d 977 (11th Cir. 2016) ......................................... 5

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016). ....................................... 13

*Cox v Porsche Financial Services, Inc.*, 330 F.R.D. 322 (S.D. Fla. 2019) ..................... 5, 6

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ....................................... 7

*Davis v. Powertel, Inc.*, 776 So.2d 971 (Fla. Dist. Ct. App. 2000) ................................. 13

*Drayton v. Western Auto Supply Co*., 2002 WL 32508918 (11th Cir. Mar. 11, 2002) ......... 7, 8

*Edmonds v. Levine*, 233 F.R.D. 638 (S.D. Fla. 2006) ..................................................... 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ......... 7

*Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237 (Fla. 2004) ....................... 14

*Fuller Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000) ................................. 7

*Gibbs v. Hernandez*, 810 So.2d 1034 (Fla. Dist. Ct. App. 2002) ..................................... 15

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ..................................... 11

*In re Carbon Dioxide Antitrust Litigation,* 149 F.R.D. 229 (M. D. Fla. 1993) ................. 4

*In re Checking Account Overdraft Litig.,* 286 F.R.D. 645 (S.D. Fla. 2012) ..................... 15

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015) ..................... 4

*In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524 (M.D. Fla. 1996) ............. 9

*In re Physician Corp. of America Sec. Litig.*, No. 97-3678-CIV, 2003 WL 25820056 (S.D. Fla. May 21, 2003) ............................................................................................................................. 4

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2002) ......... 12, 17

*James D. Hinson Elec. Constr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638 (M.D. Fla. 2011) ..................................................................................................................................... 15

*Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945 (11th Cir. 2015) ..................................... 6

*Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668 (S.D. Fla. 2018) ................................. 6

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984)............................................9

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012) .............................................................5

*Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2011) ..........................................................................9

*Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504 (S.D. Fla. 2013)...........................................................15

*Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018)5

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010) ...........................................................14

*Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989) ...........................................................6

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)...................................................................16

*Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675 (S.D. Fla. 2009)...........................................................4, 5

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003)........................................4

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003).....................................10

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ...........................................................9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................................8, 9

*Williams v. Mohawk Indus., Inc*. 568 F.3d 1350 (11th Cir. 2009)......................................................8

*Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012)............................................17

**Statutes**

Va. Code Ann. § 8-2-314(2) ................................................................................................................13

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................................7

Fed. R. Civ. P. 23(a)(4)......................................................................................................................10

Fed. R. Civ. P. 23(b)(2).......................................................................................................................10

Fed. R. Civ. P. 23(b)(3).................................................................................................................12, 16

Fed. R. Civ. P. 23(g)(1)(A).................................................................................................................18

**Regulations**

49 C.F.R. § 574.7(b) ............................................................................................................................6

49 C.F.R. § 574.7(c)............................................................................................................................6

49 C.F.R. § 574.8.................................................................................................................................2

49 C.F.R. § 574.8(b). ...........................................................................................................................3

Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and this Court's order of May 24, 2019 (Dkt. No. 28), Plaintiffs Bruce Exum, Jr. and Emilie Palmer submit this motion for class certification. Plaintiffs also move to appoint undersigned counsel to represent the certified classes under Rule 23(g).

Plaintiffs seek certification of two classes:

(1) The "**Nationwide Class**," which consists of: All consumers in the United States and its territories who purchased a tire from Defendant or their subsidiaries during the class period for their personal use, rather than for resale or distribution, without being provided with a registration card or being otherwise assisted as allowed by law.

(2) The "**Virginia Subclass**," which consists of: All consumers within the State of Virginia who purchased a tire from the Defendant or their subsidiaries during the class period for their personal use, rather than for resale or distribution, without being provided with a registration card or being otherwise assisted as allowed by law.

As set forth below, this case arises from Defendants' violation of the tire-registration statute and regulations, which occurred during Defendants' sales of tires to all members of the classes. The legal issues that predominate in this case are common to the members within each of the classes. The Court should certify each of the classes.

