## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

BRUCE EXUM, JR., and EMILIE PALMER,  :   Case No.: 9:19-CV-80121-RLR
individually and on behalf of all others similarly  :
situated,  :
 :
                    Plaintiffs,  :
       vs.  :
 :
NATIONAL TIRE AND BATTERY and TBC  :
CORPORATION  :
 :
                    Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

58762573v.1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

      A.      Procedural History ........................................................................................... 2

      B.      Tire Registration Regulations ........................................................................... 3

      C.      Defendants' Tire Registration Process............................................................... 3

      D.      Plaintiffs' Transactions and Key Admissions ................................................... 5

III.    ARGUMENT ................................................................................................................. 7

      A.      Defendants' Pending Motion to Dismiss Should be Granted, Thus,
            Rendering the Motion for Class Certification Moot. ......................................... 7

      B.      Should Their Complaint Survive, Plaintiffs Nevertheless Fail to Establish
            the Requisite Elements for Class Certification Under Rule 23............................ 9

            1.      Plaintiffs Have Failed to Satisfy the Rule 23(a) Requirements ............... 10

                  a.      Plaintiffs cannot satisfy the Typicality or Adequacy
                        requirements of Rule 23(a). ........................................................ 10

                  b.      Plaintiffs cannot satisfy the numerosity requirement of Rule
                        23(a). .......................................................................................... 12

            2.      Plaintiffs Fail to establish the additional requirements of Rule
                23(b). ....................................................................................................... 13

                  a.      Certification is not warranted under Rule 23(b)(2)...................... 13

                        i.      Plaintiffs predominately seek monetary damages............. 13

                        ii.      Plaintiffs have no legal basis upon which to seek
                              injunctive relief, either individually or as class
                            representatives.................................................................... 14

                  b.      Certification is not warranted under Rule 23(b)(3)...................... 15

                    c.      The proposed classes are not ascertainable.................................. 19

IV.     CONCLUSION............................................................................................................ 20

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abby v. Paige*,
  282 F.R.D. 576 (S.D. FL 2012) ...........................................................................12

*Adams v. Nissan N. Am., Inc.*,
  17-cv-2653, 2018 WL 2338871 (S.D. Tex. May 4, 2018) ....................................15

*Alhassid v. Bank of America, NA*,
  307 F.R.D. 684 (S.D. FL. 2015) ..........................................................................11

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................8, 16

*Ayres v. GMC*,
  234 F.3d 514 (11th Cir. 2000) .......................................................................14, 15

*Bartholf v. GM*,
  18-cv-35, 2018 WL 1614122 (W.D. Ky. Apr. 3, 2018) ........................................15

*Bell Atlantic Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ...............................................................................17

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ..............................................................................19

*Castano v. American Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ..................................................................................19

*Clay v. Am. Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999) ............................................................................19

*Cohen v. Implant Innovations, Inc.*,
  259 F.R.D. 617 (S.D. Fla. 2008) ..........................................................................18

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ................................................................................18

*Comcast v. Behrend*,
  569 U.S. 27 (2013) ...............................................................................................17

*David v. Am. Suzuki Motor Corp.*,
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) .................................................................18

*DWFII Corp. v. State Farm Mut. Auto Ins. Co.*,
    469 F. App'x 762 (11th Cir. 2012) ....................................................................13

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .........................................................................13

*Eubank v Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ........................................................................11

*Fla. Wildlife Fed'n, Inc. v. S. Fla Water Mgmt. Dist.*,
    647 F.3d 1296 (11th Cir. 2011) ......................................................................7

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) .....................................................................18

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)...............................................................................9, 10

*Georgine v. Amchem Prods., Inc.*,
    83 F.3d 610 (3d Cir. 1996).............................................................................19

*Gilchrist v. Bolger*,
    733 F.2d 1551 (11th Cir. 1984) .....................................................................10

*Heaven v. Trust Co. Bank*,
    118 F.3d 735 (11th Cir. 1997) ......................................................................10

*Hutson v. Rexall Sundown, Inc.*,
    837 So.2d 1090 (Fla. 4th DCA 2003) ............................................................19

*Inetianbor v. Cashcall, Inc.*,
    314 F.R.D. 535 (S.D. Fla. 2016) ...................................................................19

*Johnson v. Nextel Communications, Inc.*
    780 F.3d 128 (2nd Cir. 2015).......................................................................18

*Karhu v. Vital Pharmaceuticals*,
    No. 13-CIV-60768, 2014 WL 815253 (S.D. Fla. March 3, 2014)...........................13, 18, 19

*Keleceseny v. Chevron, U.A.A., Inc.*,
    262 F.R.D. 660 (S.D. Fla. 2009) ...................................................................12

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir.2004) *abrogated on other grounds*, 553 U.S. 639
    (2008)...................................................................................................17

*London v. Wal-Mart Stores, Inc.*
    340 F.3d 1246 (11th Cir. 2003) .....................................................................11

iii

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................19

*Nazario v. Professional Account Services, Inc.*,
    No. 16-cv-00772, 2018 WL 1449177 (M.D. Fla. Feb. 13, 2018)...........................13

*Nicklaw v. Citimortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ................................................................................8

*Oscar v. BMW of N. Am., LLC*,
    274 F.R.D. 498 (S.D.N.Y. 2011) ...........................................................................18

*In re Photochromatic Lens Antitrust Litigation*,
    No. 10-cv-02171, 2014 WL 1338605 (M.D. Fla. Apr. 3, 2014)...........................10

*Pilgrim v. Universal Health Card*,
    LLC, 660 F.3d 943 (6th Cir. 2011).........................................................................19

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ..........................................................................8, 10

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla., 2014) ...........................................................7, 8, 13, 14

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th. Cir. 2014) ................................................................................11

*Rosa v. Am. Water Heater Co.*,
    177 F. Supp. 3d 1025 (S.D.Tex. 2016) ..................................................................18

*S. Broad Grp., LLC v. Gem Broad, Inc.*,
    145 F. Supp. 2d 1316 (M.D. Fla. 2001), aff'd, 49 F. App'x 288 (11th Cir.
    2002) ......................................................................................................................18

