# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:19-CV-80121-SMITH-MATTHEWMAN

Bruce Exum, Jr. and Emilie Palmer,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.

National Tire and Battery and TBC
Corporation,

    Defendants.

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Plaintiffs' motion was filed pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and this Court's order of May 24, 2019 (Dkt. No. 28). Plaintiffs requested in the motion that the Court certify two clearly defined and ascertainable classes, namely the "nationwide" class and the "Virginia subclass." *See* Motion for Class Certification ("Plfs.' Class Cert. Brief"), at 1. As the Supreme Court has ruled, the purpose "of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.' "*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Thus, Plaintiffs argued in the motion that they have satisfied the requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) in seeking the certification of the two classes. Accordingly, the Court should consider and grant Plaintiffs' motion under Rule 23.

Plaintiffs' motion did not seek an adjudication on the merits of each claim. This is because "[i]n deciding a motion for class certification, a court ['does not determine whether Plaintiffs will ultimately prevail on the merits, but it considers the factual record in determining whether the requirements of Rule 23 are satisfied.[']" *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 636 (S.D. Fla. 2015) (citing *Valley Drug Co. v. Geneva Pharms.*, Inc., 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003)). Analysis as to each claim was done for the purpose of showing "facts and law

underlying all of Plaintiffs' claims are the same for all class members." *See* Plfs.' Class Cert. Brief, at 12. The motion has demonstrated that "[t]here are no individualized issues with respect to each class member because Defendants' violation of the tire-registration statute and regulations is a uniform practice applicable to all members of the putative classes." *See* Plfs.' Class Cert. Brief, at16.

Plaintiffs' motion cannot be and should not be treated as a vehicle for resolving issues concerning merits of Plaintiffs' claims. Nor should it provide Defendants a second opportunity to rehash or refine arguments that they should have raised fully and timely in their motion to dismiss. Instead of focusing on issues concerning Rule 23, however, Defendants choose to argue against the merits of Plaintiffs' claims. These arguments must be rejected.

Defendants claimed that Plaintiffs did not cite enough evidence to prove their claims. Given the admissions in Defendants' interrogatory responses, Defendants' arguments are near-frivolous and create no obstacles to certification of this case; nor do they excuse Defendants' consistent failure to comply with the specific[1] and vitally important tire-registration practices and procedures set forth in 49 C.F.R. § 574.8(a)(1) ("Regulation").

Further, Defendants omitted the fact that they sandbagged Plaintiffs by producing thousands of pages in the days just before ***and on the very day*** that Plaintiffs' motion for class certification was due. Defendants' arguments obscure events in this case that are germane to Plaintiffs' class-certification motion. First, although Defendants have produced 2,654 pages of documents to date, they do not reveal the timing of that production. Responding to Plaintiffs' interrogatories and requests for documents,[2] Defendants first produced 10 pages on July 16, 2019, and counsel for Defendants stated shortly thereafter that it was unlikely there would be "a substantial number of additional documents responsive to your requests." *See* Ex. 2. On August 6, Defendants produced another 24 pages. Then Defendants produced 234 pages on August 8, 213 pages on August 9, 505 pages on August 12, 891 pages on August 13 (the same day Plaintiffs'

---

[1] Defendants even concede that the Regulation is part of a "comprehensive system for regulating" vehicle … "safety." Defs.' Opp. to Class Cert. Motion, ECF Dkt. No. 50 at 14.

[2] Plaintiffs consider Defendants' answers and document-request responses to be procedurally improper and substantively insufficient, have met and conferred with counsel by telephone and email, and will be filing a discovery motion. In citing here some of the documents produced by Defendants, Plaintiffs do not waive their right to challenge Defendants' production deficiencies.

motion for class certification was due), and 776 pages on August 14. Ex. 3. Thus, Defendants' criticism that Plaintiffs' motion "contains virtually no citations to record evidence," ECF Dkt. No. 50 at 8, is off base. Defendants themselves hindered Plaintiffs' ability to do so by dumping more than 1,800 pages of material on Plaintiffs in the five days leading up to the class-certification motion deadline, plus more than 700 more pages after the deadline had run, all in a case with aggressive discovery deadlines.

