UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-80121-Matthewman

Bruce Exum, Jr., and Emilie Palmer,
*individually and on behalf of*
*all others similarly situated,*

        Plaintiffs,

v.

National Tire and Battery, and
TBC Corp.,

        Defendants.

_____/



FILED BY _____ D.C.

JAN 28 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DE 30]

THIS CAUSE is before the Court on Defendants National Tire and Battery ("NTB") and TBC Corporation's ("TBC") Motion to Dismiss Plaintiffs' Complaint. [DE 30]. The motion is fully briefed. *See* DEs 30-1, 36, 38. The Court held a hearing on the motion on November 14, 2019. [DE 82]. Thus, this matter is now ripe for review. For the reasons that follow, the Court grants in part and denies in part the motion. Counts III and VII of Plaintiffs' Complaint are dismissed without prejudice. The remainder of the motion is denied.

## I. Introduction

This case revolves around a federal regulation, 49 C.F.R. § 574.8 (the "Regulation"), enacted by the National Highway Traffic Safety Administration ("NHTSA"). Under this Regulation, independent tire dealers are required to register with the manufacturer new tires they sell to consumers in one of three ways. *See* 49 C.F.R. § 574.8(a)(1)(i)-(iii) (2019).

The Regulation does not provide for a private right of action to enforce it. Moreover, the statute that authorizes the promulgation of the Regulation, the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.* (the "Safety Act" or "Act"), likewise does not provide for a private right of action. *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000).

Nonetheless, undeterred by the lack of a private right of action to enforce the Regulation, Plaintiffs allege that they purchased tires in Virginia from Defendant NTB and that NTB—and its parent company, Defendant TBC—failed to comply with the Regulation's tire registration requirements, thereby depriving Plaintiffs of the benefit of their bargains, subjecting them to a materially increased risk of harm, and unjustly enriching Defendants. Because of Defendants' alleged noncompliance with the Regulation, Plaintiffs seek relief in this putative class action under various legal theories. In essence, Plaintiffs claim that even though the Regulation does not provide for a private right of action, it does establish a duty on independent tire dealers to comply with the Regulation's tire registration requirements. Because Defendants allegedly violated this duty, Plaintiffs assert claims for breach of the implied warranty of merchantability under Virginia state law (Count I); violation of the Magnuson-Moss Warranty Act (Count II); violation of the Florida Deceptive and Unfair Trade Practices Act (Count III); unjust enrichment (Count IV); common law negligence (Count V); negligence per se (Count VI); and injunctive relief (Count VII).

Defendants seek to dismiss this putative class action with prejudice on four primary bases. First, Defendants assert that Plaintiffs cannot establish Article III standing because they have failed to adequately allege that they suffered an injury in fact resulting from Defendants' alleged noncompliance with the Regulation. Second, Defendants argue that neither Congress nor

any agency created a private right of action to enforce the Regulation and accordingly it creates no duty on the part of independent tire dealers that Plaintiffs can enforce. Third, Defendants assert that the Complaint contains mere conclusory allegations that Defendants have not complied with the Regulation. And fourth, Defendants assert that each separate cause of action is deficient.

The threshold issue for the Court to resolve is whether Plaintiffs have standing under Article III to even bring this suit at all. Resolution of this issue requires the Court to analyze this lawsuit under the Supreme Court's opinion in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), the Eleventh Circuit's opinions in *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), and *Ayres*, 234 F.3d at 522, and other applicable law. Complicating the resolution of the standing issue is the fact that one of the primary Eleventh Circuit opinions that Plaintiffs rely on, *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019)—which found Article III standing in a case brought under the Fair and Accurate Credit Transactions Act—was recently vacated and is currently pending *en banc* review by the Eleventh Circuit. Further complicating resolution of the Article III standing issue is the dearth of case law specifically addressing the Regulation at issue. The parties' research, and this Court's own independent research, found only one case, *Thorne v. Pep Boys – Manny, Moe & Jack Inc.*, 397 F. Supp. 3d 657 (E.D. Penn. 2019), which addresses Article III standing in relation to the Regulation. In *Thorne,* the court dismissed the plaintiff's complaint without prejudice, finding that, under the allegations of the complaint filed in that case, Article III standing was lacking. *Id.* at 667. Clearly, the Article III standing inquiry in this case raises difficult and complex issues.

The Court must also determine whether the lack of a private cause of action in both the Safety Act and the Regulation necessarily precludes Plaintiffs' claims. And then finally, the

Court must address whether Plaintiffs' Complaint is adequately pleaded both as a pleading matter under the *Iqbal-Twombly* pleading standard and as a matter of law as to the legal sufficiency of each of the asserted claims.

As set forth more fully below, after very carefully reviewing the applicable case law and the facts alleged in the Complaint, the Court finds that (1) Plaintiffs have standing under Article III to bring this suit; (2) the lack of a private right of action in the Safety Act and the Regulation does not necessarily preclude Plaintiffs' claims; (3) Plaintiffs have alleged sufficient facts to support their claims; and (4) Plaintiffs have adequately pleaded Counts I, II, IV, V, and VI. Counts III and VII, however, must be dismissed.

With this preface in mind, the Court now turns to specifically address Defendants' motion to dismiss.

