**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| Bruce Exum, Jr. and Emilie Palmer, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>National Tire and Battery and TBC Corporation,<br><br>                    Defendants. | Case No. 9:19-cv-80121-WM<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS, AND INCORPORATED SUPPORTING MEMORANDUM** |

## I.    INTRODUCTION

In this unopposed motion, Plaintiffs Bruce Exum, Jr. and Emilie Palmer propose to end this litigation in a manner that benefits both them and all persons similarly situated. Specifically, they seek certification of the following settlement class:

> All persons in the United States and its territories who purchased a tire from Defendants or their company-owned subsidiaries during the Class Period for their personal use, rather than for resale or distribution, where Defendants did not provide them with a registration card, send in a card to the manufacturer for them, or electronically transmit their information to the tire manufacturer within 30 days of purchase. Excluded from this Class are Defendants' current or former officers, directors, employees, Defendants' parent entities, or any entity in which Defendants have a controlling interest; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

In addition, Plaintiffs seek final approval of a class-action settlement, consistent with Fed. R. Civ. P. 23(b)(2), under which certification here is appropriate. The proposed settlement has three principle components of relief, as Defendants have agreed to: (1) change their tire-registration practices (the "Rule 23(b)(2) Relief"); (2) pay an incentive award of $7,500 to each of the two class representatives; and (3) pay fees and costs to Plaintiffs' counsel totaling $645,000,

546839.6

plus costs for the February 7, 2020 mediation. Under the standards applicable to this motion, Plaintiffs respectfully submit that the Court should certify the proposed class for settlement purposes; approve the settlement; and, to the extent the Court deems it necessary or otherwise would prefer, schedule a final fairness hearing.

This lawsuit was filed in response to Defendants' alleged failure to register Plaintiffs' tires by any of the three methods in 49 C.F.R. § 574.8(a)(1). Because Defendants' tire-registration practices and the applicable federal law apply not only to Plaintiffs, but also to other consumers who purchased tires from Defendants, Plaintiffs submit that class treatment is appropriate. Thus, the Court should grant Plaintiffs' motion.

## II. SUMMARY OF LITIGATION

### A. Overview of Allegations

Plaintiffs' Complaint alleges that Defendants' practices in selling tires to Plaintiffs and the putative class members violated 49 C.F.R. § 574.8(a)(1). This regulation, enacted by the National Highway Traffic Safety Administration ("NHTSA") to implement the federal Motor Vehicle Safety Act ("MVSA"), requires that independent tire dealers and distributors help ensure that tire purchasers' contact and tire information is transmitted to the tires' manufacturers, so that the manufacturers can reach purchasers in the event of a safety recall. Plaintiffs' Complaint alleges claims for breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, violation of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment, common-law negligence, negligence per se, and injunctive relief. Relief sought in the Complaint includes an order by the Court certifying the case as a class action, plus, among other things, injunctive relief, and attorneys' fees and costs.

**B.     Relevant Procedural History**

This action began with filing of Plaintiffs' Complaint on January 29, 2019.  ECF Dkt. No. 1. On May 28, 2019, Defendants filed a motion to dismiss.  Doc. No. 30. On August 13, 2019, Plaintiffs filed a motion for class certification.  Doc. No. 49.

The Court ordered the Parties to engage in discovery while Defendants' motion to dismiss and Plaintiffs' motion for class certification were awaiting decision.  Discovery activities eventually included production by Defendants of nearly 3,000 documents, motion practice on a discovery dispute, and depositions of the Plaintiffs and three of Defendants' current or former employees, including a partial deposition under Fed. R. Civ. P. 30(b)(6).

On October 2, 2019, in accordance with the provisions of 28 U.S.C. § 636(c), the Parties consented to the jurisdiction of Magistrate Judge William Matthewman to manage the matter through judgment.  Doc. No. 69.  The next day, the district court ordered the matter referred to Magistrate Judge Matthewman for all further proceedings.  Doc. No. 70.  On October 8, 2019, Magistrate Judge Matthewman issued a revised scheduling order to govern the case.  Doc. No. 75.

