# Exhibit B to Fee Motion (Max Declaration)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Bruce Exum, Jr. and Emilie Palmer, individually and on behalf of all others similarly situated,

                       Plaintiffs,

v.

National Tire and Battery and TBC Corporation,

                       Defendants.

Case No. 19-CV-80121-WM

## DECLARATION OF RODNEY A. MAX

I, Rodney A. Max, pursuant to 28 U.S.C. §1746, declare as follows:

1. My name is Rodney A. Max. I am over the age of 18 and I am competent to give testimony. The statements contained in this declaration are based upon my own personal knowledge and are true and correct.

### I. BACKGROUND AND EXPERIENCE

2. I graduated in 1975 *cum laude* from the Cumberland School of Law. Upon graduation, I became licensed to practice law in the state of Alabama (1975) and the state of Florida (1976). I am currently a member of Upchurch, Watson, White & Max Mediation Group, Inc.

3. Since 1992, my practice has focused exclusively on alternative dispute resolution, with an emphasis on mediation.

4. I have national mediation experience and have mediated in 40 states and the District of Columbia and Puerto Rico. I have been selected to conduct mediations by leading plaintiffs' attorneys, defense counsel and in-house counsel for national and international manufacturers,

distributors, transporters, insurers and service provider companies and have been appointed by federal and state judges from coast to coast.

5. I have mediated cases involving consumer fraud, wrongful death and personal injury, breach of contract, bad faith, securities (NASD), antitrust, patent and trademark, Lanham Act, construction, property, environmental, fraud and suppression, banking, estate and trusts, stockholder disputes, partnership disputes and derivative claims. I have mediated numerous national and statewide class actions as well as numerous mass tort, contract and statutory warranty cases. I have convened parties for mediation before suits have been filed, as well as mediated cases on appeal.

6. Over the course of my career, I have conducted well over 5,000 mediations involving over 10,000 cases.

7. I am a past President of the American College of Civil Trial Mediators. Additionally, I am a member of the Alabama Center of Dispute Resolution, the Florida Academy of Professional Mediators and the Dispute Resolution Section of the American Bar Association.

8. I have played a major role in establishing rules, standards and ethics for mediators. I initiated the Mediation Process and Practice Program at Cumberland School of Law as an adjunct professor from 1997-2002. Additionally, I have lectured at CLE seminars for attorneys or those who have sought training on mediation at the following courses:

- American College of Attorney Mediators - Multi Party Mediation, The Business of Mediation;
- American Bar Association Dispute Resolution Section – Multi Party Mediation, Ethics of Mediation, The Business of Mediation;
- New Jersey Bar Association - The Practice of Mediation;
- Alabama Bar Association - Multi Party Mediation; Mediation Dissected;
- Florida Academy of Civil Trial Mediators- Opening Statements;
- University of Florida - Designing The Mediation; and
- The International Academy of Mediators- Ethics of Mediation.

2

9. I have also published a number of articles. The following abridged list is a sampling: *Mediation Comes of Age,* published in *The American Journal of Trial Advocacy,* Volume 23, Issue 3 (Spring 2000); *Multiparty Mediation,* published in *The American Journal of Trial Advocacy,* Volume 23, Issue 2 (Fall 1999); *Designing The Mediation,* presented at professional seminars; *The Ethical Civil Trial Mediator, The Letter, The Spirit and The Practice,* presented at professional seminars; and *Mediation: The Humanization of the Justice System,* presented at professional seminars.

## II.   FAMILIARITY WITH THE PRESENT LITIGATION

10. I was retained by counsel for the parties in this matter in 2019 for the specific purpose of mediating the case and to assist in reaching a global resolution, if possible. In my capacity as mediator, I consider myself to be a neutral, representing neither plaintiff nor defendant.

11. In preparing for this mediation, I asked that the parties provide me with a variety of information about the lawsuit. Additionally, I had pre-mediation discussions with all parties to learn more about the facts giving rise to the dispute, the procedural background of the lawsuit, and the positions of the parties. The purpose of these initial conferences was to organize the parties' efforts to fully resolve this matter. Thereafter, I scheduled the first mediation session for November 8, 2019. I reviewed selected court filings from the case before the first session, and through this review and my conversations with counsel, I became intimately familiar with the nature of the claims and defenses asserted in this case.

## III.   THE MEDIATED SETTLEMENT NEGOTIATIONS

12. The proposed Settlement is the product of lengthy and particularly hard-fought negotiations which took place on an ongoing basis between November 2019 February 2020. The caliber of the representation of both sides was extraordinary in my experience. The mediation

consisted of multiple mediation sessions among myself and counsel for the plaintiffs and defendants.

13. In addition, I facilitated negotiations between the parties before, during, and in the time that passed between the three sessions, and defendants also provided plaintiff's counsel with responses to targeted written questions and with documents and data critical to plaintiff's claims and the settlement negotiations.

14. Drafts of settlement documents were sent to me for review to confirm that they memorialized the negotiations between the parties and to facilitate resolution of issues arising out of the memorialization of the settlement.

15. A review of my records shows that, in total, I personally spent in excess of 20 hours coordinating, preparing, pre-mediating and mediating the resolution of this case.

16. These lengthy negotiations were exhausting, and at times frustrating, for the parties and their counsel. The live sessions involved discussions with all counsel and representatives of those parties who were present, extended sessions with each side, bi-lateral discussions with counsel, and *ex parte* discussions with the parties concerning their various positions. The discussions allowed the parties to express their respective views of the strengths and weaknesses of the respective positions in the case. I never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial.

17. The relief for class members was the focus of the vast majority of the mediation sessions. The provisions of the settlement providing for payment of attorneys' fees and incentive payments to the Named Plaintiffs were negotiated only after the parties had agreed on the substantive relief to class members. There were no discussions of attorneys' fees, costs, or

incentive awards until the substantive terms of the settlement were negotiated and resolved.

18. Negotiations on some of the finer points of the Settlement continued after the parties reached agreement on a settlement in principle at the conclusion of the third live mediation session. My involvement in the parties' negotiations concluded in February 2020, after the parties had executed their Settlement Agreement and resolved certain minutia regarding its terms.

19. The settlement negotiations were intense, lengthy, arm's length, and non-collusive; and were conducted by skilled, well-informed lawyers with sufficient discovery and investigation prior to completion of the mediation. Said negotiations included reasonable and adequate consideration for class members, and upon completion class members. Upon completion of all other terms and class member relief, further and reasonable consideration was given to class representative(s) and attorneys' fees and costs.

20. Regarding attorneys' fees I am familiar with the factors considered by courts in the 11th Circuit in evaluating fee petitions, and those factors were taken into consideration in negotiating an agreeable and reasonable attorneys' fee. I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 20th day of May 2020.

_____
Rodney A. Max