UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Bruce Exum, Jr. and Emilie Palmer, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>National Tire and Battery and TBC Corporation,<br><br>Defendants.<br><br>---<br><br>Melissa Holyoak,<br><br>Objector. | No. 9:19-cv-80121-WM<br><br>Hon. William Matthewman<br><br>FILED BY __PCS__ D.C.<br><br>JUN 19 2020<br><br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S.D. OF FLA. – W.P.B. |

**DECLARATION OF MELISSA HOLYOAK IN SUPPORT OF OBJECTION TO PROPOSED SETTLEMENT**

I, Melissa Holyoak, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

### Class Membership

2. My full name is Melissa Ann Holyoak. I am a United States citizen, a resident of Utah.

3. I am President and General Counsel of the non-profit Hamilton Lincoln Law Institute ("HLLI"), and a Senior Attorney with its Center for Class Action Fairness ("CCAF"). I am representing myself *in propria persona* in objecting to the proposed settlement and fee request. My business address is 1629 K Street, NW, Suite 300, Washington DC, 20006. My phone number is (573) 823-5377.

4. On or around June 8, 2019, I purchased new tires from the Big O Tires store in Salt Lake City, Utah for personal use. I do not recall whether I was provided a tire registration card.

5. On information and belief, defendants in this case did not send a registration card to the manufacturer for me, or electronically transmit my information to the manufacturer within 30 days of purchase.

6. On information and belief, Big O Tires is a wholly-owned subsidiary of Defendant TBC Corporation.

7. I am not a current or former officer, director, or employee of any Defendant. Nor am I counsel for plaintiffs or defendants or the judicial officer to whom this lawsuit is assigned.

8. I am therefore a member of the putative settlement class as defined in the Settlement Agreement with standing to object. *See* Fed. R. Civ. P. 23(e)(5).

9. The alterations to the language on the defendants' receipts/bills of sale and to defendants' practices of updating its Tire Registration Database as set forth in Sections 3.1 and 3.2 of the Settlement agreement provide no benefit to me. I have never purchased tires from defendants themselves and have no intention nor plans to purchase tire related goods or services from the

defendants in the future. I do not even have any present intention to purchase tires from Big O Tires in the future. Even if I did purchase tires from defendants in the future, on information and belief, the settlement does not meaningfully alter the registration procedure that the defendants have utilized since 2014.

10. The specific grounds of my objection are identified in my contemporaneously-filed Objection.

11. My objection applies to the entire class.

12. My true and correct signature can be found below and in my Objection.

13. It is my understanding that the Court will use the Zoom video conferencing application to hold the fairness hearing currently scheduled for July 1, 2020. If so, I intend to appear *in propria persona* and discuss the matters raised in my objection and the settling parties' papers. I do not intend to call any witnesses but reserve the right to make use of all documents entered on to the docket by any settling party or objector. I also the right to cross-examine any witnesses who testify at the fairness hearing.

**The Center for Class Action Fairness**

14. For more than seven years, I have been with CCAF, a 501(c)(3) non-profit public-interest law firm based out of Washington D.C. that was founded in 2009. In 2015, CCAF merged into the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit. In January 2019, CCAF became part of the Hamilton Lincoln Law Institute ("HLLI"), a new non-profit public-interest law firm that I co-founded in 2018.

15. CCAF litigates on behalf of class members in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Ma v. Harmless Harvest, Inc.*, No. 16-cv-07102 (JMA) (SIL), 2018 WL 1702740, at *5 (E.D.N.Y. Mar. 31, 2018) (crediting CCAF's "lengthy and substantive objections"); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (observing that CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of

class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive."); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement."); Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018) (listing CCAF as an organization "more likely to challenge the most egregious settlements [that has] develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees."); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling CCAF's founder "[t]he leading critic of abusive class-action settlements").