## <u>INTRODUCTION</u>

Tires are among the most important components on a vehicle and on occasion fail because of faulty design or manufacture. According to data published in the *Modern Tire Dealer*, a leading industry publication, in 2013, the tire industry shipped 278.3 million new tires for passenger vehicles and light trucks. Notwithstanding improvements in tire quality and durability, tire-related crashes still occur regularly. In 2017, a total of 738 people died in tire-related crashes in the United States. From 2007 to 2012, about 33,000 tire-related crashes occurred annually, resulting in about 19,000 injuries each year, according to the National Transportation Safety Board ("NTSB").[1]

---

[1] NTSB Special Report at 1. Available at https://www.ntsb.gov/safety/safety-studies/Documents/SIR1502.pdf

In 2014, the NTSB launched a special investigation following four tire-related accidents in Florida, Louisiana, Arizona, and California that killed 12 people and injured 42 others. The board found that only one in five defective tires was being taken out of service via recall. More than half of recalled tires remained in use. Similarly, a 2015 NBC News report regarding unregistered tires provided examples of motor-vehicle fatalities that occurred while operating vehicles with recalled, unregistered tires.

To facilitate the recall of unsafe tires to avoid such accidents, a federal statute (49 U.S.C. § 30117(b)(1)) and regulation (49 C.F.R. § 574.7) require that tire manufacturers compile a list of those purchasing tires, so tire manufacturers can contact these purchasers in the event of a recall. Under normal circumstances, this list is compiled through the process of tire registration, which plays the most vital role in the recall process, because, without it, tire manufacturers cannot identify and notify a tire purchaser in the event of a safety recall.[2]

A federal regulation sets forth a very simple system for the registration of tires sold by an Independent Tire Dealer – like Defendants here – which includes "one whose business is not owned or controlled by a tire manufacturer or brand name owner." 49 C.F.R. § 574.3(c)(1). Section 574.8 simply requires that every time Independent Tire Dealers sell tires, they must do one of three things to register the tires:

(a) provide each tire purchaser with a paper tire-registration form to send to the tire manufacturer at the consumer's expense, on which the Independent Tire Dealer has recorded the entire TIN of each tire sold or leased to the tire purchaser, along with the Independent Tire Dealer's contact information. The tire purchaser needs to add his or her name and address to the form and mail it to the tire manufacturer or the tire manufacturer's designated agent to complete the tire registration process;

(b) record the following information on a paper tire-registration form and return that form to the tire manufacturer or the tire manufacturer's designated agent

---

[2] NTSB Special Report at 15.

at no cost to the tire purchaser within a specified time period (generally 30 days): (i) the tire purchaser's name and address, (ii) the entire TIN of each tire sold or leased to the tire purchaser; or

(c)     electronically transmit the following information to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within a specified time period (generally 30 days): (i) the tire purchaser's name and address, (ii) the entire TIN of each tire sold or leased to the tire purchaser. Independent Tire Dealers who choose option No. 3 must include a statement to that effect on the invoice and provide the invoice to the tire purchaser.[3]

Despite the clear and simple alternative methods provided to register tires sold, Defendants have chosen to willfully ignore these requirements by not assisting in registration as required by the regulations during the class period. The purpose of this lawsuit is to remedy the harm done to class members by Defendants' dangerous practice of ignoring this fundamental safety regulation, and to obtain injunctive relief requiring Defendants to comply with federal tire-registration law in the future and compensate plaintiffs in the classes for the time, expense, and effort to now rectify the lack of registration information on file with the manufacturers who manufactured their tires.

## FACTUAL BACKGROUND

Plaintiffs – Virginia Beach, Virginia residents – separately purchased tires from NTB in January 2019. Neither was handed a tire-registration form, nor do the invoices of either's purchase indicate that NTB transmitted the federally required information directly to the tire manufacturer within 30 days of the purchase.

Discovery to date shows that neither had their information been transmitted to the tire manufacturer as required by federal statute and regulation. When they purchased the tires from

---

[3] *See* Compl. ¶ 35. In contrast, unlike Independent Tire Dealers, tire dealers and distributors controlled by a manufacturer or brand name owner are required to directly register newly purchased tires for the consumer and to forward the registration information to the tire manufacturer. 49 C.F.R. § 574.8(b).

NTB, Plaintiffs believed they were purchasing tires sold in conformance with law and expected to be reachable if the tires they purchased were recalled by the manufacturer. By their violations of the federal tire-registration law, Defendants have patently violated state and federal laws and, in the event of a recall, put Plaintiffs and other similarly situated tire consumers at grave risk of injury or death because the manufacturer has no contact information of Plaintiffs or other class members.