*Sanchez-Knutson v. Ford Motor Company*,
    No. 14-CIV-61344, 2015 WL 11197772 (S.D. Fla., 2015) ................................7, 10

*Sateriale v. RJ Reynolds Tobacco Co.*,
    No. 09-cv-08394, 2014 WL 7338877 (C.D.Cal. 2014) .........................................18

*Shroder v. Suburban Coastal Corp.*,
    729 F.2d 1371 (11th Cir. 1984) .............................................................................11

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016)..........................................................................................2, 9

*Stalker v. MBS Direct, LLC*,
    No. 10-11355, 2012 WL 6642518 (E.D. Mich. Dec. 20, 2012) ...........................19

iv

*Stalley v. ADS Alliance Data Systems, Inc.*,
    296 F.R.D. 670 (M.D. Fla. 2013)............................................................20

*State Farm Mut. Auto. Ins. Co. v. Roach*,
    945 So.2d 1160 (Fla. 2006)................................................................18

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) ............................................................19

*Thorne v. Pep Boys - Manny, Moe & Jack, Inc.*,
    No. 19-cv-00393, 2019 WL 3233256 (E.D. Pa. July 18, 2019) .........................8, 9

*Timm v. Goodyear Dunlop Tires N. Am. Ltd.*,
    309 F. Supp. 3d 595 (N.D. Ind. 2018) ..................................................15

*Truesdell v. Thomas*,
    889 F.3d 719 (11th Cir. 2018) ............................................................20

*Stalley ex rel. U.S. v. Orlando Regional*,
    524 F.3d 1229 (11th Cir. 2008) ..........................................................7

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ....................................................8, 12, 17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................9, 13, 15, 16

*Walewski v. Zanimax Media, Inc*,
    502 Fed. Appx. 857 (11th Cir. 2012)....................................................8

*Webster v. Royal Caribbean Cruises, LTD.*,
    124 F. Supp. 2d 1317 (S.D. FL 2000)...................................................7

*Wilks v. Ford Motor Co.*,
    174 F.R.D. 332 (D.N.J. 1997)............................................................19

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................19

**Statutes**

49 U.S.C. Chapters 301-331 ...................................................................14

Florida Deceptive and Unfair Trade Practices Act .............................................2

National Traffic and Motor Vehicle Safety Act of 1966,
    49 U.S.C. § 30101, et seq....................................................................14

Safety Act...............................................................................9, 14, 15

v

## Other Authorities

49 C.F.R. Part 553.................................................................................................................14

49 C.F.R. § 574..................................................................................................................17

49 C.F.R. § 574.2.................................................................................................................9

49 C.F.R. § 574.8..............................................................................................................2, 8

49 C.F.R. § 574.8(a)(1).........................................................................................................3

49 C.F.R. § 574.8(a)(1)(iii)...................................................................................................3

Fed. R. Civ. P. 12(b)(1).........................................................................................................7

Fed. R. Civ. P. 23..........................................................................................................*passim*

Fed. R. Civ. P. 23(a)......................................................................................................*passim*

Fed. R. Civ. P. 23(a)(3)...................................................................................................10, 11

Fed. R. Civ. P. 23(a)(4)........................................................................................................11

Fed. R. Civ. P. 23(b).........................................................................................................1, 13

Fed. R. Civ. P. 23(b)(2)........................................................................................................13

Fed. R. Civ. P. 23(b)(3)............................................................................................13, 15, 16

Fed. R. Civ. P. 23(c)(1).........................................................................................................7

## I.     INTRODUCTION

This case centers on Plaintiff's contention that they were injured as a result of Defendants purported failure to comply with a federal regulation regarding tire registrations.  Plaintiffs assert that they have satisfied their burden of establishing the requisite elements of Rule 23. They have not.

Notably, Plaintiffs' motion contains virtually no citations to record evidence.  Instead, the motion is based, in large part, on unsupported conclusory statements regarding the requisite elements for certification under Rule 23.  This is not surprising given the fact that record evidence highlights the myriad reasons why this case cannot advance as a class action.

First and foremost, Plaintiffs cannot establish Article III standing.  For this reason alone the case cannot proceed, either with respect to Plaintiffs' individual claims, or, let alone, as a class action.

Second, Plaintiffs fail to satisfy the requirements of Rule 23(a).  For example, Plaintiffs' claims will be subject to numerous defenses, including the fact that they have not been injured. Accordingly, they do not have the requisite typicality to raise the asserted claims—virtually all of which require proof of damage—on behalf of a class.  Plaintiffs also fail to make a showing, with factual support, that the numerosity requirement is satisfied.

Similarly, Plaintiffs fail to satisfy the requirements of Rule 23(b). Specifically, through their Complaint Plaintiffs predominately seek monetary damages and otherwise have no legal basis upon which to pursue injunctive relief.  As a result, certification of a (b)(2) class is unwarranted.

And finally, with respect to a (b)(3) class, even a cursory review of the record evidence highlights that common issues of fact or law do not predominate.  For example, given the variability in laws from state to state, a trial encompassing a national class in this case would require numerous different verdict forms and jury instructions, potentially one for each of the 50

states.  It is no slight to the capabilities and competence of the Court to suggest that comprehensible jury instructions for such a case cannot be written or, if written, accurately applied to the innumerable situations in a single trial.   These practical difficulties—or more accurately, impossibilities—dispel any doubt about whether this case should or reasonably could proceed as a national class. Plaintiffs once again are completely silent as to this significant point.

## II.   BACKGROUND

### A.   Procedural History

Plaintiffs filed their putative class action complaint ("Complaint") on January 29, 2019. The Complaint contains seven counts: (1) implied warranty; (2) Magnuson-Moss Warranty Act; (3) Florida Deceptive and Unfair Trade Practices Act; (4) Unjust Enrichment; (5) Common Law Negligence; (6) Negligence per se; and (7) Injunctive Relief.   Each count is based on the underlying premise that Plaintiffs have been harmed as a result of Defendants purported failure to comply with a federal record-keeping regulation, 49 C.F.R. § 574.8 (the "Regulation").