Defendant also omitted the fact that Plaintiff Exum explained his damages as related to the registration process, purchase price paid, and how Defendants would remedy and fix the situation. Ex. 1 (Exum Dep. Tr.) at 81:2–83:4. [3] Specifically, Exum testified:

> The requirements for the registry provides the conduit for the manufacturer to get to the end-user to recall or to put them on notice of an inspection or whatever for a product that they suspect is defective or have determined is defective. So in purchasing a tire you've got – I've done it. We've all done it. You're making the assumption that all of that has been complied with. Then you come to find out it has not been complied with. So you've paid for it and it didn't get done.

*Id.* at 81:3–12.

A court should certify a class where, as here, the class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy), as well as one of the three subsections of Rule 23(b). Whether the tires were sold in violation of the Regulation is a common issue that makes Plaintiffs' claims ideally suited for a class treatment. Predominance is satisfied because Plaintiffs' claims will be tried with primarily common evidence like expert reports and testimony, Defendants' internal documents, and the testimony of Defendants' employees. Plaintiffs' claims are typical of class members' claims because they purchased tires that were uniformly not registered under any of the three methods prescribed by Regulation. Plaintiffs' claims do not have to be identical to class members' claims for them to adequately represent the proposed classes. They need only to be sufficiently similar. Defendants have identified no conflicts of interest that preclude certification. Plaintiffs thus request that the Court grant their motion.

---

[3] Unless otherwise indicated, all exhibits cited in this brief are to the Second Affidavit of Eric N. Linsk in Support of Plaintiff's Motion for Class Certification.

## ARGUMENT

### A.  Plaintiffs demonstrated that requirements of Rule 23 (a) are met[4].

Parties seeking class-action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation." *Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 676 (S.D. Fla. 2009) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).

#### 1.  Plaintiffs satisfy Rule 23 element concerning numerosity.

Defendants' numerosity argument demonstrates their profound misreading of Rule 23. The numerosity requirement does not require Plaintiffs to provide evidence of injury as to each class member.  It requires only that Plaintiffs "make reasonable estimates with support as to size of the proposed class."  *Fuller Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Plaintiffs have done just this. *See* Plfs.' Class Cert. Brief Ex. A [Dkt. No. 49-1] Ex. 2 at 4, 5 (responses to interrogatories 1, 2) (noting Defendants' admissions that they "sold tires to more than a thousand customers each year during the relevant time period.").  Recognizing the finality of their interrogatory admissions, Defendants now try to recast the class definition to encompass only persons whose tires were subject to a recall, a definition found nowhere in the Complaint or Plaintiffs' motion papers.  Defendants' maneuver is unavailing.

Even if Defendants' interrogatory admissions did not satisfy numerosity, buyer data compiled by Defendants suggest too that the proposed class is (at least) in the thousands.  ██████
███████████████████████████████████████████████████████████
███████████████████████████████████████████

#### 2.  Plaintiffs satisfy Rule 23 elements concerning typicality and adequacy.

As shown herein, and in Plaintiffs' opposition to Defendants' motion to dismiss, Plaintiffs were all subjected to the same deceptive conduct: Defendants' fraudulent misrepresentations and omissions, and their failure to follow the federal tire-registration law, which constitute cognizable Article III standing injuries. Plaintiffs and class members are

---

[4] Plaintiffs understand that Defendants did not directly address the issue of "commonality" in their opposition. *See* Defs.' Opp. at 10-12. Plaintiffs maintain that their motion has established that this requirement is met. *See* Plfs.' Class Cert. Brief 8-9.

pursuing the same legal theories regarding these same injuries and typical conduct by Defendants.  Plaintiffs' claims share "the same essential characteristic as the claims of the class at large," *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted), and arise from the same "event or pattern and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984).

Defendants' claims that typicality does not exist because differences in damages are present is wrong, because (1) "[c]lass members' claims need not be identical to satisfy the typicality requirement"; and (2) Defendants failed to provide complete discovery responses related to their representations, recall practices and procedures, pricing, quality control, and handling of consumer complaints – all of which will further illustrate typicality of the damages and allegations. *Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012) (internal citations and quotations omitted).