## II. **Background**

In 1966, Congress passed the Safety Act "to prescribe motor vehicle safety standards for motor vehicles and motor vehicle equipment in interstate commerce[.]" 49 U.S.C. § 30101(1). Under the Act, the Secretary of Transportation and, through the Secretary, the NHSTA, are authorized to promulgate the regulations necessary to carry out and enforce the Act. *See* 49 U.S.C. §§ 105(d), 322(a); 49 C.F.R. §§ 1.81(a)(3), 1.95(a) (2019).

The Regulation at issue in this case, 49 C.F.R. § 574.8, requires independent tire dealers to register with the manufacturer new tires sold to consumers by (1) physically giving the purchaser a paper copy of the tire registration form; or (2) electronically transmitting the registration form to the purchaser within 30 days of the date of sale; or (3) providing the manufacturer with the paper tire registration form and the purchaser's contact information. *See* 49 C.F.R. § 574.8(a)(1)(i)-(iii).

The Safety Act provides "its own extensive array of administrative remedies for a violation of its notification obligations." *Ayres*, 234 F.3d at 522. For example, the Secretary may determine that a motor vehicle or a piece of a motor vehicle (such as a tire) is defective and either order the manufacturer to notify the owners of the defect or "take specified action." 49 U.S.C. §§ 30118(b), (e). Either the Secretary or "any interested person" may request a hearing to determine whether a "manufacturer has reasonably met the notification requirements under this section." *Id.* at § 30118(e). Finally, the Attorney General is authorized to bring civil actions against dealers that violate the Safety Act's notification requirements with violations punishable by fines of up to $1,000 per violation and up to $800,000 for a series of related violations. 49 U.S.C. §§ 30163(a), 30165(a).

Defendant NTB is an independent tire dealer incorporated in Delaware with its principal place of business in Florida. NTB is a wholly-owned subsidiary of Defendant TBC. [DE 1 ¶¶ 12-14]. TBC is an independent tire dealer incorporated in Delaware with its principal place of business in Florida. [DE 1 ¶ 15]. NTB allegedly "maintains and operates more than 1200 locations in 41 states," the District of Columbia, and Canada. *Id.*

Plaintiffs Bruce Exum, Jr., and Emilie Palmer, both of Virginia, allegedly purchased tires from NTB in January 2019. [DE 1 ¶¶ 42, 43]. But, according to the Complaint, NTB failed to provide either of them with a tire registration form or transmit their registration forms to the tire manufacturers, as required under 49 C.F.R. § 574.8. *Id.*

Shortly thereafter, on January 29, 2019, Plaintiffs filed their Complaint against Defendants, asserting seven causes of action, all related to Defendants' alleged failure to comply with 49 C.F.R. § 574.8's tire registration requirement. [DE 1]. Plaintiffs also seek certification of

a class of similarly situated plaintiffs who all purchased allegedly unregistered tires from Defendants. *See* DE 49. Defendants have moved to dismiss the Complaint with prejudice.

### III. <u>Analysis and Discussion</u>

#### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Under Federal Rule of Civil Procedure 12(b)(1), a party may either facially or factually contest subject-matter jurisdiction. *Principal Life Ins. Co. v. Alvarez*, No. 9:11-cv-21956, 2011 WL 4102327, at *2 (S.D. Fla. Sept. 14, 2011). "A facial attack asserts that a plaintiff has failed to allege a basis for subject matter jurisdiction," and "the plaintiff's allegations are taken as true for the purposes of the motion[.]" *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). A factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." *Id.* Here, Defendants' attack is facial in nature.

#### B. The Parties' Arguments

Defendants' main argument is that Plaintiffs lack standing to assert claims against them concerning Defendants' alleged noncompliance with 49 C.F.R. § 574.8's tire registration requirements. Specifically, Defendants contend that (1) "violations of the Safety Act do not give

rise to private causes of action" and (2) Plaintiffs have failed to allege "actual, tangible harm" resulting from Defendants' alleged noncompliance. [DE 30-1, p. 9-15]. In the alternative, Defendants argue that Plaintiffs have failed to allege sufficient facts supporting each of Plaintiffs' claims and that, at a minimum, the claims against Defendant TBC should be dismissed because Plaintiffs have failed to identify any specific harm caused by TBC as "Plaintiffs do not allege that they purchased any tires from TBC." *Id.* at p. 15.

Plaintiffs respond by arguing that they have standing to assert their claims because "they allege the very injury [49 C.F.R. § 574.8] [is] intended to prevent: not being reachable in the event the tire manufacturer discovers a defect or issues a recall." [DE 36, p. 11]. They also assert that they suffered "tangible, economic harm" because Defendants' alleged noncompliance with the Regulation "depriv[es] Plaintiffs of the benefits of their bargains" and that Defendants "enriched themselves by saving labor costs and expenses they would have incurred in registering the tires with the manufacturers." [1] *Id.* Regarding the Safety Act, Plaintiffs maintain the fact that the Act does not grant a private cause of action to individuals is irrelevant as they "are bringing claims not under the Safety Act, but under other state and federal provisions, as well as common law." *Id.* at p. 16. Finally, Plaintiffs contend that they have alleged sufficient facts supporting each of their claims and that dismissing Defendant TBC from this action would be premature as they "require discovery to reveal whether" TBC "made a company-wide decision to not follow the law, or whether TBC failed to investigate and monitor its local stores' compliance with the law[.]" *Id.* at p. 17.