On January 28, 2020, the district court largely denied Defendants' motion to dismiss.  The following week, the parties resumed participation in a private mediation that they had begun in November, 2019.  On February 7, 2020, the parties reached a full and final settlement of the dispute.  Before the Parties agreed on settlement, Plaintiffs were on the verge of filing an Amended Complaint per the scheduling order deadline of February 11, 2020, a deadline since abated by the Court.  *See* Doc. No. 92.

### III.  ANALYSIS

**A.  Legal standards**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement in a class action. *See* Fed. R. Civ. P. 23(e). This can involve "a two-step process: preliminary approval and a subsequent fairness hearing."[1] In the referenced two-step process, the parties submit the proposed settlement to the court for preliminary approval, along with any proposed notice to the class.[2] If the court grants preliminary approval, the second step of the process begins: notice is given to the class members of a final fairness hearing, at which time class members and the settling parties may be heard with respect to final court approval.[3] When notice is not required—a circumstance explained in greater detail below—then it follows that the court can approve the settlement without the preliminary step. *See infra* this motion, section III.F.2

The decision whether to approve a proposed class action is "committed to the sound discretion of the district court."[4] In exercising this discretion, district courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."[5] This strong public policy is based on a recognition that complex class-action litigation like the instant case "can occupy a court's dockets for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *See U.S. Oil*, 967 F.2d at 493.

---

[1] *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citing Manual for Complex Litigation ("MCL")).

[2] *Id.*

[3] *Id.* at *7.

[4] *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

[5] *See Wm. Wrigley*, 2010 WL 2401149 at *2 n.1; *see also U.S. Oil*, 967 F.2d at 493 ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

Because of the two distinct elements contained in this motion—class certification and approval of a class-action settlement—two legal standards apply. Rule 23 of the Federal Rules of Civil Procedure applies to the class-certification motion:

> A class may be certified "'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting *Woodward v. NOR-AM Chem.* Co., 1996 WL 1063670 *14 (S.D. Ala. 1996)); *see also Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006). Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met.[6]

While the Court's class-certification analysis "may 'entail some overlap with the merits of the plaintiffs underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[7] Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[8] "In determining whether the Rule 23 requirements have been met for class certification purposes, . . . a district court does not address the merits of the claims."[9]

---

[6] *Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, *1 (S.D. Fla. Oct. 7, 2013).

[7] *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citations omitted).

[8] *Id.*

[9] *Drayton v. W. Auto Supply Co.*, 2002 WL 32508918, at *6 (11th Cir. Mar. 11, 2002) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

Parties seeking class-action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), "commonly referred to as numerosity, commonality, typicality and adequacy of representation."[10] To that end, Rule 23(a) is satisfied where:

- the class is so numerous that joinder of all members is impracticable;
- there are questions of law or fact common to the class;
- the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
- the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 678.

In addition, Plaintiffs must satisfy one of the three prongs of Rule 23(b).[11] Here, Plaintiffs seek certification under Rule 23(b)(2), whose elements are met when Plaintiffs show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."[12]

The purpose behind class actions is to eliminate the potential for repetitious litigation and provide small claimants a means of obtaining redress for claims too small to justify individual litigation.[13] Thus, "[d]oubts regarding the propriety of class certification should be resolved in favor of certification,"[14] as it is well established that class-action lawsuits were designed to be

---

[10] *Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 677 (S.D. Fla. 2009) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).

[11] *Id.* at 678.

[12] Fed. R. Civ. P. 23(b)(2).

[13] *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 249 (3d Cir. 1975) ("Any resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.").

[14] *Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998).

effective tools for deterring wrongdoing.[15] This case, involving a defendant's common practice and relatively small individual damages allegedly inflicted on large numbers of people, presents a classic example of appropriate circumstances for class certification.