16. CCAF has been successful, winning reversal or remand in over a dozen federal appeals decided to date. *E.g., Frank v. Gaos*, 139 S. Ct. 1041 (2019); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019); *In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018); *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740 (7th Cir. 2018); *In re In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Several of these involved illusory injunctive relief settlements resembling the agreement here. *E.g., Pampers; Subway; Walgreen.*

17. CCAF has won hundreds of millions of dollars for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. *See* Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2016) (more than $100 million at time); *see also, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted).

### Preempting *Ad Hominem* Attacks

18. In my experience, class counsel often responds to CCAF objections by making a variety of spurious *ad hominem* attacks. The vast majority of district court judges do not fall for such transparent and abusive tactics. My objection is not less valid because a court has criticized CCAF in the past. In an effort to anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common ones below. If the Court is inclined to disregard these irrelevant *ad hominem* attacks, it can avoid these collateral disputes entirely.

19. Class counsel often try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the court opinions class counsel rely upon to tar CCAF are inapposite. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n. 150 (2003) (public interest groups are not professional objectors); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. For-profit "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as CCAF has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses

---

Holyoak Declaration
Case No. 9:19-cv-80121-WM 4

money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements and fee requests it sees.

20. While one district court referred to CCAF's objector as a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). Similarly, the Seventh Circuit in *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017) referred to CCAF's objector non-pejoratively as a "professional objector" in an opinion agreeing with CCAF and reversing a settlement approval and class certification.

21. Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See, e.g., Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

22. Firms whose fees we have objected to have previously cited to *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 Civ 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), in efforts to tar CCAF. While the *Wyeth* court did criticize our client's objection (after mischaracterizing the nature of that objection), it ultimately agreed with our client that class counsel's fee request was too high, and reduced it by several million dollars to the benefit of shareholder class members.

23. Class counsel frequently cite a 2010 case, *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 804 (N.D. Ohio 2010), where the district court criticized a policy-based argument by CCAF as supposedly "short on law"; however, CCAF ultimately was successful in that same argument. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (agreeing that reversionary clauses are a problematic sign of self-dealing); *see also Pearson v. NBTY, Inc.*, 772 F.3d

778 (7th Cir. 2014) (same). Moreover, the court in *Lonardo* stated its belief that "Mr. Frank's goals are policy-oriented as opposed to economic and self-serving" and even awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Lonardo*, 706 F. Supp. 2d at 813-17.

24. In another case, class counsel cited a January 2020 opinion from the *Equifax Data Breach Litigation* MDL in the Northern District of Georgia accusing my colleague Ted Frank in a conclusory sentence of making "false and misleading" statements about a settlement in rejecting his objection. We had no notice that the court was considering making that finding, and no opportunity to respond to the accusations. We do not know what the district court thinks Mr. Frank said in either the papers I filed or Mr. Frank's public statements that is false or misleading, because the district court identifies no such false or misleading statements. The court appears to have improperly conflated Mr. Frank with attorneys who use the objection process to engage in extortion. We plan to appeal the settlement approval in that case, and CCAF has won similar appeals on the same Rule 23(a)(4) objection we made in *Equifax*, including in the Ninth Circuit. *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019). Everything we filed and that Mr. Frank has said publicly about the *Equifax* case and about this case is true and correct, and we expect to be vindicated on appeal in *Equifax*.

25. CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the majority of requests for representation, and invariably turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

26. On October 1, 2015, after consultation with its board of directors and its donors,

CCAF merged with the much larger Competitive Enterprise Institute ("CEI"). Prior to its merger with CEI, CCAF never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than CCAF, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. CCAF attorneys made several filings in several cases opposed by CEI donors.

27. CEI was willing to merge with CCAF because it supported CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. But it is a large organization affiliated with dozens of scholars who take a variety of controversial positions. Neither I nor CCAF's clients agree with all of those positions, and they should not be ascribed to me, my clients, or this objection.

28. CCAF has since left CEI, and is now part of the Hamilton Lincoln Law Institute, which receives no corporate funding. We did not consult any of our donors about our objection in this case.