**ARGUMENT**

I.  **Class Certification should be granted because Plaintiffs' Complaint satisfies all of the requirements of Fed. R. Civ. P. 23.**

In deciding a motion for class certification, a court "does not determine whether Plaintiffs will ultimately prevail on the merits, but it considers the factual record in determining whether the requirements of Rule 23 are satisfied." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 636 (S.D. Fla. 2015) (citing *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003)). "At the same time, the substantive allegations of the plaintiffs are accepted as true." *In re Physician Corp. of America Sec. Litig.*, No. 97-3678-CIV, 2003 WL 25820056, at *3 (S.D. Fla. May 21, 2003) (citing *In re Carbon Dioxide Antitrust Litigation,* 149 F.R.D. 229, 232 (M. D. Fla. 1993)). The Supreme Court has stated that "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.' "*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 133 S. Ct. 1184, 1191, 185 L.Ed.2d 308 (2013).

"Parties seeking class action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation." *Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 676 (S.D. Fla. 2009) (citing *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 613 (1997)). "In addition to meeting the four

requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b)." *Id.* (citation omitted).

Plaintiffs request certification of a nationwide class and a Virginia subclass consisting of individuals who purchased a tire from Defendant or their subsidiaries during the class period (from October 1, 2012 to the present) for their personal use, rather than for resale or distribution, without being provided with a registration card or otherwise assisted in registration as required by 49 U.S.C. § 574.8(a)(1). The proposed classes are "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) (internal citations and quotations omitted).  As discussed below, the proposed classes satisfy the requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

### 1. The proposed classes are ascertainable.

Class certification is appropriate when Plaintiffs' class is "adequately defined and clearly ascertainable." *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018) (quoting *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 984 (11th Cir. 2016)). "Ascertainability is an implicit requirement of Rule 23 for class certification." *Cox v Porsche Financial Services, Inc*., 330 F.R.D. 322, 330 (S.D. Fla. 2019) (citing *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)). "To meet the ascertainability requirement, the Eleventh Circuit requires the plaintiff to show [']objective criteria['] for identifying class members," which requires that the identification process be "administratively feasible." *Id.* (quoting *Bussey*, 562 F. App'x at 787).

Plaintiffs' proposed classes are ascertainable because the proposed class members can be "identified in an administratively feasible" manner using a "manageable process that does not require much, if any, individual inquiry." *Id.* (citing *Karhu v. Vital Pharm., Inc.*, 621 F. App'x

945, 946 (11th Cir. 2015)). *See also Pottinger v. City of Miami*, 720 F. Supp. 955, 957-58 (S.D. Fla. 1989) (finding a class was sufficiently defined when the class "is neither vague nor overbroad and is sufficiently identifiable.").

Here, the proposed class members can be identified from Defendants' sales and transactional records, including the point-of-sale system noted in Defendants' discovery responses. *See* Ex. 2 to *Affidavit of Eric N. Linsk In Support Of Plaintiffs' Motion For Class Certification* ("Ex. A") at 6, 8 (responses to interrogatories 5, 9). Discovery from third party tire manufacturers[4] will further assist in the process of identifying class members accurately, because the tire manufacturers are required to record and maintain tire registration information for each tire sale. *See* 49 C.F.R. § 574.7(b). Moreover, the tire manufacturers must maintain accurate information as to each tire that they sold, including the identity of the purchasers, the number of tires "for which registration forms have been submitted to the manufacturer or its designee," and "the total number of tires sold by the manufacturer." 49 C.F.R. § 574.7(c). These records, combined with Defendants' internal records, will be "in fact useful for identification purposes." *Karhu*, 621 F. App'x at 948.

Because Plaintiffs have "advanced a class definition that establishes objective criteria for determining class membership," Plaintiffs have met the requirement of ascertainability. *Cox*, 330 F.R.D. at 331.

**2.      The Rule 23(a) requirements are satisfied.**

"Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions." *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 675 (S.D. Fla. 2018). Rule 23(a) requires that

---

[4] On August 12, 2019, Plaintiffs served Notices of Subpoena, Subpoena and Subpoena Schedule A to Yokohama Tire Corporation and Nitto Tire U.S.A., Inc.

"(1) the class is so numerous that joinder of all members is impracticable; (2) there is a question of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "In determining whether the Rule 23 requirements have been met for class certification purposes, however, a district court does not address the merits of the claims." *Drayton v. Western Auto Supply Co.*, 2002 WL 32508918, *6 (11th Cir. Mar. 11, 2002) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974)).