On May 28, 2019, Defendants filed a Motion to Dismiss.  As set forth in greater detail in Defendants' motion, neither Congress nor any agency granted a private cause of action to enforce the Regulation.  Accordingly, the alleged violations of the Regulation create no duty that Plaintiffs can enforce.  Plaintiffs' Complaint fails for other reasons as well. For example, Plaintiffs cannot establish Article III standing to bring this action, pursuant to *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016) and precedential Eleventh Circuit authority.  Additionally, the Complaint contains, at most, conclusory allegations that Defendants do not comply with the Regulation.  Defendants' Motion to Dismiss has been fully briefed.

Although a potentially dispositive Motion to Dismiss remains pending, the parties have engaged in discovery.  Defendants have responded to written discovery requests and have

produced several thousand pages of documents.  In addition, Defendants have deposed both of the named Plaintiffs.

### B.      Tire Registration Regulations

In the Complaint, Plaintiffs quote from certain portions of the Regulation at issue in this case.  Importantly, however, Plaintiffs fail to acknowledge that tire dealers have multiple ways in which they can elect to comply with the Regulation. Specifically, the Regulation provides as follows:

> Each independent distributor and each independent dealer selling or leasing new tires to tire purchasers...shall comply with paragraph (a)(1)(i), (a)(1)(ii) or (a)(1)(iii) of this section:
>
> (i)      At the time of sale or lease of the tire, provide each purchaser with a paper tire registration form...
>
> (ii)     Record the following information on a paper tire registration form and return it to the tire manufacturer, or its designee, on behalf of the tire purchaser, at no charge to the tire purchaser and within 30 days of the date of sale or lease...
>
> (iii)    Electronically transmit the following information on the tire registration form by any means listed on the form by the tire manufacturer, or by such other means as may be authorized by the tire manufacturer, to the tire manufacturer or its designee, using secure means (e.g., https on the Web), at no charge to the tire purchaser and within 30 days of the date of sale or lease...

49 C.F.R. § 574.8(a)(1).

### C.      Defendants' Tire Registration Process

Consistent with 49 C.F.R. § 574.8(a)(1)(iii), tire manufacturers have designated Defendants to maintain, on their behalf, the required information regarding the sale of tires to consumers (Declaration of Tony Maddox, ¶ ¶8,9, Exhs. 2,3.)[1]  Specifically, for all tire sales to consumers, Defendants' employees record into the point of sale ("POS") system the customer's

---

[1] A copy of the Declaration of Tony Maddox (hereinafter referred to as Maddox Decl. ¶ ___) is attached as Exhibit A.

name and contact information, along with details regarding the purchased tires, including the tire brand, seller name and address, purchase date, invoice number, Tire ID (aka "DOT" number), and quantity (collectively "Tire Sales Information").  (*Id.* ¶ ¶4-7).  Notably, Defendants POS system has been programmed so that a sale cannot be completed, nor an invoice generated, unless the Tire Sales Information has been captured in the system. (*Id.* ¶ 5).  On a daily basis, all Tire Sales Information is transferred to a database known as "tsqldsp01.TireRegistration" where it is stored indefinitely ("Tire Registration Database").  (*Id.* ¶ 7).

Defendants' employees subscribe to an electronic service provided by the National Highway Transportation Safety Administration ("NHTSA") pursuant to which they are automatically notified of all tire recalls in the United States.  The NHTSA tire recall notification includes detailed information regarding the scope of the recall, including, by way of example, the tire manufacturer, brand, manufacture date, etc. (*Id.* ¶¶ 10, 11).  Defendants' employees also receive tire recall information directly from manufacturers and other industry sources.  (*Id.* ¶12, 14).

Consistent with Defendants' policies and procedures dating back to before January 29, 2014,[2] once notified of a tire recall, Defendants query the Tire Registration Database to identify consumers who purchased one or more of the recalled tires through Defendants' retail outlets.  The Tire Sales Information for such individuals is then sent to the applicable manufacturer so that the manufacturer can contact the consumer directly regarding the recall. (*Id.* ¶¶ 16-20).  Record evidence establishes that Defendants have followed and continue to follow their policies and procedures in this regard. (*Id.*).

---

[2] In footnote 2 of the Complaint Plaintiffs assert that "the class period shall encompass all sales of tires by Defendants from October 1, 2012 through the present." Plaintiffs' statement in this regard is ill informed.  The operative statute of limitations is different for each of the asserted claims and is, at most, 4 or 5 years.  The Complaint was filed on January 29, 2019.  Accordingly, the class period could, at most, extend back to January 29, 2014.

4

### D.    Plaintiffs' Transactions and Key Admissions

On January 4, 2019, Emilie Palmer purchased from NTB one Bridgestone tire for her vehicle. (the Palmer Tire"). (*Id.* ¶ 22).  Consistent with Defendants' policies and procedures, the Tire Sales Information associated with the Palmer Tire was inputted into Defendants' POS system at the time of sale and was subsequently transferred to the Tire Registration Database.  (*Id.* ¶ 25).[3]

On January 9, 2019, Bruce Exum purchased from NTB four Cooper tires for his vehicle. (the Exum Tires"). (*Id.* ¶ 21).  Consistent with Defendants' policies and procedures, the Tire Sales Information associated with this transaction was inputted into Defendants' POS system at the time of sale and was subsequently transferred to the Tire Registration Database. (*Id.* ¶ 24).[4]

Importantly, record evidence reflects that a recall has not been issued for either the Palmer Tire or the Exum Tires. (*Id.* ¶¶ 31, 32 ).  Should a recall be issued, however, pursuant to Defendants' policies and procedures, Plaintiffs' Tire Sales Information would be transmitted to the applicable tire manufacturer. (*Id.* ¶ ¶ 26, 27).