Indeed, Defendants admit in their discovery responses that they followed ***none*** of the three federally approved methods for registering tires. Defendants routinely held on to tire buyers' information until recalls, rather than transmitting that information to manufacturers within 30 days as required by 49 C.F.R. § 574.8(a)(1)(ii) and (iii) or by providing customers with mail-in cards with filled-out tire information as allowed by § § 574.8(a)(1)(i). ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ There was and is no reason except greed for Defendants to elude the rule and make up their own system, apparently related to a fear that manufacturers might market the buyers directly in the future. *See* National Highway Traffic Safety Administration, *REPORT TO CONGRESS: Electronic Tire Identification Study*, Appendix A at 31 (March 2019) (summarizing tire-retailer trade organization's position as, "Dealers do not want to hand over their customer data to manufacturers before a recall is initiated."). The federal regulatory system provides the independent dealers no right to balance their theoretical financial loss against the black-letter requirement that tire owners be timely notified once a manufacturer determines the tires are a hazard.

Defendants contend that Plaintiffs Palmer and Exum are not adequate class representatives. Defendants' arguments entirely rest on case citations that a familial relationship may be a basis to disallow a class representative. If the Court deems Ms. Palmer inadequate due to a familial relationship with counsel who is not being put forward as class counsel in this motion, then Plaintiffs will remove her as a proposed class representative. Nevertheless, Mr. Exum's friendship with Plaintiffs' counsel Mr. Kessler is not disqualifying. *See, e.g.*, *In re Toys "R" Us – Delaware, Inc. –Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 372–75 (C.D. Cal. 2013) (noting that a close friendship alone does not render a plaintiff an inadequate class representative). Here, Defendants point to no influence, assurances, or improper conduct whatsoever related to that friendship in this case. *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 501 (N.D. Ga. 2006) (finding "there is not enough evidence for the Court to conclude that Plaintiff's interests are more closely associated with [attorney who referred case to Plaintiff's counsel] than they are with the absent class members."). No "substantial conflicts of interest" exist here and Mr. Exum— who agreed to participate in this case, be deposed, and no have interest antagonistic to the proposed class(es)—has demonstrated that he will "adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

### B.   Plaintiffs meet Rule 23(b)(3)'s predominance test.

Defendants challenge predominance, questioning how this Court could determine registration and notice of recall information. Defs.' Opp. at 16. These arguments fail because the facts and issues here concerning Defendants' practices are common. As Plaintiffs' motion has explained: Plaintiffs and each of the members of the classes purchased tires from Defendants during the class period without being provided with a registration card and without being provided with a way to confirm registration or the accuracy of their contact information. Defendants violated the same law and regulations each time when it made a tire sale to a class member. Thus, the requirements of Federal Rule of Civil Procedure 23 (b)(3) are easily met.

Defendants contend that Plaintiffs' claims pose individualized issues on damages, and thus "requires separate mini-trials" under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). *See* Defs.' Opp. at 24. However, no such inquiry is necessary for this motion. The Court need not engage in damage calculation for each individual class member to find "predominance" here—in fact, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class

certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 133 S. Ct. at 1194–95 (citing *Dukes*, 131 S. Ct. at 2552 n.6). Moreover, "individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016). *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016 ) (holding that certification is appropriate even if "other important matters will have to be tried separately"); *Amgen*, 568 U.S. at 469 (internal citations omitted) ("Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof."); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings . . . the fact that damages are not identical across all class members should not preclude class certification."). Here, Plaintiffs' expert will calculate damages based on what Defendants have done to register buyers' tires compared to what the law required. *See* Ex. 6. Thus, Defendants' argument should be rejected.

Defendants' argument that Plaintiffs' Nationwide Class is barred by variations in state law overlooks that the causes of action here are similar. Importantly, a "Court may certify multi-state classes even if 'different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless **present a limited number of patterns** that the court ... can manage.'" *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 652 (S.D. Fla. 2015) (citations omitted) (emphasis added); *accord Bishop's Prop. & Inv., LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619, 624 (M.D. Ga. 2009) (internal citations omitted) ("[C]lass certification is a realistic policy 'if a claim is based on a principle of law that is uniform among the states.'").

Here, Defendants' violations of a comprehensive federal regulation are common to the class, and the pleaded causes of action will only require applying largely similar elements to this common inquiry (i.e., negligence, statutory consumer law, and unjust-enrichment law). This action concerns the failure to follow the law and the regulation by Defendants, and is actionable in all 50 states; and Florida law should govern because Defendants are based in Florida and their key decisions regarding tire registration were made in Florida. ████████████████

████████████████████████████

██████████████████████████████

In conclusion, class certification is appropriate here because "there is a commonality of substantive law applicable to all class members." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 414 (M.D. Fla. 2018). Even if "each proposed subclass is proceeding under its own state law," certification is appropriate under Rule 23, because "the claims of the proposed putative class members all arise out of the same alleged illegal conduct by Defendants," and "the claims of the proposed state classes arise out of the same alleged illegal conduct by Defendants and are based on the same related [legal] theories[.]" *Id.* at 413-14.