---

[1] As noted above, Plaintiffs rely extensively on *Muransky*, 922 F.3d at 1175. There, a panel of the Eleventh Circuit held that a customer alleging violations of the Fair and Accurate Credit Transactions Act had standing to sue the defendant-merchant where the defendant printed receipts that exposed customers to an elevated risk of identity theft. *Id.* at 1187. However, on October 4, 2019 and well after Plaintiffs filed their response, the Eleventh Circuit vacated the panel's decision in *Muransky* and granted rehearing *en banc*. *See Muransky v. Godiva Chocolatier, Inc.*, 939 F.3d 1278 (Mem) (11th Cir. 2019). The *en banc* case is still pending before the Eleventh Circuit.

Having summarized the parties' arguments, the Court now turns to the issue of standing as "standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008).

## C. Plaintiffs' Article III Standing

Article III § 2 of the United States Constitution limits federal judicial review to "Cases" and "Controversies." The Supreme Court has interpreted this limitation to require, as an "irreducible constitutional minimum," that plaintiffs show (1) an injury in fact (2) that is fairly traceable to a defendant's challenged conduct and (3) is likely redressable by a favorable decision. *Spokeo*, 136 S. Ct. at 1547; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Of these three elements, the first, injury in fact, is "[f]irst and foremost[.]" *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).

To establish injury in fact, plaintiffs must allege that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560, and is "concrete" when it is "real, and not abstract," *Spokeo*, 136 S. Ct. at 1548. Further, injuries can be separated into those that are "tangible" and those that are "intangible." An intangible harm, however, must be more than "a bare procedural violation, divorced from any concrete harm[.]" *Id.* at 1549; *see also Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.").

As an initial point, it is important to the Court's analysis that "[a]t the pleading stage, 'general factual allegations of injury resulting from a defendant's conduct may suffice to establish standing.'" *Koski v. Carrier Corp.*, 347 F.Supp.3d 1185, 1191 (S.D. Fla. 2017) (quoting *Case v. Miami Beach Healthcare Grp., Ltd.*, 166 F.Supp.3d 1315, 1318 (S.D. Fla. 2016)).

Plaintiffs argue that they have properly pleaded injury in fact by alleging the "invasion of *two* legally protected interests." [DE 36, p. 10] (emphasis in original). First, "they were deprived of the full benefit of the tires they purchased" because the tires were unregistered. *Id.* And second, "they are exposed to harm by not being reachable by the manufacturers of their tires" in the event of a recall. *Id.* Neither of the Plaintiffs have alleged that their tires were recalled and that they were unable to be reached due to Defendants' alleged conduct. Nor have either of them alleged that their tires were subject to recall at all. However, the Court finds that under the Supreme Court's holding in *Spokeo* these omissions are not necessarily fatal to Plaintiffs' Article III standing.

*Spokeo* involved a putative class of consumers who alleged that the defendant, a consumer reporting agency, gathered and disseminated inaccurate information regarding the class members. 136 S. Ct. at 1546. Before the district court, the defendant successfully moved to dismiss the plaintiff's complaint with prejudice because he failed to adequately plead an injury in fact. *Id.* On appeal the Ninth Circuit reversed, holding that a "violation of a statutory right is usually sufficient injury in fact to confer standing." *Robins v. Spokeo*, 742 F.3d 409, 412 (9th Cir. 2014). The Supreme Court then granted certiorari, vacated the Ninth Circuit's decision, and remanded the case for further proceedings.

In remanding the case to the Ninth Circuit, the Supreme Court instructed that courts should consider two additional factors when addressing whether a plaintiff had properly

established injury in fact in the context of alleged procedural violations. First, whether Congress had through legislation "'elevated to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578)). And second, whether the alleged violation of the procedural right at issue "cause[s] harm or present[s] any material risk of harm." *Id.* Because the Ninth Circuit had not gone through these two factors, the Court remanded the case.

On remand from the Supreme Court, the Ninth Circuit held that the plaintiff had sufficiently pleaded injury in fact even though he had not shown actual harm because (1) Congress, through the Fair Credit Reporting Act, gave consumers a concrete interest in the accurate collection and dissemination of information by consumer reporting agencies and (2) the defendant's failure to comply with the statute's procedural requirements materially increased the risk of harm to the plaintiff's concrete interest in accurate reporting. *Spokeo v. Robins*, 867 F.3d 1108, 1112-17 (9th Cir. 2017).

The Court finds that *Spokeo* is instructive. Here, as in *Spokeo*, Congress has "'elevated to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law'" in the form of the Safety Act. *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578)). This is true even though Congress did not authorize a private right of action in the Safety Act. Although *Spokeo* dealt with the Fair Credit Reporting Act, which does provide for private enforcement, *see* 15 U.S.C. § 1681n, and this lawsuit concerns a regulation enacted under the Safety Act, which does not provide for private enforcement, the Court in *Spokeo* did not premise its decision on this distinction. Instead, the Court's focus was, as stated previously, on whether Congress had "'elevated to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504

U.S. at 578)). Absent any contrary indication from either the Supreme Court or the Eleventh Circuit, this Court will not graft onto *Spokeo* a more restrictive requirement by limiting its holding to only those actions that center around statutes that expressly provide for a private right of action.[2]

Congress explicitly enacted the Safety Act "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. And it specifically authorizes the Secretary of Transportation to promulgate the regulations necessary to carry out and enforce that objective. *See* 49 U.S.C. § 322(a). The Regulation at issue here, 49 C.F.R. § 574.8, is one such regulation.