### B. Plaintiffs' Standing

Though not found in the actual text of Rule 23, "[i]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."[16] "To have standing, a plaintiff must show: (1) an 'injury-in-fact,' (2) a causal connection between the alleged injury and defendant's challenged action, and (3) that 'the injury will be redressed by a favorable decision.'"[17] In denying Defendants' Motion to Dismiss, the Court concluded that the Complaint contains sufficient factual allegations regarding the requisite element of standing. Dkt. No. 84 at 8–14.

### C. Plaintiffs Satisfy Rule 23(a)(1)–(4)

#### 1. Numerosity

Rule 23(a)(1) requires there be a sufficient number of class members to make joinder impracticable. "Under Rule 23(a)(1), the numerosity requirement is met if joinder of all members is impracticable. This requirement does not demand that joinder would be impossible, but rather

---

[15] *See In re Checking Account Overdraft Litig.*, 830 F. Supp.2d 1330, 1355 n.24 (S.D. Fla. 2011) ("As one of Plaintiffs' experts opined, 'in small-stakes cases, the most important function of the class action device is not compensation of class members but deterrence of wrongdoing ... [and] if defendants did not pay someone—even third parties like cy pres charities—for such harms, then defendants would have every incentive to cause such harms in the future...'") (citation omitted; alterations in original).

[16] *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).

[17] *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 666 (S.D. Fla. 2010) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

that joinder would be extremely difficult or inconvenient."[18] While there is no hard and fast numeric requirement, "generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors."[19] The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied."[20] "The Court may also consider factors such as the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of individual class members to bring individual lawsuits."[21] The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1308 (S.D. Fla. 2015).

Here, Defendants' volume of sales and the number of purchases by the proposed Class is easily large enough to meet the numerosity standard. In their responses to interrogatories, Defendants stated that they had sold tires to more than a thousand customers each year during the relevant period. Doc. No. 49-1 (responses to interrogatories 1, 2). Accordingly, Plaintiffs submit that numerosity is present here.

### 2. Commonality

Rule 23(a)(2) demands that there be "questions of law or fact common to the class."[22] This does not require that *all* the questions of law and fact raised by the dispute be common, or

---

[18] *Israel v. Avis Rent-A-Car Sys., Inc.*, 185 F.R.D. 372, 377 (S.D. Fla. 1999).

[19] *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883 (1986).

[20] *Rosen*, 270 F.R.D. at 680 (internal quotation marks and citation omitted).

[21] *Muzuco v. Re$ubmitlt*, 2013 WL 4566305, *6 (S.D. Fla. Aug. 28, 2013) (internal quotation marks omitted).

[22] Fed. R. Civ. P. 23(a)(2).

that the common questions of law or fact predominate over individual issues.[23] It requires only that "there be at least one issue whose resolution will affect all of a significant number of the putative class members."[24] The commonality requirement is thus a "low hurdle."[25] For purposes of Rule 23(a)(2), "[e]ven a single [common] question will do."[26]

The test is met here. In *Sharf v. Financial Asset Resolution, LLC*, the court found that "Plaintiff's contention that all class members received the same form collection letter is sufficient to establish commonality."[27] Here, similarly, there is a common issue because Plaintiffs and class members were subjected to the same tire-registration practices of the two Defendants, with no registration cards handed to customers and no tire-registration information transmitted by Defendants (either in paper or electronic form) to the manufacturers within 30 days as required by 49 C.F.R. § 574.8(a)(1).

### 3. Typicality

Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the class. "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."[28]

---

[23] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotation marks and citations omitted).

[24] *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

[25] *Id.* at 1356.

[26] *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 359 (2011).

[27] 295 F.R.D. 664, 669–70 (S.D. Fla. 2014) (citing *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 WL 5177865, at *2 (M.D. Fla. Sept. 12, 2013)).

[28] *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citations, internal quotation marks and brackets omitted).