29. Some class counsels have accused us of improper motivation because CCAF has on occasion sought attorneys' fees. While CCAF is funded entirely through charitable donations and court-awarded attorneys' fees, the possibility of a fee award never factors into CCAF's decision to accept a representation or object to an unfair class-action settlement or fee request.

30. CCAF's history in requesting attorneys' fees reflects this approach. Despite having made dozens of successful objections and having won over $200 million on behalf of class members, CCAF has not requested attorneys' fees in the majority of its cases or even in the majority of its appellate victories. CCAF regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, CCAF withdrew its fee request and instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *11 (W.D. Wash. June 15, 2012). In other cases, CCAF has asked the

court for a fraction of the fees to which it would be legally entitled based on the benefit CCAF achieved for the class and asked for any fee award over that fractional amount to be returned to the class settlement fund. In *Petrobras*, despite winning tens of millions of dollars for the class, we requested less than $200,000 in fees. *See In re Petrobras Secs. Litig.*, 786 Fed. Appx. 274 (2d Cir. 2019).

31. I bring this objection in good faith to prevent approval of an unfair settlement and ratification of an improper class certification. HLLI pays me on a salary basis that does not vary with the result in any case. I do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions.

32. To demonstrate such good faith, I would gladly stipulate to an injunction prohibiting myself from accepting compensation in exchange for the settlement of my objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as best means of eliminating bad-faith objectors without discouraging good-faith ones).

33. If, contrary to practice, I agree to withdraw my appeal for a payment by class counsel or the defendant, paid to me or any person or entity related to me in any way without court approval, I hereby irrevocably waive any and all defenses to a motion seeking disgorgement to the class of any and all funds paid in exchange for dismissing my appeal.

34. All class action objections should be judged on their merits without reference to the objector's litigation history. But unfortunately, the court's scheduling order here imposes several unreasonable burdens on objectors, requiring them to provide "the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;" "the identity of all counsel who represent the objector, including any former or current counsel, who may be entitled to compensation for any reason related to the objection to the Settlement or fee application, if any;" "the number of times in which objector's counsel and/or counsel's law firm have objected to a class action settlement within five years preceding the date that the objector files the objection, the

caption of each case in which the counsel or firm has made such objection and a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each listed case;" and "any and all agreements that relate to the objection or the process of objecting—whether written or verbal—between the objector or objector's counsel and any other person or entity." Order on Joint Motion Continuing Stay of Proceedings and Setting Deadlines Regarding Attorneys' Fees (Dkt. 97 at 2).

35. Nonetheless, while preserving my objection to this improper burden on the Rule 23(e) right of objection, I provide the following responses.

36. In the past five years I have objected to 2 class action settlements. In lieu of providing copies of the courts' rulings on those objections, I will provide the citations to such opinions ruling on such objections below.

37. I objected to the settlement in *In re Google Referrer Header Privacy Litigation*, No. 10-cv-04809 (N.D. Cal.). My objection was overruled by the district court. *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122 (N.D. Cal. 2015). I appealed and my objection was again overruled. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017). I petitioned the Supreme Court for certiorari; my petition was granted and the settlement approval was vacated. *Frank v. Gaos*, 139 S. Ct. 1041 (2019).

38. I objected to the settlement in *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio.) The district court partially sustained my objection, referring to my objection as "lucid and filed in good faith." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 997 (N.D. Ohio. 2016). I did not appeal.

39. I have represented class members *pro bono* through CCAF in objecting to dozens of other settlements. This information is a matter of public record and individually listing these cases would be an undue burden. As the public record will disclose, the majority of these objections were ultimately successful, in part or in whole. Certain of these objections remain pending, awaiting a decision on appeal. In no case did I realize or attempt to realize a *quid pro quo* benefit. Because the

scheduling order does not require objectors to provide a listing of cases in which they have represented class members objecting to other settlements, I do not provide it here.