Plaintiffs' allegations meet the Fed. R. Civ. P. 23(a) elements of numerosity, commonality, typicality, and adequacy.

### a. The class members are so numerous that joinder is impracticable.

Generally, a class with forty or more members satisfies numerosity. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), *cert denied*, 479 U.S. 883 (1986). *See also Fuller Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000) (plaintiffs "must make reasonable estimates with support as to size of the proposed class."). Defendants' volume of sales is estimated to be at least in the thousands. As shown in Defendants' responses to interrogatories, Defendants "have sold tires to more than a thousand customers each year during the relevant time period." Ex. 2 to Ex. A at 4, 5 (responses to interrogatories 1, 2).

Plaintiffs also alleged that "the tire industry shipped 278.3 million new tires for passenger vehicles and light trucks. That total included 44 million original equipment tires for new passenger vehicles and 201.6 million replacement tires for passenger vehicles. Another 4.4 million original equipment tires and 28.3 million replacement tires were shipped for light trucks. In 2016, the tire

industry was estimated to be a $ 38.1 billion industry." Compl. ¶21. The allegations should be accepted as true "when assessing Rule 23 requirements." *Drayton,* 2002 WL 32508918, at *6.

Each of the classes therefore satisfies the numerosity requirement.

### b.  There are issues of law and fact common to all class members.

Under Rule 23(a), "commonality" requires that "there be at least one issue whose resolution will affect all of a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotations omitted). Commonality is satisfied where the claims of all class members "depend upon a common contention [...] of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

This case presents several common questions:

(a)   Whether Defendants engaged in unfair, unlawful, or fraudulent business practices under states' consumer protection laws;

(b)   Whether Defendants misrepresented and/or failed to disclose material facts about their tire-registration process;

(c)   Whether Defendants have made false or misleading statements of fact concerning the existence of their tire-registration process;

(d)   Whether Defendants' conduct, as alleged herein, was intentional and knowing;

(e)   Whether Defendants have breached warranties with the classes and were unjustly enriched as a result of their deceptive conduct;

(f)   Whether Defendants' conduct violated the Magnuson-Moss Act;

(g)   Whether class members are entitled to damages and/or restitution, and in what amounts; and

(h)   Whether Defendants are likely to continue using false or misleading sales of unregistered tires such that an injunction is necessary.

These common questions all derive from Defendants' fraudulent conduct (i.e., misrepresentations and omissions) and failure to follow Congress's directive that, without exception, all tires sold by tire dealers must be registered with the tire manufacturers. As discussed

above, to ensure complete and accurate registration, rules enacted by federal regulators require independent tire retailers to help buyers get their tires registered with the tire manufacturers, either by electronically registering or sending in registration cards for the purchasers or by filling out and providing registration cards to the purchasers to mail in themselves. Defendants indicated in their discovery responses that they have a common system by which they may have communicated certain tire purchasers' information to manufacturers. Although, Plaintiffs maintain that Defendants' chosen system does not comply with federal law. *See* Ex 2 to Ex. A at 5, 6, 8 (responses to interrogatories 3–5, 9). In accordance with *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 350 (2011), Plaintiffs have established "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation" and provide common issues "susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2011).

### c.  Plaintiffs' claims are typical of class members' claims.

Typicality is satisfied when a "sufficient nexus exists between the claims of the named representations and those of the class at large." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (internal quotation marks omitted). The claims here arise from the same "event or pattern and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). The typicality test "is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiffs' claims are typical of the claims of all proposed class members because they were subjected to the same deceptive conduct: Defendants' fraudulent misrepresentations and omissions, and their failure to follow the federal tire-registration law. Plaintiffs and class members are pursuing the same legal theories and have all been injured in a typical fashion by

Defendants' conduct. These claims share "the same essential characteristic as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted).

### d. Plaintiffs will adequately represent the classes.

The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, a court reviews "(1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Plaintiffs have already shown that they will vigorously pursue these claims on behalf of class members. They have investigated the claims carefully, initiated and pursued discovery, and opposed Defendants' motion to dismiss. Because they have been subjected to the same tire-registration violations as class members, Plaintiffs have no conflicts with other members of the classes. Plaintiffs have retained capable counsel with substantial experience litigating lawsuits like this one. Plaintiffs' counsel have devoted a significant amount of time to this case and will continue to commit the resources necessary to represent the class. Plaintiffs and their counsel have demonstrated their commitment to prosecuting this case on behalf of all class members.