During their recent depositions the named Plaintiffs made several admissions that not only torpedo their individual claims but, also, highlight why this case cannot proceed as a class action. For example, even assuming they somehow could establish liability—which they cannot—Plaintiffs admit that damages cannot be quantified. (*See, e.g.,* Exum deposition testimony) (Declaration of Daniel Blouin, Ex. 1, pp. 82:9-13, 82:20-83:4).[5]

> Q:    Quantify for me the damages you believe you've incurred as a result of anything that the defendants have done or failed to do.
>
> A:    . . . I have no way of quantifying that. … I have no idea.

---

[3] The Bridgestone Tire website provides consumers with an opportunity to register their own tires with the company should they elect to do so. (*Id.* ¶ 30).

[4] The Cooper Tire website provides consumers with an opportunity to register their own tires with the company should they elect to do so. (*Id.* ¶ 30).

[5] A copy of the Declaration of Daniel Blouin (hereinafter referred to as Blouin Decl. ¶ ___) is attached as Exhibit B.

***

> Q:      So just to be clear, as you sit here today you have no way to quantify the damages you believe you've incurred as a result of anything the defendants have done or failed to do, is that correct?

> \* \* \*

> A:      I have no way. (*Id.*).

Both Plaintiffs also acknowledged that (1) there are no quality issues with their tires (*Id.* Ex. 1, pp. 65:24-66:4; Ex. 2, pp 41:13-15); (2) they have no complaints regarding the service they received from Defendants (*Id.* Ex. 1, pp. 91:8-15); (3) their tires have not been recalled ((*Id.* Ex. 1, pp. 66:5-8; Ex. 2, pp 41:25-42:4); (4) Defendants did not make any affirmative misrepresentations to Plaintiffs, either verbally or in writing, regarding the tire recall process (*Id.* Ex. 1, pp. 47-49; Ex. 2, pp 55:18-22); and (5) Plaintiffs' decision to purchase tires from NTB had nothing to do with tire registration–they went to NTB solely because of price and convenience (location). (*Id.* Ex. 1, pp. 23:20-24:9; Ex. 2, pp 50:8-10).

Finally, both Plaintiffs admitted to having a long-standing personal relationship with one of the attorneys representing them in this putative class action.  Specifically, Mrs. Palmer is the mother of Attorney Chris Kessler and Mr. Exum admitted that Attorney Kessler is a former long-time friend going back to the "high school days." (*Id.* Ex. 1, pp. 75:18-23; Ex. 2, pp 63:5-9).  As discussed in greater detail below, these facts effectively ring the death knell for Plaintiffs' individual and class claims.[6]

---

[6] Although it remains an open question, it is possible that Mrs. Palmer has replaced the tire she purchased from NTB. Specifically, she testified that for various reasons unrelated to the quality of the tire or the issues raised in this lawsuit, shortly after she purchased a tire from NTB she went to a dealership and purchased four new tires.  (*Id*. at Ex. 2, pp 30:2-31:15). She did not recall whether the dealership replaced the "NTB tire" with one of the four newly purchased tires. Ex. 2, *Id*.). If the "NTB tire" is no longer in use on her car Mrs. Palmer damage claim becomes even more attenuated.

## III.    ARGUMENT

### A.    Defendants' Pending Motion to Dismiss Should be Granted, Thus, Rendering the Motion for Class Certification Moot.

Federal Rule of Civil Procedure 23(c)(1) provides that the court should determine by order "[a]s soon as practicable after the commencement of an action brought as a class action" whether the class action shall be maintained. The majority of courts have held that it is appropriate to consider dispositive motions prior to ruling on a motion for class certification. *Webster v. Royal Caribbean Cruises, LTD.,* 124 F. Supp. 2d 1317, 1321 (S.D. FL 2000)*.* In *Webster* plaintiffs motion for class certification was not filed until after the motion to dismiss had become ripe. *Id.* at 1320-21. The court addressed the motion to dismiss first, appropriately noting that it may be dispositive, thereby rendering the motion for class certification moot. *Id.* at 1321

In the present case, Defendants have presented the Court with numerous reasons why the Complaint should be dismissed, including the fact that Plaintiffs do not have Article III standing to bring this action.[7] "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Sanchez-Knutson v. Ford Motor Company,* No. 14-CIV-61344, 2015 WL 11197772 at *1 (S.D. Fla., 2015), *citing Stalley ex rel. U.S. v. Orlando Regional,* 524 F.3d 1229, 1232 (11th Cir. 2008). "Federal court cannot exercise jurisdiction over cases where the parties lack standing . . ". *Fla. Wildlife Fed'n, Inc. v. S. Fla Water Mgmt. Dist.,* 647 F.3d 1296, 1302 (11th Cir. 2011).

"Prior to the certification of a class and before undertaking any analysis under Rule 23, the Court must determine that at least one named class representative has Article III standing to raise each class claim." *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679, 691 (S.D. Fla., 2014), citing

---

[7] Defendants will not repeat here all of the reasons why Plaintiffs' Complaint should be dismissed but, instead, respectfully direct the Court to the pending motion to dismiss, including the accompanying memoranda.

58762573v.1

*Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000).  In fact, the United States Supreme Court has expressly held that "Rule 23's requirements must be interpreted in keeping with Article III constraints . . .".  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 6113 (1997); *see also, Walewski v. Zanimax Media, Inc,* 502 Fed. Appx. 857, 861 (11th Cir. 2012) (finding no abuse of discretion where certification was denied in part because the class "impermissibly includes members who have no cause of action as a matter of law").  Succinctly stated, "it is axiomatic that the named plaintiffs must have standing for a district court to certify a class action." *Randolph,* 303 F.R.D. at 690, *citing Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1265 (11th Cir. 2009).

As addressed in detail in Defendant's Motion to Dismiss (Dkt. 30), neither the named Plaintiffs, nor any member of the putative class they seek to represent, can establish Article III standing.  Specifically, violation of a statute or regulation for which Congress has not sanctioned a private cause of action and for which no traditional tort analogy exists does not result in concrete injuries that confer standing on the plaintiff.  *See, Nicklaw v. Citimortgage, Inc.,* 839 F.3d 998 (11th Cir. 2016) (Eleventh Circuit applied *Spokeo* and found that a violation of a statutorily mandated procedure did not result in an injury in fact and did not confer standing on the plaintiff.); *see also, Thorne v. Pep Boys - Manny, Moe & Jack, Inc.,* No. 19-cv-00393, 2019 WL 3233256 (E.D. Pa. July 18, 2019).