    **C.**    **Plaintiffs satisfy Rule 23 (b)(2) requirements.**

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(2) is appropriate when Defendants "has acted in a manner equally applicable to all members of the class, and that injunctive or declaratory relief is appropriate in this case." *Edmonds v. Levine*, 233 F.R.D. 638, 642 (S.D. Fla. 2006). As in *Edmonds,* Defendants' violations of the federal law and the regulation are common to the class, and "there is no question-nor any argument by Defendant-that [they] have acted differently toward any individual Plaintiffs or proposed class members." *Id.*

Defendants' reliance on *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014) is inapposite. Plaintiffs have clearly stated a claim for injunctive relief. *See* Compl. at 24-25. Plaintiffs' motion further explains the injunctive relief sought: "Plaintiffs' injunctive claim requests that this Court enjoin Defendants from further misconduct in violation of the statute and provide a method, manner, or means by which Plaintiffs and class members can confirm registration and the accuracy of the provided information. The relief requested here is applicable to the entire class. As putative class members are purchasers of tires sold by Defendants, they are bound by a common trait that predominates in the litigation." Plfs.' Class Cert. Brief, at 10–11. Thus, the injunctive relief requested here is a relief "resting on the same grounds and applying more or less equally to all members of the class." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983). Any monetary damage to the relief would be contingent on the resolution of the injunctive relief: if Defendants are ordered to follow the law and the regulation in registering the tires at their cost, then there would be essentially little cost to class members for the registration

process; if, however, Defendants refused to comply and leave the class members to investigate and register the tires by themselves, then the class members must spend time and effort in doing so. In sum, Plaintiffs here have demonstrated that "money damages are [']incidental[']" because "class members would be automatically entitled to them once class-wide liability is established." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 682 (S.D. Fla. 2007).

Defendants' argument here should be rejected.

### D.    The classes are ascertainable.

"To meet the ascertainability requirement, the Eleventh Circuit requires the plaintiff to show [']objective criteria['] for identifying class members," which requires that the identification process be "administratively feasible." *Cox v Porsche Fin. Servs., Inc.*, 330 F.R.D. 322, 330 (S.D. Fla. 2019) (citing *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)).  Plaintiffs' class definition(s) includes only tire purchasers whose tires were not properly registered, in violation of federal law.  The declaration of Defendants' vice president confirms that class members and their tire details can be identified by queries on Defendants' point-of-sale database.  *See* Dkt. No. 50-1 (Ex. A), Decl. of Tony Maddox.[5]  Thus, Plaintiffs here have narrow class definitions and "an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946–47 (11th Cir. 2015).

### E.    Plaintiffs' opposition to Defendants' motion to dismiss adequately addresses standing already.

Plaintiffs maintain that it is inappropriate to resolve issues governed by Rule 12(b)(6) in this motion. However, because Defendants' re-argued and raised potential new issues in their opposition to this motion, Plaintiffs must respond. Plaintiffs have thoroughly addressed Article III standing in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Dkt. No. 36) and thus respectfully direct the Court's attention to that brief.

As stated in the Opposition, Plaintiffs do not assert that the Safety Act creates a private right of action; rather, they have sued under Florida laws that *do* provide a private right of action. Defendants' violations of the Safety Act are evidence of Defendants' violations of their duties owed to Plaintiffs and putative class members, which give rise to Florida causes of action.

---

[5] Paradoxically, despite now having challenged the motion for certification in part because Plaintiffs do not identify class members, Defendants refused to provide buyers' information during the meet-and-confer process.  This dichotomy will be a subject of a motion to compel.

The lack of a private right of action in the Safety Act does not preclude Plaintiffs, and putative class members, from acting under Florida causes of action.  *See, e.g.*, *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522 & n.19 (11th Cir. 2000).