By requiring independent tire dealers to register tires that they sell to consumers with the tire manufacturers, 49 C.F.R. § 574.8 creates a concrete expectation (or interest) in tire purchasers that their tires be registered so they may be contacted by their tires' manufacturer in the event of a recall.[3] And there is no question that Defendants' alleged noncompliance with the Regulation, if proven true, materially increased the risk of harm to that concrete interest as the putative class members would be unreachable in the event their tires were recalled. Thus, under

---

[2] In fact, the Court in *Spokeo* instructed that Congress' granting of a private right of action is neither necessary nor sufficient to find standing: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it." 136 S. Ct. at 1543. This is because "[i]njury in fact is a constitutional requirement," *id.* at 1547, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). Thus, it follows that if Congress' express authorization of a private right of action is insufficient, standing alone, to grant a plaintiff standing, then the *lack* of such a private right of action is similarly not dispositive over the injury in fact inquiry. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019) (stating that "Congress's decision to grant a right to sue is not determinative of Article III standing").

[3] The Court recognizes that the question of whether the Safety Act creates a concrete interest on behalf of tire purchasers is not as clear cut as in the case of, for example, the Fair and Accurate Credit Transactions Act ("FACTA"), which explicitly provides for civil damage claims by individuals. *See* 15 U.S.C. § 1681n(a). But the mere fact that one statute, such as FACTA, provides for a private right of action and another, such as the Safety Act, does not, is not fully determinative or conclusive of the question of whether the statute "'elevate[s] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578)). Rather, such a difference goes to the manner in which a claim is brought. Here, as explained below, Plaintiffs do not bring their claims under the Safety Act or the Regulation as a private right of action; rather, they bring their claims under other federal statutes, Virginia and Florida state law, and common law and use Defendants' alleged noncompliance with the Regulation as evidence supporting those claims.

*Spokeo*, Plaintiffs have alleged a sufficiently concrete injury in fact to support Article III standing, at least at the pleading stage.

Defendants argue that the Eleventh Circuit's decision in *Nicklaw*, 839 F.3d at 998, is dispositive. However, the Court finds *Nicklaw* inapposite. There, the Eleventh Circuit considered an appeal from a district court's dismissal of a putative class action alleging statutory violations related to the defendant's failure to file a certificate of discharge more than 90 days after the putative class members satisfied their mortgages, as required by New York state law. *Id.* at 1000-001. The court held that the plaintiff had failed to allege a concrete injury because he "[did] not allege a harm nor a material risk of harm that the district court could remedy." *Id.* at 1003. Crucially, the plaintiff "fail[ed] to allege even a material risk of harm at this late date." *Id.* This is not the case here. Plaintiffs have clearly alleged that Defendants' alleged noncompliance with the Regulation materially increased their risk of harm, deprived them of the benefit of their bargains, and unjustly enriched Defendants. As can be gleaned from the Complaint, driving on unregistered tires places the purchasers of those tires in a dangerous zone of harm in the event that such tires are defective and recalled. Thus, the Court's finding here is not in conflict with *Nicklaw*.

Alternatively, Plaintiffs also have established injury in fact because they allege Defendants' noncompliance with 49 C.F.R. § 574.8 deprived them of the benefit of their bargains. "A person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he [or she] is deprived of the benefit of his [or her] bargain." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019). And, as the Eleventh Circuit has explained, "[c]ertainly, an economic injury qualifies as a concrete injury." *Id.*; *see also MSPA Claims 1, LLC v. Tenet Fla. Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (explaining that an

economic injury is the "epitome" of a concrete injury). Tire purchasers whose tires are unregistered have arguably purchased a less valuable product than properly registered tires. If federal law requires that tires purchased be properly registered, then purchasers can reasonably expect that the purchase price for those tires includes proper tire registration.

Turning to the other two requirements of Article III standing, the Court finds both that Plaintiffs have sufficiently established that their injury in fact is fairly traceable to Defendants' conduct because it was Defendants alone who were required to register Plaintiffs' tires and that Plaintiffs' injury is redressable by the courts via compensatory damages, injunctive relief, or both. *See Spokeo*, 136 S. Ct. at 1547. Thus, because all three requirements have been met, the Court finds that Plaintiffs have established Article III standing, at least at the pleading stage.

The Court recognizes that its finding is contrary to the only other federal district court decision addressing Article III standing in the context of alleged noncompliance with 49 C.F.R. § 574.8. *See Thorne*, 397 F. Supp. 3d at 667. In *Thorne*, the Court held that Article III standing was lacking because the plaintiff "fail[ed] to plead that the tires she bought from [the defendant] were in fact, if ever, recalled." *Id.* at 667-68. The *Thorne* Court concluded that alleged noncompliance with the Regulation's tire-registration requirements "fail[ed] to entail a degree-of-risk sufficient to meet the concreteness requirement, and therefore fails to qualify as an injury-in-fact." *Id.* at 668. The fact that the *Thorne* Court reached a contrary conclusion in a similar case establishes just how complex and difficult the standing issue is to resolve in this case.