Typicality is present when the claims arise from the same "event or pattern and are based on the same legal theory."[29] The typicality test "is not demanding."[30]

Courts' analysis of typicality and commonality are often merged; however, the Eleventh Circuit has "distinguished the two concepts by noting that, traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class."[31]

Again, Plaintiffs satisfy this standard. Their claims are typical of the class: They are members of their proposed Class and have suffered the same alleged injury—failure of Defendants to follow the applicable tire-registration rule so that they can be reached by tire manufacturers.

### 4. Adequacy

The final requirement of Fed. R. Civ. P. 23(a)(4) is that the representative parties will fairly and adequately protect the interests of the class. "Rule 23(a)(4) requires that the representative party in a class action 'must adequately protect the interests of those he purports to represent.'"[32] There are two distinct questions: (1) Will the class representative(s) adequately prosecute the action, and (2) is there any substantial conflict of interest between the representatives and the class.[33] Here, the answer to both questions is "yes." Plaintiffs' claims are identical to the other

---

[29] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

[30] *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

[31] *Vega*, 564 F.3d at 1275 (citation, internal quotation marks and brackets omitted). *See also Sharf*, 295 F.R.D. at 670 ("The Court agrees with Plaintiff that the sending of form debt collection letters demonstrates typicality.").

[32] *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citing *Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir. 1974)).

[33] *See Valley Drug*, 350 F.3d at 1189.

members of the class and they seek no preferential treatment. Their interests are not antagonistic to those of the class.[34]

As to counsel's adequacy, "[a]bsent specific proof to the contrary, the adequacy of class counsel is presumed."[35] Some authorities even state that the burden is on the defendant to prove that plaintiff's counsel is not adequate.[36] Here, Plaintiffs' counsel has submitted a declaration (filed contemporaneously with this memorandum) that demonstrates adequacy.

### D. Plaintiffs Satisfy Rule 23(b)(2)

Besides satisfying all of the elements of Fed. R. Civ. P. 23(a), Plaintiffs must satisfy one of the three prongs of Fed. R. Civ. P. 23(b). In this case, Plaintiffs meet the requirements of Fed. R. Civ. P. 23(b)(2).

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[37]

---

[34] Although Defendants earlier objected to Emilie Palmer's typicality as a class representative because she is the mother of Plaintiff's counsel Christopher C. Kessler, this does not foil typicality. First, Palmer demonstrated no conflict with the class interests in litigating this case. Second, even if Palmer were considered to have a conflict making her atypical, Exum is sufficient as the remaining class representative. "To meet the typicality requirement, there must be at least one class representative who has been injured by and has a claim against each and every defendant." 5 MOORE'S § 23.24(6)(a) & n.17 (citing *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.*, 709 F.2d 1200, 1204–05 (6th Cir. 1983); *Freeman v. Delta Airlines, Inc.*, No. 215CV160WOBCJS, 2019 WL 2495471, at *17 (E.D. Ky. June 14, 2019).

[35] *Diakos*, 137 F. Supp. 3d at 1309 (quoting *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263 (S.D. Tex. 2007)).

[36] *E.g.*, *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 487 (W.D. Mich. 1994). *Cf. Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 410 (N.D. Miss. 2000) ("While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary.") (internal citations omitted).

[37] Fed. R. Civ. P. 23(b)(2); *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) ("[T]he claims contemplated in a [Rule 23](b)(2) action are *class* claims,

Under the circumstances of the proposed settlement (discussed below), certification under Rule 23(b)(2) makes sense in this case. Here, Plaintiffs have achieved a significant change in Defendants' practices that will further protect tens of thousands of drivers and their passengers, and perhaps even more than that, by enhancing the process of making tire purchasers reachable by tire manufacturers in the event their tires are recalled. This is classic 23(b)(2) relief.