40. My colleagues at CCAF, Adam Schulman, Theodore Frank, Frank Bednarz, and Anna St. John do not currently represent me as counsel but are assisting me in bringing my *pro se* objection. If I need to appeal from an order overruling my objection, it is possible that one or more of my colleague will file a notice of appearance in the Eleventh Circuit and begin to represent me on appeal. For now I have no counsel and no one would be entitled to compensation for any reason related to the my objection to the settlement and class certification.

41. There are no written agreements between myself and any other person or entity, relating to my objection or the process of objecting in this case. I do not interpret my employment agreement with HLLI, which predates the filing of this case, to fall within the scope of this question. I have verbally agreed with my HLLI colleagues to file a good faith objection on my own behalf in hopes of overturning an unfair settlement proposal and certification. They agreed to assist me in the process.

42. CCAF's docket is determined by attorneys within the Center. HLLI donors do not dictate in any way, nor have veto power over CCAF cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 18, 2020, in Salt Lake City, UT.

_____
Melissa Holyoak

## Certificate of Service

The undersigned certifies she caused the foregoing Objection and associated Declaration to be sent via Federal Express overnight delivery to the Clerk of the Court at the following address:

Clerk of Court
Paul G. Rogers Federal Building and U.S. Courthouse
701 Clematis Street
Room 202
West Palm Beach, Florida 33401

Additionally, consistent with L.R. 5.1(e), she caused a copy of the foregoing Objection and associated Declaration to be sent via email upon the following counsel of record for the parties:

| | |
|---|---|
| **Jordan Lucas Chaikin**<br>Chaikin Law Firm PLLC<br>2338 Immokalee Road, Suite 170<br>Naples, FL 34110<br>Jordan@chaikinlawfirm.com | **Daniel M. Blouin**<br>Seyfarth Shaw, LLP<br>233 S. Wacker Drive, Suite 8000<br>Chicago, IL 60606<br>dblouin@seyfarth.com |
| **Yifei Li**<br>**Brendan Thompson**<br>Cuneo Gilbert & LaDuca LLP<br>4725 Wisconsin Ave., NW Suite 200<br>Washington, DC 20016<br>evelyn@cuneolaw.com<br>brendant@cuneolaw.com | **Alexandre S. Drummond**<br>Seyfarth Shaw LLP<br>1075 Peachtree Street, NE, Suite 2500<br>Atlanta, GA 30309<br>adrummond@seyfarth.com |
| **Eric N. Linsk**<br>**Robert K. Shelquist**<br>Lockridge Grindal Nauen PLLP<br>100 Washington Avenue S., Suite 2200<br>Minneapolis, MN 55401<br>rnlinsk@locklaw.com<br>rkshelquist@locklaw.com | **Christopher C. Kessler**<br>The Kessler Law Firm, PLLC<br>3207 S. Memorial Drive<br>PO Box 8064<br>Greenville, NC 27835<br>cck@kesslerlawfirmpllc.com |
| **J. Olin McDougall, II**<br>McDougall Law Firm LLC<br>PO Box 1336<br>Beaufort, SC 29901<br>lin@mlf.law | |

Dated: June 18, 2020.

_____
Melissa A. Holyoak



ORIGIN ID:GYYA (801) 706-2690
MICHAEL BEDNARZ

1145 E. HYDE PARK BLVD.
APT. 3A
CHICAGO, IL 60615
UNITED STATES US

SHIP DATE: 18JUN20
ACTWGT: 0.48 LB
CAD: 109709361/INET4220

BILL SENDER

TO CLERK OF COURT  *For filing*

PAUL G. ROGERS FEDERAL BUILDING
701 CLEMATIS STREET ROOM 202
WEST PALM BEACH FL 33401
(561) 803-3400    REF:
INV:              DEPT:
PO:



FRI - 19 JUN 3:00P
STANDARD OVERNIGHT

TRK# 7707 4088 7160
0201

33401
FL-US  PBI

XH PBIA

Extremely Urgent