## II. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

Certification is appropriate under Rule 23(b)(2) when the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). In certifying a class pursuant to Rule 23(b)(2), two basic requirements must be met: (1) the class members must have been harmed in essentially the same way by the defendant's acts; and (2) the common injury may properly be addressed by class-wide injunctive or equitable

remedies. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) ("[T]he claims contemplated in a [Rule 23](b)(2) action are *class* claims, claims resting on the same grounds and applying more or less equally to all members of the class.") (emphasis in original). Where these two requirements are met, the class members' interests are sufficiently cohesive that absent members will be adequately represented. *Id.* at 1155 n. 8 ("[T]he (b)(2) class is distinguished from the (b)(3) class by class cohesiveness .... Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries.").

Here, Plaintiffs seek an injunction to prevent Defendants from selling unregistered tires, selling tires without registering them with the manufacturer, or selling tires without providing registration cards to consumers. Compl. ¶¶107–13. Defendants' violation of the tire-registration statute and regulations is a uniform practice applicable to all members of the putative class. A challenge to Defendants' violations of the tire-registration statute and regulations, which uniformly harm putative class members, falls squarely within the ambit of Rule 23(b)(2). *See Edmonds v. Levine*, 233 F.R.D. 638, 642 (S.D. Fla. 2006) (concluding that class plaintiff satisfied Rule 23(b)(2) by maintaining that a defendant "has acted in a manner equally applicable to all members of the class," and that "injunctive or declaratory relief is appropriate.").

Plaintiffs' injunctive claim requests that this Court enjoin Defendants from further misconduct in violation of the statute and provide a method, manner, or means by which Plaintiffs and class members can confirm registration and the accuracy of the provided information. The relief requested here is applicable to the entire class. As putative class members are purchasers of tires sold by Defendants, they are bound by a common trait that predominates in the litigation.

Accordingly, the requirements of Rule 23(b)(2) are easily met.

### III.     The Requirements of Rule 23(b)(3) Are Satisfied.

Under Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these elements as discussed below.

#### 1.     Plaintiffs Meet the Predominance Requirement

"[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis . . ." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (quotations and citation omitted). The common questions need not be dispositive of the entire action because "predominate" as used in the rule should not automatically be equated with "dispositive." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 694 (S.D. Fla. 2002) (citation omitted).

Here, the facts and law underlying all of Plaintiffs' claims are the same for all class members. Specifically, Plaintiffs and each of the members of the classes purchased tires from Defendants during the class period without being provided with a registration card and without being provided with a way to confirm registration or the accuracy of their contact information. Defendants violated the same law and regulations each time when it made a tire sale to a class member. Therefore, common issues of law and fact predominate in the resolution of each of the six counts in the Complaint.

#### a.     Counts I & II: Breach of Implied Warranty and the MMWA

Merchantable tires are required to "pass without objection" in their "trade," be "fit for the ordinary purpose for which such good are used," and "conform to" their marketing

representations. Va. Code Ann. § 8-2-314(2); U.C.C. § 2-314. Plaintiffs allege that Defendants' violation of the tire-registration law breached the implied warranty of merchantability under Va. Code Ann. § 8.2–314 and U.C.C. § 2-314. Further, Defendants' violation happened at the point of sale of each tire to each of the putative class members. Defendants' violation of the tire-registration statute and regulations is a uniform practice applicable to all members of the putative class.

Thus, the resolution of counts I and II depend upon facts and law that are common to the classes. There are no individualized issues with respect to each class member because Defendants' violation of the tire-registration statute and regulations is a uniform practice applicable to all members of the putative classes.

> ### b.    Count III: Violation of the Florida Deceptive and Unfair Trade Practices Act

"The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citation omitted). Critically, "[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue. Hence, the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist in the present case." *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. Dist. Ct. App. 2000). Rather, whether Defendants' conduct constitutes a deceptive act turns on whether Defendants' representations or omissions were "likely to mislead consumers," a question common to the putative class members.

Further, the measure of damages is plainly amenable to class treatment. "[W]hen buying tires, Class members not only pay for the tires, but also pay the cost of Defendants' compliance

with federal law[.]" Compl. ¶9; *see also id.* ¶¶ 11, 66, 75, 81, 82. Class members' damages are calculable pursuant to a common methodology, as will be demonstrated through Plaintiffs' expert report.