In *Thorne,* like here, the plaintiff alleged that the defendant violated 49 C.F.R. 574.8. *Id.* at *1. Specifically, in both cases the plaintiffs (who are represented by the same counsel) allege that defendants failed to register or otherwise provide federally required tire-registration forms to class members who purchased tires from defendants.  *Id.*  The complaint in *Thorne,* like the Complaint here, contains several federal and state law claims.  Pep Boys moved to dismiss the

complaint in *Thorne*, asserting, among other things, that (1) plaintiff lacks Article III standing, (2) the federal regulation promulgated under the Safety Act creates no state-law tort or contractual remedy, and (3) plaintiff's complaint fails to allege facts sufficient to state a claim. *Id*. at *5.

> In a thorough and well-reasoned opinion Judge Joyner stated as follows:

> In the context of the case currently before this Court, … [I] conclude that Congress sought to facilitate notification to purchasers of defective or nonconforming tires so that appropriate action may occur by requiring manufacturers to comply with a recordkeeping statute. (*citing* 49 C.F.R. § 574.2. It therefore follows that Plaintiff cannot satisfy the requirements of Article III standing by alleging a bare procedural violation which may result in no harm at all. At the most elementary level, Plaintiff fails to plead that the tires she bought from Pep Boys were in fact, if ever, recalled. The absence of this information is crucial to Plaintiff's lack of Article III standing. For example, not all tires sold by Pep Boys are recalled; similarly, not all recalled tires are sold by Pep Boys. Therefore, we conclude that the particular procedural violation alleged in this case fails to entail a degree-of-risk sufficient to meet the concreteness requirement, and therefore fails to qualify as an injury-in-fact. *Citing Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1550.

*Id*. at *8.

Accordingly, the court granted defendant Pep-Boys motion to dismiss plaintiff's complaint for lack of Article III standing. *Id*. Defendants respectfully submit that the same result is appropriate here. For this reason alone, Plaintiffs' Complaint should be dismissed and the pending motion for class certification should be denied as moot.

**B.      Should Their Complaint Survive, Plaintiffs Nevertheless Fail to Establish the Requisite Elements for Class Certification Under Rule 23.**

Federal Rule of Civil Procedure 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to demonstrate that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. Thus, the U.S. Supreme Court has mandated that district courts conduct a "rigorous analysis" of the Rule 23 requirements. *General Telephone Co. of Southwest v. Falcon*, 457 U.S.

147, 161 (1982); *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).  Class certification is appropriate only if the court finds, by a preponderance of the evidence, that each requirement of Rule 23 has been met.  *In re Photochromatic Lens Antitrust Litigation*, No. 10-cv-02171, 2014 WL 1338605 at *5 (M.D. Fla. Apr. 3, 2014) (Citations omitted).  "The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action."  *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997) (Citations omitted).

Here, Plaintiffs' motion relies almost entirely on unsupported—and factually incorrect—assertions.  A rigorous analysis of the evidence and testimony shows that Plaintiffs cannot satisfy the requisite elements of Rule 23.

       **1.**      **Plaintiffs Have Failed to Satisfy the Rule 23(a) Requirements**

          **a.**      **Plaintiffs cannot satisfy the Typicality or Adequacy requirements of Rule 23(a).**

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3.); *General Telephone Co. v. Falcon*, 457 U.S. 147, 150 n. 2 (1982).  Here, the named Plaintiffs cannot satisfy the typicality requirement because they lack Article III standing.  *Prado-Seidman*, 221 F.3d at 1279 ("without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."); *see also, Sanchez-Knutson*, 2015 WL 11197772 at *5.

Moreover, the claims of the named Plaintiffs will be subject to numerous factual defenses. For example, Plaintiffs effectively have admitted they cannot prove damage, a requisite element for most of the asserted claims.  Similarly, as highlighted by their deposition testimony, Plaintiffs admit that: (1) Defendants did not make any affirmative misrepresentations to Plaintiffs, either verbally or in writing, regarding the tire recall process; (2) Plaintiffs' tires have not been recalled;

(3) Plaintiffs' decision to purchase tires from NTB had nothing to do with tire registration–they went to NTB solely because of price and convenience (location); (4) there are no quality issues with Plaintiffs' tires; and (5) they have no complaints regarding the service they received from Defendants.   Each of these admitted facts significantly weaken, if not eviscerate Plaintiffs' individual claims and, as such, highlight why they do not satisfy the typicality requirement of Rule 23(a)(3).

Plaintiffs also fail to satisfy Rule 23(a)(4) which requires a showing that the representative parties will fairly and adequately protect the interests of the class.   Specifically, in their motion Plaintiffs fail to address the potential conflict of interest raised by the fact that Emilie Palmer is the mother of Plaintiffs' counsel, Chris Kessler, and Bruce Exum is a long-time friend of Attorney Kessler. (Blouin Dec'l. at Ex. 1, pp. 75:18-23; Ex. 2, pp. 63:5-9).   The relationship between the named Plaintiffs and their counsel "raises a meaningful conflict of interest issue."   *Alhassid v. Bank of America, NA,* 307 F.R.D. 684, 700 (S.D. FL. 2015), citing *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371 (11th Cir. 1984) and *London v. Wal-Mart Stores, Inc.* 340 F.3d 1246 (11th Cir. 2003).   Here, Plaintiffs do not acknowledge in the pending motion their relationship with counsel, let alone provide assurances that they would be uninfluenced by family ties or friendships. *See, Eubank v Pella Corp.,* 753 F.3d 718, 723 (7th Cir. 2014) ("To begin with, it was improper for the lead class counsel to be the son-in-law of the lead class representative."); *Redman v. RadioShack Corp.,* 768 F.3d 622, 638 (7th. Cir. 2014) ("There ought therefore to be a genuine arm's length relationship between class counsel and the named plaintiffs … uninfluenced by family ties or friendships.").   For each of these reasons, Plaintiffs have failed to satisfy the Rule 23(a) requirements of Typicality and Adequacy.