Plaintiffs have previously explained why Defendants are wrong. *See* Dkt. 36 at 3–6. As stated in the Opposition, federal law requires independent tire dealers (like Defendants) to collect and transmit to tire manufacturers first-purchaser information for each tire sold. *See* 49 CFR § 574.8(a), so that the tire manufacturer can reach end purchasers as soon as possible in the event of a recall or safety hazard in the future. Inclusion in the manufacturer's database is so important to the safety of motoring Americans that Congress mandated its creation, maintenance, and inclusion of all first purchasers of tires. Defendants, without citation to a single law or regulation, erroneously contend that there must be a tire recall before there can be a harm. Dkt. No. 50 at 16; Defs.' Opp. at 9.  However, waiting for a recall before providing the buyer information is neither allowed by the tire-registration regulations nor is it safe. Consumers whose names and addresses are not in the database cannot be reached directly, and even if their information is later provided as under Defendants' improvised non-compliant system here, this injects unsafe delay into the process. The exclusion from the database at the point of sale, in violation of federal law, *is* the past, present, and ongoing harm.  Plaintiffs and putative class members have Article III standing.[6]

Defendants argue violation of the Safety Act cannot support any of Plaintiffs' claims.  But this argument is wrong for the reasons discussed above and in Plaintiffs' Opposition to Defendants' Motion to Dismiss. *See supra* sec. B; *see also* Dkt. No. 36 at 9–10. As a practical matter, if Plaintiffs are successful in seeking an injunction, Defendants will have to change their practices on a national basis. Changes to company standard procedures and its software packages would not be effectuated in Florida alone. For these reasons, Defendants' argument fails.

## **CONCLUSION**

For all of the above-stated reasons, Plaintiffs respectfully request the Court grant their motion for class certification in its entirety.

---

[6] Many customers likely visit Defendants' retail locations repeatedly for tire rotation, balancing, and other tire services; each time Defendants check customers' records on these subsequent visits and see that their tires have not been registered, the injury to customers is repeated.

Dated: September 10, 2019                    Respectfully submitted,


                                             */s/ Jordan L. Chaikin*
                                             Jordan L. Chaikin
                                             Florida Bar Number: 0878421
                                             **CHAIKIN LAW FIRM PLLC**
                                             12800 University Drive, Suite 600
                                             Fort Myers, Florida 33907
                                             Telephone: (239) 470-8338
                                             Facsimile: (239) 204-2425
                                             Email: jordan@chaikinlawfirm.com

                                             Cuneo Gilbert & LaDuca, LLP
                                             */s/ Charles J. LaDuca*
                                             Charles J. LaDuca
                                             Brendan S. Thompson
                                             Yifei ("Evelyn") Li
                                             4725 Wisconsin Avenue, NW, Suite 200
                                             Washington, DC 20016
                                             Telephone: (202)789-3960
                                             charles@cuneolaw.com
                                             brendant@cuneolaw.com
                                             evelyn@cuneolaw.com

                                             LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                             /s/ Robert K. Shelquist
                                             Robert K. Shelquist, #021310X (MN)
                                             Rebecca A. Peterson, #0392663 (MN)
                                             Eric N. Linsk, #0388827 (MN)
                                             100 Washington Avenue South, Suite 2200
                                             Minneapolis, MN 55401
                                             Telephone: (612) 339-6900
                                             Facsimile: (612) 339-0981
                                             rkshelquist@locklaw.com
                                             rapeterson@locklaw.com
                                             RNLinsk@locklaw.com

                                             The Kessler Law Firm PLLC
                                             /s/ Chris Kessler
                                             Christopher C. Kessler, #18696 (NC)
                                             PO Box 8064
                                             Greenville, NC 27835
                                             (252) 321-2535
                                             cck@kesslerlawfirmpllc.com

                                             MCDOUGALL LAW FIRM, LLC
                                             /s/ J. Olin McDougall, II
                                             J. Olin McDougall, II, Esquire

Post Office Box 1336
115 Lady's Island Commons
Beaufort, South Carolina 29901-1336
(843) 379-7000
(843) 379-7007-Fax
lin@mlf.law

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court this 10th day of September 2019, by using the CM/ECF system which will send notice of electronic filing to all parties of record.

By:     */s/ Jordan L. Chaikin*
Jordan L. Chaikin
Florida Bar Number 0878421
**CHAIKIN LAW FIRM PLLC**
12800 University Drive, Suite 600
Fort Myers, Florida 33907
Telephone: (239) 470-8338
Facsimile: (239) 433-6836
Email: Jordan@chaikinlawfirm.com

*Counsel for Plaintiffs*