However, on the specific allegations raised in the Complaint before this Court and accepting those factual allegations as true, *Twombly*, 550 U.S. at 572, the Court concludes that Plaintiffs have sufficiently established Article III standing. As stated above, Plaintiffs have identified a concrete interest in having the tires they purchased registered as mandated by

Congress through the Safety Act, the NHTSA, and its promulgated regulations, and they have sufficiently alleged that Defendants' alleged noncompliance both materially increased the risk of harm to them due to their attendant inability to receive tire recall notices and deprived them of the benefit of their bargains when they purchased the tires expecting them to be registered. Thus, Plaintiffs have sufficient standing to bring their claims against Defendants.[4]

Although the standing issue is the most important threshold issue the Court must address in resolving Defendants' motion to dismiss, Plaintiffs' claims may still be dismissed if, as Defendants contend, the Safety Act's "extensive array of administrative remedies" precludes Plaintiffs from asserting their various claims. *Ayres*, 234 F.3d at 522. Thus, the Court next addresses this issue.

### D. Whether the Safety Act's Lack of a Private Cause
### of Action Precludes Plaintiffs' Claims

Defendants argue that the Complaint must be dismissed because "neither Congress nor any agency granted a private cause of action to enforce" the Safety Act. *See id.* (holding that the Safety Act "confers no private cause of action to enforce its notification requirements"). Plaintiffs do not disagree that the Act does not grant individuals a private cause of action. Instead, they argue that they are not bringing their action under the Safety Act, but rather "are bringing claims . . . under other state and federal provisions, as well as common law." [DE 36, p. 16].

Defendants' argument misses the mark. The Safety Act certainly does not create its own private cause of action. *See Ayres*, 234 F.3d at 522. Neither does 49 C.F.R. § 574.8. However, in *Ayres*, the Eleventh Circuit expressly noted that "the lack of a private right of action under the

---

[4] The Court notes that the issue of Plaintiffs' Article III standing may be revisited at the summary judgment stage, with the benefit of discovery and relevant evidence.

14

Safety Act does *not* preclude [plaintiffs] acting under [] state law cause[s] of action." *Id.* at 522 n.19 (citing *Lowe v. Gen. Motors Corp.*, 624 F.3d 1373 (5th Cir. 1980)) (emphasis added). Defendants' argument stretches the Eleventh Circuit's holding in *Ayres* too far. The Eleventh Circuit in *Ayres* held that a defendant's failure to comply with the Safety Act's notification requirements did not constitute mail or wire fraud such that a plaintiff could maintain a civil RICO action. *Id.* at 525. *Ayres* does *not* stand for the proposition that a plaintiff can never bring a suit that in any way implicates the Safety Act or its accompanying regulations. Further, even if the Eleventh Circuit's language in *Ayres* approving the bringing of state law claims related to alleged violations of the Safety Act is dicta, the Court finds that the Fifth Circuit's holding in *Lowe*—cited approvingly by *Ayres*, *id.* at 522 n.19—is dispositive of this issue.[5]

In *Lowe*, the Eleventh Circuit considered a wrongful death claim brought under Alabama state law by the surviving spouses of two husbands who were killed when the steering mechanism of their vehicles locked. 624 F.3d at 1375. The plaintiffs contended that the defendant vehicle manufacturer failed to comply with a provision of the Safety Act that required the manufacturer to notify purchasers of discovered defects and that such noncompliance constituted negligence per se. *Id.* at 1377. The case proceeded to trial and a verdict was rendered in the plaintiffs' favor. *Id.* at 1375. The defendant then moved for a new trial, arguing, as Defendants do here, that the Safety Act lacked a private cause of action to enforce its requirements and thus they could not be found liable at common law for violating a provision of the Act. *Id.* at 1375-76. The trial court agreed, and the new trial resulted in a verdict in the defendant's favor. *Id.* at 1376. The plaintiffs appealed to the Eleventh Circuit.

---

[5] Under *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), decisions of the Fifth Circuit issued before September 30, 1981 are binding precedent in the Eleventh Circuit.

The Eleventh Circuit vacated the trial court's granting of a new trial and reinstated the verdict from the first trial. *Id.* at 1384. The court concluded that the Safety Act "create[ed] a duty upon the automobile manufacturer to construct his product to be 'reasonably safe.'" *Id.* at 1379 (citing 15 U.S.C. § 1391(1) (1974)). "The mere fact that the law which evidences negligence is Federal while the negligence action itself is brought under State common law," the court explained, "does not mean that the state law claim metamorphoses into a private right of action under Federal regulatory law." *Id.* The plaintiffs had "made it quite clear that the only relationship the alleged violation of the [Safety Act] had to this case was simply as evidence of [the defendant's] negligence." *Id.*

Here, Plaintiffs raise various state and federal causes of action including breach of warranty under Virginia law, violation of the Magnuson-Moss Warranty Act, violation of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment, common law negligence, and negligence per se. None of these causes of action are asserted under the Safety Act or the Regulation and, just as in *Lowe*, the mere fact that Plaintiffs' claims involve the Safety Act "does not mean that the[ir] state law claim[s] metamorphose[] into a private right of action under Federal regulatory law." *Id.*