### E.     The Court Should Appoint the Undersigned Law Firm as Class Counsel

Under Fed. R. Civ. P. 23(g), "a court that certifies a class must appoint class counsel." In this case, Plaintiffs request that the Court appoint their attorneys as class counsel: Cuneo Gilbert & Laduca, LLP; Lockridge Grindal Nauen PLLP, McDougall LawFirm, LLC, and the Chaikin Law Firm PLLC. In appointing class counsel, the Court must consider the following factors:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)  counsel's knowledge of the applicable law; and

(iv)  the resources that counsel will commit to representing the class.[38]

Here, proposed Class Counsel thoroughly investigated the claims and background concerning Plaintiffs' tire purchases before filing their Complaint, filed a substantive opposition to Defendants' motion to dismiss and overcame the motion, and engaged in discovery as quickly as possible. As demonstrated in Exs. B, C, D, and E to the Declaration of Robert K. Shelquist, proposed Class Counsel have served and successfully litigated as lead counsel or co-counsel in numerous similar consumer class actions, and demonstrated their understanding of Florida and

---

claims resting on the same grounds and applying more or less equally to all members of the class.") (emphasis in original).

[38] Fed. R. Civ. P. 23(g)(1)(A).

federal law in their motion-to-dismiss briefing. Proposed Class Counsel have devoted a significant amount of time to this case and achieved an excellent outcome for Plaintiffs, Class members, and the public. Plaintiffs' attorneys have demonstrated that they are capable of prosecuting this action. Plaintiffs' attorneys therefore warrant appointment as class counsel.

### F. The Court Should Approve the Settlement

#### 1. The Proposed Settlement

The proposed settlement of this case has three distinct components. First, Defendants have agreed to change their tire-registration practices as of the date agreed upon in the Parties' settlement agreement. As detailed in the Settlement Agreement, the Rule 23(b)(2) Relief contemplates that Defendants will either hand a paper tire-registration card to tire purchasers, or else if Defendants contemplate directly transmitting purchasers' information to tire manufacturers on paper or by electronic means, then include a statement on purchasers' invoice notifying them of Defendants' alternate transmission method. Second, Defendants will pay an incentive award of $7,500 to each of the two class representatives for the time and effort they invested in this action (e.g. responding to discovery, being deposed, and attending both in-person mediation sessions), and for the benefits their efforts have provided to the Settlement Class. Third, Defendants will pay fees and costs to Plaintiffs' counsel totaling $645,000, and costs for the mediation held February 7, 2020 in Miami, Florida with mediator Rodney Max.

#### 2. Notice

When the proposed class settlement is under Rule 23(b)(2) notice to the class is not required when, as in this case "there is cohesiveness or unity in the class and the representation is

effective…"[39] Notably, in its comments on the 2003 amendments to Rule 23, the advisory committee observed that the "cost of providing notice [in a (b)(2) class] could easily cripple actions that do not seek damages."[40] Thus, the 2003 committee concluded that the court "may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice."[41] Courts have decided not to require notice to a class in Rule 23(b)(1) or 23(b)(2) suits for various reasons, including when its members were too numerous. *Id.*[42] Notice has been held not necessary in (b)(1) or (b)(2) class actions where class members could be or were notified by other means.[43]

Here, there is cohesiveness and unity in the class in that all were purchasers of tires from Defendants and were affected essentially the same way by Defendants' tire-registration practices. Additionally, the Class Members' representation by Plaintiffs and Plaintiffs' counsel has been effective. Therefore, no formal notice is necessary. Notice also will be essentially achieved by Defendants' changed practices to notify tire purchasers on their invoices that Defendants have directly registered the tires with manufacturers. Finally, pursuant to 28 U.S.C. § 1715, Defendants

---

[39] 7B *Fed. Prac. & Proc. Civ.* § 1793 (3d ed.), Orders Relating to the Conduct of Class Actions—Protecting the Members of the Class: Notice (citing advisory committee note).

[40] Advisory Committee Notes on Rules, 2003 amendment.