### c.    Count IV: Unjust Enrichment

Common issues of law and fact will also predominate in the resolution of Plaintiffs' claim for unjust enrichment. Under Florida law, the "elements of an unjust enrichment claim are 'a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004) (citation omitted). Further, unjust enrichment involves three universal elements, which are "substantially similar" among states: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant accepted or retained the benefit, and (3) under the circumstances, it would be unjust for the defendant to keep the benefit. *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20–21 (D. Mass. 2010). *See also Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state.").

Each of those elements involve common proof and should result in a common resolution among all members of the Nationwide Unjust Enrichment Class. First, it is not open to dispute that the putative class members conferred a benefit upon Defendants by purchasing tires from Defendants. Plaintiffs have alleged that the price of the tires included the costs associated with compliance with the law.

Second, there is no reasonable dispute that Defendants retained the benefits conferred from the sales of unregistered tires to putative class members. The fact of Defendants' retention

14

of benefits is plainly common to the class. "Defendants were unjustly enriched when [they] made extra sales during the time it would have taken to [comply with the law]. As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched." Compl. ¶89.

Third, whether Defendants' retention of any benefits is inequitable or unjust is common to all class members. Given those proceeds were obtained from sales that follow a uniform conduct common to all class members, "it is difficult to conceive of any significant equitable differences between the class members." *James D. Hinson Elec. Constr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011). This is because the unjust enrichment claim here focuses on the conduct of Defendants, and Defendants' "business operations are the same to all members of the putative class." *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013) ("Where, as here, highly individualized issues are absent, class certification for an unjust enrichment claim is appropriate."). *See also In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) ("Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not.").

### d.    Counts V & VI: Negligence and Negligence Per Se

Common issues of law and fact will also predominate in the resolution of Plaintiffs' claims for Negligence and Negligence Per Se. The elements of a claim of negligence are a duty of care, breach of that duty, causation and damages. *Gibbs v. Hernandez*, 810 So.2d 1034, 1036 (Fla. Dist. Ct. App. 2002). "[A]n action for negligence per se requires a plaintiff to show [']violation of a statute which establishes a duty to take precautions to protect a particular class of persons from a particularly injury or type of injury.[']" *Resnick v. AvMed, Inc.*, 693 F.3d

1317, 1325 (11th Cir. 2012) (citations omitted).

Plaintiffs allege that Defendants owe a duty of care as the seller of tires; that Defendants breached that duty because they are aware of the registration requirements yet neglect them; and that Defendants are the actual and proximate cause of the injuries to Plaintiffs. *See* Compl. ¶¶4, 7, 22, 24, 34. Any disputes regarding the issue of duty of care owed by Defendants or breach of that duty would be resolved upon facts and law that are common to the class. Defendants' violation of the tire-registration law and regulations is a uniform practice applicable to all members of the putative class.

Thus, each of the elements in counts V and VI involve common proof and should result in a common resolution among all members of the putative class. There are no individualized issues with respect to each class member because Defendants' violation of the tire-registration statute and regulations is a uniform practice applicable to all members of the putative classes.

### 2. Plaintiffs Meet the Superiority Requirement.

Rule 23(b)(3) requires that Plaintiffs show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In assessing whether this standard is met, the factors to be considered include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). This case meets these standards.

First, the number of putative class members is too large and the individual claims are too small for the prosecution of separate actions by each putative class member to be likely, practical, or desirable. Plaintiffs allege that they overpaid for tires that they and the putative class members

purchased from Defendants. Those amounts, although substantial in the aggregate for the classes, are insufficient for economical individual litigation on behalf of each aggrieved member of the classes. Second, Plaintiffs know of no other case filed in Florida under these claims. Third, there should be no unusual difficulties in managing this class action. *See, e.g., Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012) (even a large and complex class action lawsuit would be more manageable, from the court's perspective, than being inundated with thousands of individual lawsuits with overlapping factual allegations and all involving the same proof to establish an defendants' unlawful conduct). Furthermore, any complexity occasioned by the application of multiple states' laws must be considered in light of the factual simplicity of this case; that is, the class action device remains superior even if some effort is required to apply the simple, undisputed facts of this case to multiple states' laws.