**b.**  **Plaintiffs cannot satisfy the numerosity requirement of Rule 23(a).**

The numerosity requirement of Rule 23 requires a district court to determine "whether the class is so numerous that joinder of all members is impracticable." *Vega*, 564 F.3d at 1266.  Mere allegations of numerosity are insufficient.  *Id*. at 1267.  Instead, the Eleventh Circuit has made it "abundantly clear that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and a plaintiff is not permitted to make a purely speculative showing that numerosity has been met." *Abby v. Paige*, 282 F.R.D. 576, 578 (S.D. FL 2012), *citing Kelecseny v. Chevron, U.A.A., Inc.*, 262 F.R.D. 660, 669 (S.D. Fla. 2009).

Like the situations presented in *Abby* and *Kelecseny*, Plaintiffs here fail to provide factual support for their contention that the numerosity requirement is satisfied.  Specifically, Plaintiffs argue that "the tire industry shipped 278.3 million new tires for passenger vehicles and light trucks."  (Sup. Mem., p. 7).  Putting aside the fact that Plaintiffs provide no evidence, the number of tires sold by the industry is completely irrelevant.  Bringing it at least a little closer to home, Plaintiffs argue that "defendants have sold tires to more than a thousand customers each year during the relevant time period."  This statement, however, also misses the mark.  The number of tires sold by Defendants is not the question.  Instead, the operative issue is whether there is a sufficient number of individuals who purchased tires from Defendants that were injured as a result of Defendants' purported failure to register the tires with the manufacturer.  As discussed above, the named Plaintiffs have presented no evidence that they were harmed, let alone that a sufficient number of other individuals were harmed as a result of Defendants' purported failure to register tires with the manufacturer.  Thus, Plaintiffs have failed to meet their burden of establishing numerosity.

12

### 2. Plaintiffs Fail to establish the additional requirements of Rule 23(b).

In addition to satisfying the requirements of Rule 23(a), Plaintiffs must prove that the class meets the requirements of at least one subsection of Rule 23(b).  Plaintiffs seek certification of a nationwide class and a Virginia subclass pursuant to Rule 23(b)(2) and (b)(3).  Plaintiffs, however, cannot satisfy the requisite elements for certification of any class.

### a. Certification is not warranted under Rule 23(b)(2).

#### i. Plaintiffs predominately seek monetary damages.

An injunctive relief class pursuant to Rule 23(b)(2) is appropriate only if the predominant relief sought is injunctive or declaratory.  *DWFII Corp. v. State Farm Mut. Auto Ins. Co.,* 469 F. App'x 762, 765 (11th Cir. 2012).  When a plaintiff seeks both monetary and injunctive relief, a Rule 23(b)(2) class is only appropriate if the monetary relief is merely incidental to the other relief. *Id.; Karhu v. Vital Pharmaceuticals,* No. 13-CIV-60768, 2014 WL 815253 at *11 (S.D. Fla. March 3, 2014).  Thus, certification under 23(b)(2) is not appropriate in situations such as this in which the class action is predominantly for monetary damages.  *Dukes*, 564 U.S. at 347;  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011); *Karhu,*  2014 WL 815253 at *11; *Randolph v. J.M. Smucker Co*., 303 F.R.D. at 699-700.

In *Randolph*, a consumer filed a putative class action asserting FDUTPA, unjust enrichment and breach of warranty claims. *Id*. at 682-83.  Notably, the plaintiff "made no effort to demonstrate that the money damages, which appear to be the primary remedy sought, are merely incidental to the injunctive relief" and, in fact, had only dedicated a single page of her twenty-eight page motion to asserting that an injunctive class was warranted. *Id*. at 700.  Based, in part, on this fact, the court denied plaintiff's motion to certify a (b)(2) class.  *Id*.; *see also, Nazario v. Professional Account Services, Inc.*, No. 16-cv-00772, 2018 WL 1449177 at *13 (M.D. Fla. Feb. 13, 2018) (same).

Like the situation presented in *Randolph*, Plaintiffs here give, at most, passing reference to their request for certification under (b)(2). In slightly more than a single page of their supporting memorandum dedicated to the issue, Plaintiffs merely cite the standard for certification under (b)(2) and restate that they seek injunctive relief. Plaintiffs do not even state, let alone provide support for the notion that their request for monetary relief is merely incidental to their primary goal of injunctive relief. For this reason alone, Plaintiffs fail to meet their burden of establishing the requirements for certification of a (b)(2) class.

ii.     **Plaintiffs have no legal basis upon which to seek injunctive relief, either individually or as class representatives.**

As discussed in detail in Defendants' Motion to Dismiss, the Regulation was promulgated pursuant to authority delegated in the National Traffic and Motor Vehicle Safety Act of 1966 ("the Safety Act"), 49 U.S.C. § 30101, et seq. Through the Safety Act, Congress enacted a comprehensive system for regulating the field of motor vehicle and motor vehicle equipment safety. *See* Title 49 U.S.C. Chapters 301-331.

Congress also delegated to the Secretary of Transportation, and ultimately to the National Highway Traffic Safety Administration ("NHTSA") authority to develop, enact and implement the regulations necessary to carry out and enforce the Safety Act's purposes. *See* 49 C.F.R. Part 553. The Regulation at issue in this case is but one of many procedural regulations within the comprehensive regulatory scheme that implements the Safety Act.

Congress chose a comprehensive administrative procedure to enforce and remedy violations of the Safety Act. *See Ayres v. GMC*, 234 F.3d 514, 522 (11th Cir. 2000). Congress delegated authority to the Secretary of Transportation to determine that a defect exists, to notify customers or to take specific action to meet the Safety Act's notification requirements. *See id.* The Attorney General is authorized to bring a civil action to enforce the Safety Act and its

14

provisions. *See id.* Congress detailed the civil penalties for violations. *See id.* In choosing this comprehensive enforcement scheme, Congress chose not to grant private causes of action for alleged violations of the Safety Act or its procedures.