For example, Plaintiffs' breach of warranty claim (Count I) alleges that "Defendants impliedly warranted that the unregistered tires were of a merchantable quality" and Defendants breached that warranty "because consumers were harmed by being exposed to high risk of injury without their knowledge or consent when they purchased tires that were unregistered." [DE 1 ¶¶ 60-61]. This claim is premised on neither the Safety Act nor 49 C.F.R. § 574.8 but rather Virginia state law. *Id.* at ¶62 (citing Va. Code. Ann. § 8.2-314(2)(c)). Plaintiffs' negligence claims are obviously premised upon common law negligence, rather than the Safety Act or 49

C.F.R. § 574.8. Thus, the fact that neither the Safety Act nor the Regulation provide for a private cause of action is undebatable but irrelevant to the Court's analysis of Defendants' motion to dismiss. Plaintiffs are permitted to rely on the Regulation which creates a duty that must be complied with by independent tire dealers. Plaintiffs' effort to use the Regulation as evidence of their claims does not mean that they are asserting a private right of action under either the Safety Act or the Regulation.

### E. Whether Plaintiffs' Have Pleaded Sufficient Facts to Support Their Allegations

Defendants make one more general argument as to why the Complaint should be dismissed. Essentially, they contend that Plaintiffs' "limited factual allegations" are too vague under the *Twombly-Iqbal* pleading standard to support their claims. [DE 30-1, p. 17]. Defendants argue that, at a minimum, the Complaint should be dismissed as to Defendant TBC because "Plaintiffs do not allege that they purchased any tires from TBC." [DE 30-1, p. 15].

Plaintiffs respond by arguing that they "are not required to prove their case at the pleading stage." [DE 36, p. 17]. They contend they have alleged sufficient facts making it "plausible" that Defendants failed to comply with 49 C.F.R. § 574.8's tire registration requirements. *Id.* As to Defendant TBC, Plaintiffs argue in response that dismissing TBC at this time would be premature as discovery may reveal that TBC, as NTB's parent company, "made a company-wide decision to not follow the law" or "failed to investigate and monitor its local stores' compliance with the law[.]" [DE 36, p. 17].

The Court first notes that "no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide evidence for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018). Instead, Plaintiffs' Complaint need only contain

factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citation omitted).

The Court finds that Plaintiffs have alleged sufficient facts "rais[ing] a right to relief above the speculative level[.]" *Id.* Plaintiffs have alleged all the essential facts needed to raise their claims against Defendants. They have alleged (1) they both purchased tires from NTB [DE 1 ¶ 42] and (2) neither Plaintiff was either handed a tire registration form nor did their purchase invoices indicate that NTB had transmitted their tire registration information to the manufacturer directly [DE ¶¶ 42-43].

Defendants contend that Plaintiffs need to assert "facts indicating that Defendants failed to transmit the required tire information directly to the manufacturer[.]" [DE 30-1, p. 17]. But the law requires no such thing. It is sufficient at this stage that Plaintiffs have alleged that they neither received a tire registration form nor were provided any indication that their tires were registered. At this stage in the proceeding, Plaintiffs are not required to provide actual evidence supporting their claims. *See Hi-Tech Pharm., Inc.*, 910 F.3d at 1197.

Defendants also argue Plaintiffs must allege "that the alleged failure to comply with the Regulation resulted in [] accidents, personal injury or damage." *Id.* But Plaintiffs did plead damages by alleging that Defendants' alleged noncompliance "has exposed and continues to expose" them "to harm, and deprives them of the full benefit of their tire purchases." [DE 1 ¶ 9]. They also allege that Defendants were unjustly enriched by their failure to register Plaintiffs' tires because "Defendants' conduct spared [their] tires sales personnel from taking the few extra moments required to comply with federal law, freeing up those sales personnel to sell more tires." [DE 1 ¶ 8].

Finally, Plaintiffs allege that Defendants' alleged failure to register consumers' tires is "either (1) the result of a corporate decision made at [TBC's] Florida headquarters, or (2) the result of a corporate failure to investigate and monitor whether Defendants' local retail stores were following the federal rule, and if not, why not." [DE 1 ¶ 15]. Based on these allegations, the Court will not dismiss TBC at this time but rather will re-address this issue at the summary judgment stage, where the Court will benefit from reviewing all the relevant evidence as to TBC's role in Defendants' alleged noncompliance.

**F. Whether the Specific Claims Asserted Are Sufficiently Pleaded**

Having addressed Defendants' general arguments in support of their motion to dismiss, the Court now turns to their specific arguments as to each claim asserted in the Complaint.

### i. *Count I: Breach of the Implied Warranty of Merchantability*

In Count I, Plaintiffs contend that Defendants breached the implied warranty of merchantability by selling tires that Defendants impliedly warranted were of merchantable quality when they were, in fact, not of merchantable quality because of Defendants' alleged failure to register the tires as required by 49 C.F.R. § 574.8. [DE 1 ¶¶ 57-68]. Plaintiffs bring this claim under Virginia state law. *See* Va. Code. Ann. §8.2-314(2)(c).