[41] *Id.*

[42] *See Childs v. U.S. Bd. of Parole*, 511 F.2d 1270, 1276 (D.C. Cir. 1974) (affirming decision that notice provision did not apply as to (b)(2) class) (citing *Eisen*, 417 U.S. at 177 n. 14); *Leist v. Shawano Cty.*, 91 F.R.D. 64, 69 (E.D. Wis. 1981) (notice to certain members of class not required "because they are just too numerous"); *Mungin v. Fla. E. Coast Ry. Co.*, 318 F. Supp. 720, 732 (M.D. Fla. 1970) (perceiving "no requirement nor authority" justifying notice to class), *aff'd*, 441 F.2d 728 (5th Cir. 1971);.

[43] *See* 6A Fed. Proc. L. Ed. § 12:308, *Due-process requirements*.

will provide the requisite CAFA Notice of this Class Action Settlement to the applicable federal and state officials.[44]

### 3. The Settlement Should be Approved

In reviewing the Stipulation and Settlement Agreement for final approval, this Court must determine whether it is "within the range of fair, reasonable and adequate."[45] A district court has broad discretion with respect to the approval of class-action settlements, and the court's decision is reviewed for an abuse of discretion.[46] The Court, however, "should always review the proposed settlement in light of the strong judicial policy that favors settlements."[47] Where, as here, the proposed settlement is the result of serious, arms'-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to Plaintiffs or other segments of the class, courts generally grant approval.[48]

This case satisfies all of these standards. The value of the injunctive relief alone, involving substantial changes to Defendants' tire-registration practices, which will in turn lessen alleged dangers to Plaintiffs, the Class, and the public, warrants approval.

---

[44] The Parties respectfully suggest that the Court defer entering a final approval order (or scheduling a final approval hearing) until 100 days after the Parties' March 12, 2020 deadline to file the settlement documents. Specifically, Defendants have 10 days to effectuate the CAFA Notice once Plaintiffs file their motion for approval. *See* 28 U.S.C. § 1715(b). Then, under 28 U.S.C. § 1715(d), a final approval should not be issued until 90 days after the CAFA Notice is issued.

[45] *Diakos*, 137 F. Supp. 3d at 1311.

[46] *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

[47] *Id.* (internal citation omitted).

[48] *See, e.g.*, *Williams Foods, Inc. v. Eastman Chem. Co.*, 2001 WL 1298887, *3–5 (D. Kan. Aug. 8, 2001).

## IV. CONCLUSION

Plaintiffs have satisfied all the elements of Rule 23. Thus, Plaintiffs respectfully request that the Court certify the proposed class, grant the motion for approval, or, in the alternative, set a date for a Fairness Hearing.

Dated: March 12, 2020	Respectfully submitted,

*/s/* Jordan L. Chaikin
Jordan L. Chaikin
Florida Bar Number: 0878421
CHAIKIN LAW FIRM PLLC
2338 Immokalee Road, Suite 170
Naples, FL 34110
Tel: (239) 470.8338
Fax: (239) 204.2425
jordan@chaikinlawfirm.com

CUNEO GILBERT & LADUCA, LLP
Charles J. LaDuca
Brendan S. Thompson
Yifei ("Evelyn") Li
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202)789-3960
charles@cuneolaw.com
brendant@cuneolaw.com
evelyn@cuneolaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist, #021310X (MN)
Eric N. Linsk, #0388827 (MN)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com
rnlinsk@locklaw.com

                              MCDOUGALL LAW FIRM, LLC
                              J. Olin McDougall, II
                              Post Office Box 1336
                              115 Lady's Island Commons
                              Beaufort, SC  29901-1336
                              Tel:  (843) 379-7000
                              Fax:  (843) 379-7007
                              lin@mlf.law

                              *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the clerk of court this 12th day of March 2020, by using the CM/ECF system, which will send notice of electronic filing to all parties of record.

By: /s/ *Jordan L. Chaikin*
Jordan L. Chaikin
Florida Bar Number: 0878421
CHAIKIN LAW FIRM PLLC
2338 Immokalee Road, Suite 170
Naples, FL  34110
Tel:  (239) 470.8338
Fax:  (239) 204.2425
jordan@chaikinlawfirm.com

**Counsel for Plaintiffs**