In sum, prosecution of this action as a class action "offers substantial economies of time, effort, and expense for the litigants in this matter, as well as for the Court." *Terazosin*, 220 F.R.D. at 700. "Further, as to the consumer class members, the class action device is particularly appropriate where, as here, it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Id.* (internal quotations and citation omitted). Because it would be economically unreasonable for Plaintiffs and the putative class members to adjudicate their separate claims individually, the superiority requirements of Rule 23(b)(3) are satisfied here.

## IV.   The Court should appoint the undersigned as Class Counsel.

Under Fed. R. Civ. P. 23(g), "a court that certifies a class must appoint class counsel." The following elements are relevant to the appointment inquiry: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's

17

knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, proposed Class Counsel thoroughly investigated the claims and background concerning the Plaintiffs' tire purchases before filing their complaint, filed a substantive opposition to Defendants' motion to dismiss, and engaged in discovery as quickly as possible.[5] As demonstrated in Ex. B, Ex. C and Ex. D, proposed Class Counsel has served and successfully litigated as lead counsel or co-counsel in numerous similar consumer class actions, and demonstrated their understanding of Florida and federal law in their motion to dismiss briefing. Proposed Class Counsel has devoted, and will continue to devote, a significant amount of time to this case, and will continue to commit the resources necessary to represent the class.

## **CONCLUSION**

For all of the above-stated reasons, Plaintiffs respectfully request that this Court grant their motion for class certification in its entirety.

---

[5] Plaintiffs served discovery requests on Defendants on May 29, 2019, *see* Linsk Aff. Ex. 1 at 9, five days after the scheduling order that authorized discovery to begin immediately. *See also* LR 23.1 (court "may order postponement of the determination [of class certification] pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Whenever possible, where it is held that the determination should be postponed, a date will be fixed by the Court for renewal of the motion.").

Dated: August 13, 2019                      Respectfully submitted,


                                            */s/ Jordan L. Chaikin*
                                            Jordan L. Chaikin
                                            Florida Bar Number: 0878421
                                            **CHAIKIN LAW FIRM PLLC**
                                            12800 University Drive, Suite 600
                                            Fort Myers, Florida 33907
                                            Telephone: (239) 470-8338
                                            Facsimile: (239) 204-2425
                                            Email: jordan@chaikinlawfirm.com

                                            Cuneo Gilbert & LaDuca, LLP
                                            */s/* Charles J. LaDuca
                                            Charles J. LaDuca
                                            Brendan S. Thompson
                                            Yifei ("Evelyn") Li
                                            4725 Wisconsin Avenue, NW, Suite 200
                                            Washington, DC 20016
                                            Telephone: (202)789-3960
                                            charles@cuneolaw.com
                                            brendant@cuneolaw.com
                                            evelyn@cuneolaw.com

                                            LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                            /s/ Robert K. Shelquist
                                            Robert K. Shelquist, #021310X (MN)
                                            Rebecca A. Peterson, #0392663 (MN)
                                            Eric N. Linsk, #0388827 (MN)
                                            100 Washington Avenue South, Suite 2200
                                            Minneapolis, MN 55401
                                            Telephone: (612) 339-6900
                                            Facsimile: (612) 339-0981
                                            rkshelquist@locklaw.com
                                            rapeterson@locklaw.com
                                            RNLinsk@locklaw.com

                                            The Kessler Law Firm PLLC
                                            /s/ Chris Kessler
                                            Christopher C. Kessler, #18696 (NC)
                                            PO Box 8064
                                            Greenville, NC 27835
                                            (252) 321-2535
                                            cck@kesslerlawfirmpllc.com

                                            MCDOUGALL LAWFIRM, LLC
                                            /s/ J. Olin McDougall, II
                                            J. Olin McDougall, II, Esquire
                                            Post Office Box 1336
                                            115 Lady's Island Commons

Beaufort, South Carolina 29901-1336
(843) 379-7000
(843) 379-7007-Fax
lin@mlf.law

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically

filed with the Clerk of Court this 13th day of August 2019, by using the CM/ECF system which

will send notice of electronic filing to all parties of record.

By:     */s/ Jordan L. Chaikin*
        Jordan L. Chaikin
        Florida Bar Number 0878421
        **CHAIKIN LAW FIRM PLLC**
        12800 University Drive, Suite 600
        Fort Myers, Florida 33907
        Telephone: (239) 470-8338
        Facsimile: (239) 433-6836
        Email: Jordan@chaikinlawfirm.com

        *Counsel for Plaintiffs*

20