Not only did Congress decline to create a private cause of action for violations of Safety Act provisions pertaining to notification of defects, it declined to create a private cause of action to remedy *any* violation of the Safety Act. Not surprisingly then, courts consistently have confirmed that violations of the Safety Act do not give rise to private causes of action. *See Ayres*, 234 F.3d at 521-525 (alleged violation of provision requiring notice of an alleged defect); *Adams v. Nissan N. Am., Inc.*, 17-cv-2653, 2018 WL 2338871, at *3 (S.D. Tex. May 4, 2018) (alleged failure to disclose a defect cannot constitute fraudulent concealment that tolls the statute of limitations); *Bartholf v. GM*, 18-cv-35, 2018 WL 1614122, at *3 (W.D. Ky. Apr. 3, 2018) (collecting cases); *Timm v. Goodyear Dunlop Tires N. Am. Ltd.*, 309 F. Supp. 3d 595, 602 (N.D. Ind. 2018) (neither the Safety Act nor NHTSA's regulations provide a private cause of action). In deciding that civil law should not be the venue to remedy violations of the Safety Act or its regulations, Congress determined that private persons should *not* have standing to sue over a violation of the Act's procedures. Accordingly, Plaintiffs have no basis to seek injunctive relief, either individually or as class representatives. For this additional reason, their request for certification of a (b)(2) class should be denied.

### b.     Certification is not warranted under Rule 23(b)(3).

As the Supreme Court clearly stated in *Dukes*, claims seeking money damages should be brought pursuant to Rule 23(b)(3). *Dukes*, 564 U.S. at 362. In order to proceed under this section, Plaintiffs must establish that (1) the common issues of law or fact in the case predominate and (2) the class action is a superior means to resolving the case. Fed. R. Civ. P. 23(b)(3.)

15

The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The requirement's purpose is to ensure that the class will be certified only when it "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id*. at 615.

Similarly, to warrant class treatment under Rule 23(b)(3), Plaintiffs must prove that a class action is the superior means of answering the questions raised by this case. *Dukes*, 564 U.S. at 362. The claims in this case turn on a variety of issues unique to each member of the putative class, thus making individual trials necessary and management of this case on a class-wide basis unwieldy. Moreover, Defendants have a constitutional right to litigate their individual defenses, which vary from class member to class member. *Id*. at 367-68.

Even a cursory review of the issues raised in this case highlight why Plaintiffs do not meet the Rule 23(b)(3) requirements. For example, resolving this case on a class-wide basis would require the Court to determine, among other things, whether each class member's tires had been registered. If tires had not been registered, the next inquiry would be whether the tires were defective and subject to a recall. With respect to recalled tires, the Court would then have to evaluate whether class members received notice of the recall. Separate and apart from this litany of individualized issues, the Court would need to evaluate what representations were made to each class member regarding the tire registration process. Likewise, the Court would need to evaluate, for each transaction, whether "Defendants were unjustly enriched when it made extra sales during the time it would have taken to registering [sic] Class Members' tires with the tire manufacturer or provide Class Members with the tire-registration forms", as Plaintiffs allege. Complaint, ¶89.

Further, the Supreme Court has held that the need to calculate individual damages will defeat predominance where the issue of damages does not lend itself to a model or a mechanical calculation, but rather requires separate mini-trials. *See Comcast v. Behrend*, 569 U.S. 27, 34 (2013) ("Questions of individual damage calculations will inevitably overwhelm questions common to the class."); *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003) ("Class treatment . . . may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate.") Here, it is undisputed that damages cannot be determined by application of a mechanical formula. *See supra,* pp. 5, 6.[8]

And at the risk of piling on, it is noteworthy that Plaintiffs completely ignore the insurmountable challenges the Court would face if this case were to proceed as a national class.[9] Numerous courts around the country have determined that certification of a national class is inappropriate in situations, such as this, that would require the Court to apply disparate laws from multiple states. *Vega*, No. 06-CIV-20554, 2007 WL 1364333, at *2) ("For a nationwide class to be proper, the Court must go beyond the factual-similarity and examine whether the case necessitates applying diverse laws of the different states; if so, then nationwide class certification is improper"); *vacated on other grounds,* 564 F.3d 1256 (11th Cir. 2009); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir.2004) ("class certification is impossible where the fifty states truly

---

[8] In their Memorandum in Support of the pending Motion for Class Certification, Plaintiffs baldly assert that "Class members' damages are calculable pursuant to a common methodology, as will be demonstrated through Plaintiffs' expert report." (Mem. in support, p. 14). This is a remarkable overstatement.  Per the agreement of counsel, on August 16, 2019, Plaintiffs served a copy of their "expert report" on Defendants' counsel.  (A copy of the report is attached to the Blouin Declaration as Exhibit 3.)  Describing the report as "thin" would be generous. The report contains nine bare boned statements.  The only statement even remotely addressing damages is paragraph 9 which states, in its entirety as follows: "I plan to discuss the detriment to tire purchasers of the defendant's failure to follow any of the prescribed tire registration methods outlined in 49 CFR 574." This statement, and the "expert report" in its entirety is a far cry from what is required under the Federal Rules.
[9] As discussed in Defendants' motion to dismiss, Plaintiffs face an additional insurmountable hurdle in that they lack standing to assert claims on behalf of absent class members from states other than Virginia.

establish a large number of different legal standards governing a particular claim") *abrogated on other grounds*, 553 U.S. 639 (2008).[10]

Given the fact that Plaintiffs seek certification of a national class, they bear the burden of showing that there are no variations in state laws for each of the legal theories pleaded; or identifying the state law variations and explaining how the Court and jury can manage these variations.  See *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008). Here, Plaintiffs have completely failed to meet their burden in this regard.