Defendants' motion to dismiss raises two arguments as to why Count I should be dismissed. First, they argue dismissal is proper because the Complaint fails to allege that Plaintiffs could not use the allegedly unregistered tires or operate their vehicles safely. And second, they contend dismissal is warranted because the Complaint fails to allege that the tires were unsafe or unreliable. Plaintiffs responded to those arguments, contending that Defendants breached the implied warranty of merchantability because the tires would not "pass without objection in the trade under the contract description." Va. Code. Ann. § 8.2-314(1)(a); *see*

*Hubbard v. Dresser, Inc.*, 271 Va. 117, 125 (Va. 2006) (holding that a petroleum pump that failed to properly register the amount of fuel dispensed would not "pass without objection in the trade" and thus the plaintiff had properly alleged a claim for breach of the implied warranty of merchantability).

But in their reply, Defendants raised two new arguments regarding the Uniform Commercial Code and a purported disclaimer of the implied warranty of merchantability. [DE 38, p. 13]. However, under S.D. Fla. L.R. 7.1(c), a movant's reply memorandum must be "strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of the matters covered in the movant's initial memorandum of law." Thus, the Court will not consider Defendants' new arguments raised in their reply memorandum, especially considering that Plaintiffs have not had the opportunity to respond to those arguments. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived."); *Guy Roofing, Inc. v. Angel Enter., LLC*, No. 17-14081, 2017 WL 8890873, at *3 (S.D. Fla. Sept. 6, 2017) ("Generally, a party may not wait until a reply brief to raise an argument for the first time."), *report and recommendation adopted*, 2017 WL 8890874 (S.D. Fla. Sept. 26, 2017). Defendants can raise this issue at the summary judgment stage, if appropriate.

Turning to Defendants' properly presented arguments, Plaintiffs need not allege that the allegedly unregistered tires they purchased from Defendants were unusable or unsafe. Rather, they need only plead that the tires would not "pass without objection in the trade under the contract description." Va. Code. Ann. § 8.2-314(1)(a); *see Hubbard*, 271 Va. at 125. Further, under Virginia state law, it is not "necessary for the complaining party to plead with specificity the trade or industry standard for merchantability[.]" *Hubbard*, 271 Va. at 125. Instead, this is an

inquiry best left for the summary judgment stage when the Court has the benefit of considering all the evidence. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 293 (4th Cir. 1989). The Court finds that, at this early stage in the pleadings, Plaintiffs have sufficiently pleaded a claim for breach of the implied warranty of merchantability.

### *ii. Count II: Violation of the Magnuson-Moss Warranty Act*

Count II rises and falls with Count I as the Magnuson-Moss Warranty Act does not provide a private right of action but rather allows civil actions against parties who fail to comply with an implied warranty. *See* 15 U.S.C. § 2310(d)(1) (providing that "a consumer who is damaged by the failure . . . to comply with any obligation . . . under a written warranty, implied warranty, or service contract, may bring suit for damages"). Thus, because the Court will not dismiss Count I, it will not dismiss Count II either at this juncture. *See David v. Amer. Suzuki Motor Corp.*, 629 F.Supp.2d 1309, 1324 (S.D. Fla. 2009).

### *iii. Count III: Violation of the Florida Deceptive and Unfair Trade Practices Act*

Turning to Count III, Plaintiffs, whom are residents of Virginia, bring a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). A FDUTPA claim requires Plaintiffs to allege "(1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *See Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).

Defendants argue that "Plaintiffs fail to identify a specific misrepresentation (or who made the representation) as required under the heightened pleading standard for fraud. Likewise, Plaintiffs fail to provide sufficient factual allegations to support their inference that Defendants did not comply with" 49 C.F.R. § 574.8. [DE 30-1, p. 21]. They also contend that Plaintiffs have failed to allege both the required elements of causation and damage. Plaintiffs argue in response

that they have sufficiently pleaded a FDUPTA claim by identifying Defendants' alleged failure to register their tires and not disclosing that fact to Plaintiffs.

A further issue is that Plaintiffs are out of state residents asserting a claim under FDUPTA for allegedly deceptive conduct that appears to have wholly occurred outside the State of Florida. *See Solyom v. World Wide Child Care Corp.*, No. 14-80241, 2015 WL 6167411, at *2 (S.D. Fla. Oct. 15, 2015) ("The pertinent question, then, is . . . the connection of the Defendants' alleged activities with Florida."); *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1261-62 (Fla. 3d DCA 2000) ("As we read FDUPTA, it seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired *within the territorial boundaries of this state* without limitation.") (emphasis added). Because the Complaint is devoid of any allegations that Defendants engaged in unfair or deceptive practices against Plaintiffs within the State of Florida, Plaintiffs' FDUPTA claim must be dismissed. Such dismissal is without prejudice to Plaintiffs' ability to amend its FDUPTA cause of action to address any defects in Count III.

### iv. *Count IV: Unjust Enrichment*

In Count IV, Plaintiffs assert a claim for unjust enrichment. They allege that they conferred a benefit on Defendants by purchasing allegedly unregistered tires and that Defendants were unjustly enriched by those purchases because Defendants' employees were able to make "extra sales during the time it would have taken to register[] [Plaintiffs'] tires with the tire manufacturer or provide [Plaintiffs] with the tire-registration form." [DE 1 ¶ 89].

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant[] to retain it without

paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012); *see also Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004). "The measure of damages for unjust enrichment is the amount of unfair gain received by those unjustly enriched." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. and Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1336 (S.D. Fla. 2013).