Even a cursory review of the applicable laws shows that they often conflict, and frequently have outcome-determinative nuances.  For example, numerous courts have held that the law governing each class member's breach of warranty and Magnuson Moss claims is the law of the state in which they reside.[11]  And importantly, the law varies significantly from state to state. *See*, *Karhu*, 2014 WL 815253 at *7. Similarly, courts have determined that unjust enrichment laws vary

---

[10] *See also, Johnson v. Nextel Communications, Inc.* 780 F.3d 128, 146 (2nd Cir. 2015) (vacating district court's multistate class certification order on contract and other claims because "application of the different [class members'] jurisdictions' laws…renders individual issues predominant and undercuts superiority of trying common issues on a classwide basis.");  *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1050 (S.D.Tex. 2016) (granting motion to dismiss nationwide class allegations because the express warranty law of each class members' state would apply to MMWA claim and therefore individual questions predominated over those common to class members);  *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007) (reversing order certifying nationwide class of car purchasers due to the "numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions" making individual issues predominant); *Sateriale v. RJ Reynolds Tobacco Co.*, No. 09-cv-08394, 2014 WL 7338877, at *12 (C.D.Cal. 2014) (denying certification of nationwide class for breach of contract claim, citing material differences among the laws of the fifty states that would make individual issues predominant); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018) (denying motion to certify nationwide class for MMWA claim because it "potentially would require the Court to apply the law to every state" and thus did not satisfy the requirements of commonality, predominance and superiority);  *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011) (denying motion to certify nationwide class based on differences in multiple states' laws, including differences in law regarding claims for breach of implied warranty of merchantability, because individual issues would predominate over common questions).

[11] Under Florida's choice of law analysis, warranty claims are contractual in nature.  *S. Broad Grp., LLC v. Gem Broad, Inc.*, 145 F. Supp. 2d 1316, 1324 (M.D. Fla. 2001), aff'd, 49 F. App'x 288 (11th Cir. 2002).  Florida applies the rule of lex loci contractus to contract claims, thus the law of the forum in which the parties executed their contract will apply.  *Karhu*, 2014 WL 815253 at *7, citing *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006).  In the case of a consumer product, the place of contracting is generally where the consumer purchased the product. *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1316 (S.D. Fla. 2009).  Therefore, the law governing each class member's warranty claim is the law of the state where the tires were purchased.

from state to state and, therefore have denied motion to certify national classes. *Id.*, citing *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 500-01 (S.D. Ill. 1999) (cataloguing differences in state unjust enrichment laws and denying class certification). *See, e.g., Stalker v. MBS Direct, LLC*, No. 10-11355, 2012 WL 6642518, at *7 (E.D. Mich. Dec. 20, 2012) (noting that because class claims of unjust enrichment were based the varying laws of so many jurisdictions, single nationwide class was not manageable); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state."). The same is true with regard to consumer protection laws.[12]

### c.      The proposed classes are not ascertainable

In addition to the requirements set forth in Rule 23, courts have recognized an implied requirement that a class must be adequately defined and clearly ascertainable. *Inetianbor v. Cashcall, Inc.*, 314 F.R.D. 535, 536 (S.D. Fla. 2016) (Denial of class certification for plaintiff's failure to adequately define a class that is clearly ascertainable). A class definition is insufficient if it requires a fact-intensive determination as to class membership whereby determining membership would essentially require a mini-hearing on the merits of each class member's case

---

[12] Each state has an interest in enforcing its unfair trade practices laws for the well-being of its own customers. *Karhu*, 2014 WL 815253 at *8, *citing Wilks v. Ford Motor Co.*, 174 F.R.D. 332, 348 (D.N.J. 1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries cuased by foreign corporations . . ."), also citing *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094 (Fla. 4th DCA 2003) (finding unfair trade practices laws of consumers' home states governed in purported nationwide FDUTPA class action); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (refusing to certify a nationwide class with claims under all fifty states due to the material differences among the states' consumer-protection laws); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015, 1018 (7th Cir. 2002) (reversing district court's certification of a nationwide class in a contract and consumer fraud suit involving allegedly defective tires, holding that such a class is rarely, if ever, appropriate where each plaintiff's claim will be governed by the law of his own state); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Differences of [state law] cut strongly against nationwide classes...."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189–90 (9th Cir. 2001) (holding that variations in state law greatly compounded the factual differences between claims, overwhelming any common issues related to causation and making national class resolution impractical); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially." (citation omitted)).

19

including their individual injury.  *See Stalley v. ADS Alliance Data Systems, Inc.*, 296 F.R.D. 670, 679 (M.D. Fla. 2013) ("[A] class should not be certified if the court must engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class."); *see also Truesdell v. Thomas*, 889 F.3d 719, 726 (11th Cir. 2018) (Affirming denial of class certification where the "fear of 'mini trials' was legitimate . . ."). As discussed above, there are innumerable individualized issues presented in this case. Accordingly, members of the putative class are not readily ascertainable.

## IV.    CONCLUSION

For the reasons addressed above, the Court should deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:     */s/ Daniel M. Blouin, Esq.*
        Alex Drummond, Esq. (FL #0038307)
        Daniel M. Blouin, Esq. (IL #6198499)
        1075 Peachtree Street, N.E.
        Suite 2500
        Atlanta, Georgia 30309-3958
        Telephone: (404) 881-5467
        adrummond@seyfarth.com
        dblouin@seyfarth.com

        Attorney for Defendants National Tire and Battery
        and TBC Corporation

58762573v.1

## <u>CERTIFICATE OF SERVICE</u>

I, Alex Drummond, Esquire, hereby certify that on this date a true and correct copy of the enclosed document was filed and served upon all counsel of record via the Court's electronic filing system.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:    <u>*/s/ Alex Drummond, Esq.*</u>
        Alex Drummond, Esq.
    Florida Bar No. 0038307
    1075 Peachtree Street, N.E.
    Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 881-5467
    E-mail: adrummond@seyfarth.com

    Attorney for Defendants National Tire and Battery
    and TBC Corporation

58762573v.1