Defendants contend that Plaintiffs have failed to state a claim for unjust enrichment because Plaintiffs' alleged damages are "simply speculative and not measurable." [DE 30-1, p. 22]. Plaintiffs argue in response that Defendants' argument is premature as it "raises factual disputes that should not be resolved in" a motion to dismiss. [DE 36, p. 21]. The Court agrees with Plaintiffs. Without having heard any evidence, it is simply too early for this Court to conclude that Plaintiffs' damages under their unjust enrichment claim are immeasurable or speculative. *See Kahn v. Portfolio Recovery Associates, LLC*, No. 10-cv-2399, 2011 WL 223870, at *1 (M.D. Fla. Jan. 24, 2011) ("On a motion to dismiss, the Court may not engage [in] resolving [any] factual disputes."). This issue can be raised at the summary judgment stage, if appropriate.

### *v. Count V: Negligence*

Plaintiffs' fifth claim asserts that Defendants were negligent in allegedly failing to register Plaintiffs' tires. [DE 1 ¶ 92-100]. Specifically, Plaintiffs contend that Defendants owed them a duty to exercise reasonable care in the marketing and selling of tires and that Defendants had a duty under 49 C.F.R. § 574.8(a) to register Plaintiffs' tires or provide customers with tire registration cards. Defendants allegedly breached this duty by failing to either register Plaintiffs' tires or provide Plaintiffs with tire registration cards. As a proximate result, Plaintiffs allege, they suffered monetary damages.

To bring a claim for common law negligence, a plaintiff must show "(1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006).

Defendants argue Count V must be dismissed because (1) 49 C.F.R. § 574.8(a) does not establish a duty of care to private citizens; (2) the Complaint alleges insufficient factual allegations showing that Defendants breached any duties owed to Plaintiffs; and (3) Plaintiffs have not alleged sufficient facts showing that they were injured as a proximate cause of Defendants' alleged breach. [DE 30-1, p. 24]. Plaintiffs argue in response that 49 C.F.R. § 574.8 is a public safety regulation that establishes a duty of care to consumers and that they have alleged sufficient facts regarding breach and proximate cause to support a claim for negligence.

First, 49 C.F.R. § 574.8 appears to establish a duty of care owed to tire purchasers by independent tire distributors. "Florida law recognizes four sources of duties of care: statutes and *regulations*, judicial interpretations of legislation, judicial decisions, and duties arising from the facts of a particular case." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015) (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216, 1227-28 (Fla. 2010) (emphasis added)). Second, the Court finds that the Complaint pleads sufficient factual allegations regarding breach and causation to support a claim for negligence at this early stage. *See Iqbal*, 556 U.S. at 678 (instructing that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"); *Twombly*, 550 U.S. at 570 (explaining that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). Thus, Count V will not be dismissed.

*vi. Count VI: Negligence Per Se*

For the same reasons the Court finds that dismissal of Count V is not warranted at this time, the Court will not dismiss Count VI. Count VI asserts a claim for negligence per se. [DE 1 ¶ 101-106]. "The elements of negligence per se are: (1) violation of a regulation; (2) causing the type of harm that the regulation was intended to prevent; and (3) injury to a member of the class of persons intended to be protected by the regulation." *Lemma Ins. (Europe) Co., Ltd. v. Rumrunner Sport Fishing Charters, Inc.*, No. 11-2110, 2012 WL 254134, at *2 (M.D. Fla. Jan 27, 2012) (citing *Marshall v. Isthmian Lines, Inc.*, 334 F.2d 131, 134 (5th Cir. 1964)).

Plaintiffs have properly pleaded that Defendants violated 49 C.F.R. § 574.8 and that Defendants' violation caused them harm in the form of a materially increased risk of harm due to the failure to be notified of a recall. Further, as tire purchasers, Plaintiffs are certainly members of the class of persons intended to be protected by 49 C.F.R. § 574.8. Thus, they have properly pleaded a claim for negligence per se. *Id.*

*vii. Count VII: Injunctive Relief*

Plaintiffs' final claim, Count VII, asserts a claim for "injunctive relief." Injunctive relief, however, is a remedy, not a separate cause of action. *See Rubinstein v. Keshet Inter Vivos Trust*, No, 17-61019, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (noting that "there are an abundance of cases establishing that injunctive relief 'is a remedy, not a separate cause of action'") (quoting *Espinoza v. Countrywide Home Loans Servicing, LP*, No. 14-20756, 2014 WL 3845795, at *7 (S.D. Fla. Aug. 5, 2014)); *see also Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . . There is no such thing as a suit for a traditional injunction in the abstract."). Thus, Count VII must be dismissed. This dismissal is

without prejudice to Plaintiffs' ability to seek injunctive relief based upon a properly pleaded cause of action.

## IV. Conclusion

In light of the foregoing, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss Plaintiffs' Complaint [DE 30] as follows: Counts III and VII of Plaintiffs' Complaint are **DISMISSED WITHOUT PREJUDICE**. These dismissals are without prejudice to Plaintiffs' ability to file an Amended Complaint. The remainder of the motion is **DENIED**. Plaintiffs shall have 14 days from the date of this Order to file any Amended Complaint.

**ORDERED and ADJUDGED** in chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of January 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge