# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 9:19-CV-80121-WM

| | |
|---|---|
| Bruce Exum, Jr. and Emilie Palmer, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 9:19-CV-80121-WM |
| v. | Hon. William Matthewman |
| National Tire and Battery and TBC Corporation, | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTION

## **TABLE OF CONTENTS**

INTRODUCTION                                                                                                    1

FACTUAL AND PROCEDURAL BACKGROUND                                                 2

ARGUMENT                                                                                                          3

I.      Holyoak Lacks Standing to Object to the Settlement.                                  3

II.     Holyoak's Arguments Do Not Square with the Settlement Agreement.      4

        A.      The Settlement Does Not Release Damage Claims.                           4

        B.      The Settlement Provides Tangible Benefits to the Class.               4

III.    Holyoak and her "Institute" are Serial, Ideological Objectors Whose Arguments are
        Inapposite Here.                                                                                      8

IV.     The Settlement Is Fair, Reasonable and Adequate, and Is the Product of Arm's-Length
        Negotiation Between Experienced Counsel.                                               9

V.      The Requested Fee Award Is Reasonable and Appropriate under the Circumstances of
        this Litigation.                                                                                     13

VI.     The Notice Proceeding Was Proper.                                                         17

CONCLUSION                                                                                                    18

## TABLE OF AUTHORITIES

### Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) .................................................. 10

*Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ............. 3

*Berni v. Barilla G. e R. Fratelli, S.p.A.,* 332 F.R.D. 14 (E.D.N.Y. 2019) .................................. 7, 8

*Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) .................................................................................................................................. 3

*Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) .................................................................................................................................. 12

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008) .................................................. 17

*Childs v. U.S. Bd. of Parole*, 511 F.2d 1270 (D.C. Cir. 1974) .................................................. 18

*David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) .................................................................................................................................. 16

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) .................................................................................... 3

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) .............................................................. 18

*Elkins v. Equitable Life Ins. Co.*, No. CivA96-296-Civ-T-17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) .......................................................................................................................... 16

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) .......................................... 10

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989) .................................................................... 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .............................................................................. 16

*Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006) .............................. 17

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ........................................................ 5

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................ 6, 14

*In re Budeprion XL Mktg. & Sales Litig.*, No. 09-MD-2107, 2012 WL 2527021 (E.D. Pa. July 2, 2012) .................................................................................................................................... 8

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................... 10

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) .................................................. 16

*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306 (11th Cir. 2009) .................................................. 10

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .............................................. 5, 8, 9

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ............................................................................................ 8

*In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976) ...................................... 12

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV0705107SJOAGRX, 2013 WL
    12216516 (C.D. Cal. Dec. 6, 2013) ............................................................................................ 3

*In re Liberty Nat. Ins. Cases*, 2:99-cv-3262-UWC, 2006 WL 8436814 (N.D. Ala. Mar. 31, 2006)
    ...................................................................................................................................................... 16

*In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551 (7th Cir. 2017) .. 5, 9

*In re Toys "R" Us – Delaware, Inc. –Fair and Accurate Credit Transactions Act (FACTA) Litig.*,
    300 F.R.D. 347 (C.D. Cal. 2013)................................................................................................ 17

*In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016)........................................ 5, 9

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).................................................. 13

*Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).................................. 11, 16

*Kumar  v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7,
    2017)............................................................................................................................................ 8

*Leist v. Shawano Cty.*, 91 F.R.D. 64 (E.D. Wis. 1981)................................................................. 18

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................... 12

*Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................. 8

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) ............................................. 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 3

*Ma v. Harmless Harvest, Inc.*, No. 16-cv-07102, 2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) . 5

*Martz v. PNC Bank, N.A.*, No. CIV.A.06-1075, 2007 WL 2343800 (W.D. Pa. Aug. 15, 2007).. 17

*Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237 (S.D. Fla. 2016)................................................. 3

*Mungin v. Fla. E. Coast Ry. Co.*, 318 F. Supp. 720 (M.D. Fla. 1970) ........................................ 18

*Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185 (W.D. Tex. 1998).......................................... 12

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).................................................................. 14

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................. 16

*Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015)......................................................... 8

*Raines v. State of Florida*, 987 F. Supp. 1416 (N.D. Fla. 1997).................................................... 3

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .......................................................... 12

*Singer v. AT&T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998) ............................................................ 10

*Thorne v. Pep Boys-Manny, Moe & Jack Inc.*, No. CV 19-393, 2020 WL 605876 (E.D. Pa. Feb.
    7, 2020)....................................................................................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................................. 10

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)........................................................ 9

*Williams v. Vukovich*, 720 F.3d 909 (6th Cir. 1983)...................................................................... 12

### Statutes

49 U.S.C. § 30117(b) ....................................................................................................................... 7

### Other Authorities

6A Fed. Proc. L. Ed. § 12:308 ........................................................................................................ 18

### Rules

Fed. R. Civ. P. 23 ........................................................................................................................ 3, 9

### Treatises

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)............... 12

7B *Fed. Prac. & Proc. Civ.* § 1793 (3d ed.) ............................................................................... 18

### Regulations

49 C.F.R. § 574.8 ....................................................................................................................... 7, 11

Plaintiffs' Class Counsel ("Class Counsel") submit this brief in response to the objection of Melissa Holyoak to the settlement with National Tire and Battery and TBC Corporation ("Defendants") in this litigation – the only objection made against the settlement.

## INTRODUCTION

On April 6, 2020, this Court preliminarily approved a settlement reached by the parties in this case and certified a settlement class under Rule 23 of the Federal Rules of Civil Procedure. ECF Doc. No. 98. Specifically, the Court found that certification of the class under Rule 23(b)(2) is appropriate because Plaintiffs had "achieved a significant change in Defendants' practices that will protect tens of thousands of drivers and their passengers, and perhaps even more than that, by making tire purchasers reachable by tire manufacturers in the event their tires are recalled." *Id.* at 11. On June 9, 2020, the Court approved Plaintiffs' unopposed motion for attorney fees and expenses and incentive award to the two Class Representatives. ECF Doc. No. 102.

Melissa Ann Holyoak, a professional objector, president and general counsel of the Hamilton Lincoln Law Institute and a senior attorney for the Center for Class Action Fairness, filed the only objection to the Settlement and the approval of attorney fees and incentive award ("Objection"). ECF Doc. No. 103. Holyoak's ideologically motivated, cookie-cutter arguments are misguided, misinformed, and not reflective of the law or facts in this case. Holyoak lacks standing to object and her arguments fail on numerous grounds, including the argument that changes effected by the Settlement are "cosmetic," that Class Representatives have disqualifying conflicts, and that the fee award was not reasonable. Besides being grounded in outright hostility to class actions, Holyoak's arguments also turn on unfounded assumptions about this case, including that monetary claims were released by the Settlement.

Even if Holyoak could prove that she is a member of the Class, her Objection ignores the hard-fought litigation process that led to the Settlement, and fails to rebut the well-founded reasons for the Court to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class. The Objection proposes no constructive improvement to the Settlement terms to benefit any Class Members. Instead, the Objection implies that injunctive relief that assures substantive safety measures to consumers in a settlement for a class action is largely worthless and should be abandoned, and that members of the Settlement Class should be left alone to try their individual cases based on an undetermined theory to prove standing and injury, and consumers driving on unregistered tires should continue to be subject to the imminent threat of injury or death.

The Objection is thus meritless. The Court should overrule Holyoak's Objection and grant final approval of the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2019, Plaintiffs filed a class action Complaint alleging that Defendants' practices in selling tires to Plaintiffs and the putative class members violated 49 C.F.R. § 574.8(a)(l). Defendants filed a Motion to Dismiss on May 28, 2019. Plaintiffs sought relief including an order by the Court certifying the case as a class action, plus, among other things, injunctive relief and attorneys' fees and costs. On August 13, 2019, Plaintiffs filed a motion for class certification. Defendants opposed the motion on August 27, 2019. The Court ordered the Parties to engage in discovery while Defendants' motion to dismiss and Plaintiffs' motion for class certification were awaiting decision. Discovery activities eventually included production by Defendants of nearly 3,000 documents, motion practice on one discovery dispute, and depositions of the two Plaintiffs and of three of Defendants' current or former employees, including a partial deposition under Fed. R. Civ. P. 30(b)(6).

On October 2, 2019, the Parties consented to the jurisdiction of Magistrate Judge William Matthewman to conduct and try the matter and order an entry of judgment. The next day, the district court ordered the matter referred to Magistrate Judge Matthewman for all further proceedings. On October 8, 2019, Magistrate Judge Matthewman issued a revised scheduling order to govern the case. On January 28, 2020, the Court denied Defendants' motion to dismiss. The following week, the Parties resumed participation in a private mediation that they had begun in November 2019. On February 7, 2020, the Parties reached a full and final settlement of the dispute. The Court stayed all pending deadlines while the Parties worked on finalizing the settlement.

The proposed settlement defines the class as the following:

> All persons in the United States and its territories who purchased a tire from Defendants or their subsidiaries during the Class Period for their personal use, rather than for resale or distribution, *where Defendants did not provide them with a registration card, send in a card to the manufacturer for them, or electronically transmit their information to the tire manufacturer within 30 days of purchase.* Excluded from this Class are Defendants' current or former officers, directors, employees, Defendants' parent entities, or any entity in which Defendants have a controlling interest; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

Settlement Agreement at § 1.22 (emphasis added).

## ARGUMENT

### I.    Holyoak Lacks Standing to Object to the Settlement.

As a threshold matter, Holyoak lacks standing to object to the settlement. Generally, an absent member of the class "has an interest in the settlement that creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability." *See Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). However, "each objector to a class action settlement must establish his or her class membership or standing to object." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV0705107SJOAGRX, 2013 WL 12216516, at *1 (C.D. Cal. Dec. 6, 2013) (citing *Lujan*). *See also, e.g.*; *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1260 (S.D. Fla. 2016) (stating that objector Putnam "did not hav[e] standing to object because he is not a class member"); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at *11 (S.D. Fla. Nov. 9, 2015) (stating that "[o]nly a 'class member' may object to a propose class settlement," citing Fed. R. Civ. P. 23(e)); *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473–74 (S.D. Fla. 2002) (noting that only class members are permitted to assert objections to a class-action settlement) (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989), and *Raines v. State of Florida*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997)).

Here, Holyoak lacks standing to bring an objection to this Settlement because she fails to establish that she is a member of the Settlement Class. Holyoak asserts that she purchased tires from a "wholly-owned subsidiary of a [Defendant]." ECF Doc. No. 103-1, at 1. However, no proof of purchase was submitted to the Court. Class Counsel cannot verify whether the alleged purchase happened, when it happened, who she communicated with and what she was informed of during the purchase of the tires. Thus, Holyoak has failed to establish that she is member of the Settlement Class, and thus, lacks standing to bring any objection to the Settlement. *See* Fed. R. Civ. P. 23(e); Settlement Agreement at § 1.22.

Even if Holyoak could prove that she did purchase tires from a Defendant, her Objection fails because she does not allege that the tires were unregistered. The burden is on Holyoak to prove—not the Parties to disprove—her Class membership. *See Braynen*, 2015 WL 6872519, at *11 (finding that objector "made no effort to prove" that he was a member of the class). In her declaration, Holyoak states that "I do not recall whether I was provided a tire registration card." Doc. No. 103-1 at ¶ 4. Holyoak's pleading falls short of the class definition proposed by the parties

and accepted by the Court in approving the settlement. Specifically, Holyoak does not plead that Big O Tires failed to provide her a registration card, as Plaintiffs and the class did. She pleads that she does "not recall" one way or the other. Holyoak's pleading allows that she might have been provided with a paper registration card or that her tires have been registered, which takes her outside the class definition and strips her of any standing to object to the settlement. *See* ECF Doc. No. 98 at 2-3; Settlement Agreement at § 1.22.

## II.   Holyoak's Arguments Do Not Square with the Settlement Agreement.

### A.  The Settlement Does Not Release Damage Claims.

Section 6.1 of the Settlement's release provision states that:

> Upon Final Approval, the Class Members, and each of their respective executors, representatives, heirs, successors, bankruptcy trustees, guardians, wards, agents and assigns, and all those who claim through them or who assert claims on their behalf, will be deemed to have and by operation of the Final Judgment will have irrevocably and unconditionally waived, released, and forever discharged the Released Parties from any and all injunctive-relief claims asserted in or that could have been asserted in the Action, whether known or unknown, that arise out of Defendants' policies and procedures related to the registration of tires sold to consumers. Class Members are not releasing their claims, if any, for monetary damages.

It is clear on the face of the Settlement that no damage claim of any Class Member has been waived or released. It is unclear why the Objection repeatedly argues that the Settlement states otherwise. *See* ECF Doc. No. 103 at 1, 7-11, 15. If Holyoak desires, she may bring her damage claim against the Defendants at any time. It is at least questionable whether Holyoak had any motivation to advance any Class Member's interest when she misstated the release provision of the Settlement. Nonetheless, the misstatement shows that she is a professional objector who is ideologically motivated and barely familiar with this case, and her Objection here is unfounded.

### B.  The Settlement Provides Tangible Benefits to the Class.

The Objection argues that Rule 23(a)(4) is not met here because the injunctive relief provided in the Settlement was "cosmetic" and of no value. ECF Doc. No. 103 at 6. However, the Objection provides no meaningful support for this argument. For instance, the Objection does not discuss how much it would cost Defendants to implement new procedures throughout their tire sales in each store nationally to give notification to each and every tire purchaser on tire registration. Nor does the Objection discuss the cost of Defendants' policy changes and staff trainings as required by the Settlement. Nor does it discuss the cost of a registration card,

Defendants' volume of sales, or the cost or value of updating and maintaining databases for each of their tire sales nationwide. This argument essentially attempts to relitigate issues disputed during the litigation and set aside by the Parties in the Settlement. *See, e.g.*, Complaint at ¶¶ 8, 37, and 86-91; *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Class Action Complaint*, ECF Doc. No. 36 at 13-15. *See also Order Granting in Part and Denying in Part Defendants' Motion to Dismiss*, ECF Doc. No. 84 at 23 ("it is simply too early for this Court to conclude that Plaintiffs' damages … are immeasurable or speculative. … This issue can be raised at the summary judgment stage….").

Moreover, no authority cited in the Objection provides analysis to a comparable injunctive relief with analogous value to this Settlement. *See, e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 716 (6th Cir. 2013) (litigation concerned allegedly defective baby diapers; the court found the settlement unfair because the "agreement treats named plaintiffs differently than other class members"); *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 557 (7th Cir. 2017) (litigation concerned allegedly deceptive marketing and sales practices by advertising sandwiches as "footlongs" when some sandwiches were slightly shorter than advertised lengths; the court found no benefit in the injunctive relief when the settlement states that uniformity in bread length is impossible); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 725 (7th Cir. 2016) (litigation concerned proposed merger of two companies where shareholders sought disclosure of additional information that allegedly affected shareholders' approval of merger; the court found the supplemental disclosures obtained via settlement of suit had no value to shareholders in making their decision about the merger); *Ma v. Harmless Harvest, Inc.*, No. 16-cv-07102, 2018 WL 1702740, at *7 (E.D.N.Y. Mar. 31, 2018) (litigation concerned allegedly false and misleading labeling, packaging and marketing campaign of coconut water products; the court found the injunctive relief meaningless because the product label in dispute was removed "prior to any of plaintiffs' pre-litigation demand letters" and there was no showing that "there is any risk or likelihood of [the defendant] reintroducing the labels"); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) (litigation concerned an antidiscrimination class action brought under Title VII of the Civil Rights Act of 1964; the court remanded the case to allow absent class members to "exclude themselves from the class" and "prove entitlement to a larger individual award in the same court that hears the claims of the class"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 950 (9th Cir. 2011) (litigation concerned manufacturers' alleged failure to

5

disclose wireless headsets' potential risk of noise-induced hearing loss; the court "express[ed] no opinion on the ultimate fairness of what the parties have negotiated, for we have no business [']substitut[ing] our notions of fairness for those of the district judge.[']") (internal citations omitted). None of these authorities is applicable.

Unlike the cases cited in the Objection, Defendants here have agreed to the following injunctive relief for the benefit of the Settlement Class:

1) Defendants will include the following language on the receipt/Bill of Sale provided to consumers in connection with the purchase of tire-related goods or services: In accordance with Federal Regulations, TBC retains information related to tire sales, including the consumer's name and address, the tire identification number, and the dealer's name and address. In the event of a tire recall, TBC will provide such information to the tire manufacturer so that the tire manufacturer can send you notice of a recall. If you would prefer to register your tires directly with the manufacturer, please ask the store representative for a tire-registration card.

2) In an attempt to verify the information stored in Defendants' Tire Registration Database, when a consumer purchases tire related goods or services from a retail store operated by Defendants, the store associate interacting with the consumer will be instructed to check available records to determine whether one or more of the tires on the vehicle were purchased from Defendants. If so, the associate will be instructed to review the information contained in Defendants' Tire-Registration Database regarding the vehicle in question and, to the extent necessary, take steps to update such information.

Settlement Agreement at §§ 3.1, 3.2. Unlike the settlement in *Ma*, Defendants had not and would not have voluntarily changed their sales practice. Unlike the settlements in *Subway*, the Settlement definitively describes specific changes that will be implemented by Defendants, which confirms compliance with the tire-registration statute and regulation. Unlike the settlement in *Pampers*, the Settlement treats all Class Members and Class Representatives equally—the incentive awards for service provided by the Class Representatives do not affect any part of the benefit awarded to Class Members. Unlike the settlement in *Walgreen*, the new language Defendants agreed to add to consumers' receipts is plainly material and provides important safety information and benefit that consumers would not have had without the Settlement. Unlike the settlement in *Holmes*, no Class Members' damage claims are released. With the proposed changes to Defendants' sales practice under the Settlement, tire purchasers can be assured that the Defendants comply with the rule and tire manufacturers can reach them in the event of a recall. Without the Settlement, tire purchasers,

such as the objector herself, would not know if they can be reached by the tire manufacturers. *See* ECF Doc. No. 103-1 at 1. Now, with the Settlement, she and other consumers can conveniently confirm tire registration with the Defendants.

The Objection also questions the value of the injunctive relief provided by the Settlement because "[e]ven if the settlement relief had remedied the alleged violation of law, it would be far from clear that that would constitute a material class benefit. Plaintiffs make no showing that customers are better off with manufacturers running the tire registration database rather than retailers like defendants." ECF Doc. No. 103 at 14 n.9. This argument should be rejected as it attacks the tire registration law rather than the Settlement itself. *See* 49 C.F.R. § 574.8; 49 U.S.C. § 30117(b).

In sum, the lack of meaningful discussion of the specific issues[1] and factual disputes raised during this litigation, including the critical issue on a tire purchaser's standing to bring any claim against the Defendants, and the risk in proving damages[2], shows that the Objection is entirely superficial. Simply put, the objection attacks the Settlement for providing injunctive relief only. But a settlement is not deemed valueless simply because it is a settlement under Rule 23(b)(2). The objection contains no authority that states so. Settlements under Rule 23(b)(2) have been routinely approved. *See, e.g., Berni v. Barilla G. e R. Fratelli, S.p.A.,* 332 F.R.D. 14, 24 (E.D.N.Y. 2019) (declining to follow *Subway*, approving settlement under Rule 23(b)(2), finding that "[t]he fact that the settlement does not provide damages to the class does not render the injunctive relief insufficient"); *In re Budeprion XL Mktg. & Sales Litig.*, No. 09-MD-2107, 2012 WL 2527021, at *11 (E.D. Pa. July 2, 2012) (approving settlement under Rule 23(b)(2)).

---

[1] For instance, the Objection failed to discuss the litigation and discovery process on a number of core issues in this case—whether the Defendants have complied with 49 C.F.R. § 574.8(a)(1) in their past sales practices, whether a tire purchaser is injured by purchasing a tire from the Defendants without being provided a registration card or otherwise assisted with registration as required by the regulation, and whether Defendants must notify tire purchasers of the registration rules on a receipt.

[2] A district court in Pennsylvania has found that an individual tire purchaser lacked standing to sue in a substantially similar case. *See Thorne v. Pep Boys-Manny, Moe & Jack Inc.*, No. CV 19-393, 2020 WL 605876 (E.D. Pa. Feb. 7, 2020). The objector did not bother to file any amicus brief in that litigation in support of the consumers affected by the decision. However, Plaintiff Thorne (represented by the same Class Counsel as here) has appealed the order to the Third Circuit Court of Appeals and counsel are continuing to litigate that case on a purely contingent basis.

III. **Holyoak and her "Institute" are Serial, Ideological Objectors Whose Arguments are Inapposite Here.**

Holyoak and her organization (Center for Class Action Fairness, or "CCAF") has a long history of acting as a serial objector to class action settlements and has been previously admonished by courts for their vexatious conduct. She is part of the CCAF's professional objectors whose goal is ideologically motivated without promoting in any way the benefit of consumers. *See, e.g., Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) ("Class Counsel correctly point out that Mr. Greenberg's brief is [']long on ideology and short on law[,][']' and that ['][h]e readily admits that this Settlement could be approved under current Sixth Circuit law.[']"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *42 (N.D. Ga. Jan. 13, 2020) (finding that [a colleague of Holyoak's at CCAF] "disseminated false and misleading information about this settlement in an effort to encourage others to object in this case … and that [the] objection is not motivated to serve the interests of the class."); *Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015) (concluding that the district court's valuation of settlement's nonmonetary relief was supported by the record; rejecting each argument raised in an objection filed by a colleague of Holyoak's at CCAF); *Berni*, 332 F.R.D. at 22-23 (rejecting objection brought by a colleague of Holyoak's at CCAF, and rejecting a similar argument as Holyoak raised here that an injunctive relief is "worthless"); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *4-6 (N.D. Cal. July 7, 2017) (rejecting each argument raised in an objection brought by a colleague of Holyoak's at CCAF, finding the arguments are not supported by any record of the case), *aff'd*, 737 F. App'x 341 (9th Cir. 2018).

Holyoak suggests that rulings in *Pampers*, *Subway*, or *Walgreen*, where she or her colleagues at CCAF successfully opposed class action settlements, apply to this Settlement. *See* ECF Doc. No. 103-1 at 3. However, she fails to explain how the settlements in these cases are comparable to this Settlement. In *Pampers*, the court specifically pointed out that the settlement was unfair when "the settlement agreement awards class counsel a fee of $2.73 million" "where counsel did not take a single deposition, serve a single request for written discovery, or even file a response to [a] motion to dismiss." 724 F.3d at 718. The court also found that the injunctive relief provided to the class was "illusory" because the theories of how a consumer could benefit from the settlement were "premised upon a fictive world, where harried parents of young children clip and retain Pampers UPC codes for years on end, where parents lack the sense (absent intervention

8

by P & G) to call a doctor when their infant displays symptoms like boils and weeping discharge, where those same parents care as acutely as P & G does about every square centimeter of a Pampers box, and where parents regard Pampers.com, rather than Google, as their portal for important information about their children's health." *Id.* at 721. No similar fact is presented on the record in this Settlement. Holyoak's reliance on *Pampers* is misplaced. *Subway* and *Walgreen* are likewise unpersuasive. *See Subway,* 869 F.3d at 557 (finding that the settlement never "guarantee[d]" any change of business practice by the defendant, and the disclaimer required by the settlement adds no value to consumers, as they already "know [this information] as a matter of common sense"); *Walgreen,* 832 F.3d at 726 (finding that because class counsel settled for disclosure of additional information to shareholders in a proposed merger without showing "members of the class have an interest in challenging the reorganization" or the supplemental disclosures obtained in the settlement had value to shareholders in making their decision about the merger, the settlement could not be approved). Thus, the authorities cited by Holyoak are inapposite.

IV.     **The Settlement Is Fair, Reasonable and Adequate, and Is the Product of Arm's-Length Negotiation Between Experienced Counsel.**

  **A.  The Settlement-Class Certification Under 23(b)(2) is Warranted.**

  The Court has previously analyzed and found in that class certification here is appropriate when Plaintiffs have satisfied Rule 23(a)(1)-(4). ECF Doc. No. 98 at 7-10. In addition, Plaintiffs sought certification under Rule 23(b)(2), whose elements are met when Plaintiffs showed that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole ."[3]

  The purpose behind class actions is to eliminate the potential for repetitious litigation and provide small claimants a means of obtaining redress for claims too small to justify individual litigation.[4] Thus, "[d]oubts regarding the propriety of class certification should be resolved in favor of certification,"[5] as it is well established that class-action lawsuits were designed to be effective

---

[3] Fed. R. Civ. P. 23(b)(2).

[4] *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 249 (3d Cir. 1975) ("Any resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.").

[5] *Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998).

tools for deterring wrongdoing.[6] This case, involving a defendant's common practice and relatively small individual damages allegedly inflicted on large numbers of people, presents a classic example of appropriate circumstances for class certification.

As the Court has ruled, "Plaintiffs have achieved a significant change in Defendants' practice that will protect tens of thousands of drivers and their passengers, and perhaps even more than that, by making tire purchasers reachable by tire manufacturers in the event their tires are recalled. This is typical 23(b)(2) relief." *Id.* at 11. Further, the Settlement has been found by the Court to be "the result of serious, arms'-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to Plaintiffs or other segments of the class." *Id.* at 13. The Objection fails to address the detailed and well-founded reasons provided in the Court's order preliminarily approving the Settlement.[7] The Objection cited *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) for the proposition that the Court must also engage in a "rigorous analysis," including analysis for "trial manageability concerns" for the class certification here. Objection, at 4. This argument must be rejected because *Wal-Mart* concerned a litigation class and not a certification of settlement-only class, thus, is inapposite. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Further, the 11th Circuit has instructed district courts to review "a class action settlement for fairness, reasonableness, and adequacy." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011) (citing *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314–15 (11th Cir. 2009)). Specifically, the following factors should be considered for final approval of the Settlement: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range

---

[6] *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1355 n.24 (S.D. Fla. 2011) ("As one of Plaintiffs' experts opined, 'in small-stakes cases, the most important function of the class action device is not compensation of class members but deterrence of wrongdoing ... [and] if defendants did not pay someone—even third parties like *cy pres* charities—for such harms, then defendants would have every incentive to cause such harms in the future...'") (citation omitted; alterations in original).

[7] Class Counsel has responded to the argument raised in the Objection generally addressing Rule 23(a)(4) in Section II. B.

of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.* (citation omitted).

The first four *Bennett* factors strongly support approving the Settlement. This case concerns a federal regulation, 49 C.F.R. § 574.8, enacted by the National Highway Traffic Safety Administration whereby independent tire dealers are required to assist purchasers to get their tires registered with the tire manufacturers. *See* 49 C.F.R. § 574.8(a)(l)(i)-(iii) (2019). The regulation itself contains no private right of action and resulted from a complex legislative history and public safety considerations. This was the first litigation to attempt to vindicate consumers' rights under the regulation and its authorizing statute. Further, "[c]ases of first impression generally require more time and effort on the attorney's part." *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). In this litigation, Plaintiffs had to contend with a challenge regarding whether they had standing under Article III of the U.S. Constitution. In addition, Defendants raised numerous defenses that created high litigation risks for Plaintiffs. Defendants would have no doubt renewed the defenses at the summary judgment stage. To prove their case at trial, Plaintiffs would have to collect further evidence and hire more experts to show how their alleged damages are measured. The case would have been extraordinarily expensive to litigate going forward and would have certainly taken years to conclude. With the Settlement, Class Members are provided with a relief that may not have been available had the case been tried. The injunctive relief achieved by the Settlement was in the high range of possible recovery to Class Members; without the Settlement, there would be no guarantee that Defendants would register the tires or help tire purchasers determine if the tires were registered. Even if money damages were awarded, individuals would most likely to be compensated only for their time to register the tires on their own.[8]

The fifth *Bennett* factor, which examines opposition to the Settlement, likewise supports approval. The Objection filed by Ms. Holyoak is the only objection filed with the Court. No state's Attorney General filed an objection under CAFA. This miniscule number of objectors "points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. Am. Express*

---

[8] And even in the best-case scenario, a national class certification was never assured during the litigation. With the Settlement, a nationwide class was certified.

*Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

The sixth *Bennett* factor also supports approval of the Settlement. The case was settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the Settlement against the potential risk of continued litigation. As this Court previously recognized, Class Counsel:

> thoroughly investigated the claims and background concerning Plaintiffs' tire purchases before filing their Complaint, filed a substantive opposition to Defendants' motion to dismiss and overcame the motion, and engaged in discovery as quickly as possible. As demonstrated in the exhibits to Plaintiffs' motion, proposed Class Counsel have served and successfully litigated as lead counsel or co-counsel in numerous similar consumer class actions, and have demonstrated their understanding of Florida and federal law in their motion-to-dismiss briefing.

ECF Doc. No. 98 at 11-12. Class Counsel "have devoted a significant amount of time to this case and achieved an excellent outcome for Plaintiffs, Class members, and the public. Plaintiffs' attorneys have demonstrated that they are very capable of prosecuting this action." *Id.* at 12. Further, opposing counsel's experience and skill should be considered, as such experience and skill reflects the challenges faced by Plaintiffs' Counsel. *See In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976).

When a proposed settlement results from arm's-length negotiations conducted by experienced, informed counsel, the agreement is presumed to be fair. *See* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("Newberg") ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval."). A class settlement "is presumptively reasonable upon preliminary approval, and an individual who objects consequently has 'a heavy burden' of demonstrating that the settlement is unreasonable." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, *12 (N.D. Ohio Sept. 1, 2011) (citing *Williams v. Vukovich*, 720 F.3d 909, 921 (6th Cir. 1983)). In the final approval context, the Fifth Circuit has given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement, *see, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983), and courts can weigh the fact that an experienced mediator oversaw the negotiations. *See Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 211 (W.D. Tex. 1998). The settlement here enjoys a presumption of fairness that the undisputed evidence confirms. No one contests that the Settlement followed thorough investigation and discovery and is the product of arm's-length negotiation between experienced,

capable counsel, assisted by a mediator who has exceptional reputation and tremendous experience. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (presence of "highly experienced mediator" pointed to "absence of collusion").

In conclusion, the Settlement reflects an outstanding result for the class in a case with a high level of risk. Moreover, the Settlement resulted from hard-fought, arm's-length negotiations, not collusion. The Settlement is therefore fair, reasonable, and adequate under Rule 23 and 11th Circuit precedent, and should be finally approved by the Court.

**V.     The Requested Fee Award Is Reasonable and Appropriate under the Circumstances of this Litigation.**

Since early 2019, Class Counsel have handled this litigation in the face of a stout defense and significant risk, dedicating their time, money, and energy on behalf of individuals who purchased tires from Defendants without having their tire information and contact information transmitted to the manufacturer of their tires in violation of 49 C.F.R. § 574.8(a)(1). Class Counsel have handled this litigation on a purely contingent basis and have advanced all costs to prosecute these claims. In doing so, Class Counsel invested tens of thousands of dollars in time and expense to secure the benefits provided in the Settlement before the Court. Class Counsel's lodestar to date already far exceeds the fees being requested.

As a result of Class Counsel's work in this litigation, Defendants have agreed to make substantive changes to their tire sales practices: Defendants agreed to include a statement on purchasers' invoices notifying them of Defendants' transmission of tire purchasers' information to the manufacturers and to provide a paper tire-registration card to tire purchasers if requested. These changes ensure Defendants' compliance with the statute and regulations on tire registration. They also provide tire purchasers with a practical measure to confirm that the tire manufacturers can reach them. The Settlement does not release the Defendants from any damage claims that a tire purchaser may have had or will have in the future. Pursuant to 28 U.S.C. § 1715, Defendants have provided the requisite CAFA Notice of this Class Action Settlement to the applicable federal and state officials, further ensuring protections for the Class. No objection has been filed by any state's Attorney General.

In light of the results achieved by this Settlement, the Court has found that the award of attorneys' fees is "reasonable, permissible under the applicable law, and in accordance with the Settlement Agreement." ECF Doc. No. 102 at 2. In disregard of all litigation proceedings in the

action, all efforts devoted by Class Counsel in reaching a Settlement with Defendants, and all benefits provided to the Settlement Class, the Objection mischaracterizes the Settlement as unfair, criticizing mainly the fact that the Settlement provides injunctive relief.

The Objection ignores the fact that the time and labor expended by Plaintiffs' Counsel in this litigation was substantial. For example, in briefing on the motion to dismiss and the motion for class certification, Class Counsel invested hundreds of hours researching and litigating each element of the statutory and common law claims alleged in the Complaint, including issues regarding Class Members' standing and injury. Plaintiffs' Counsel investigated and brought complicated statutory claims concerning complex regulations and legislative history in their complaint, successfully opposed Defendants' motion to dismiss, engaged in substantive discovery and conducted depositions, prepared and filed a motion for class certification, and mediated the case against a well-prepared and highly skilled and experienced adversary. The Settlement was the result of extensive, difficult, and complex arm's-length negotiations, including two mediation sessions before Rodney Max. The litigation required considerable skill and experience of counsel to bring it to a successful conclusion. The ability of Class Counsel to obtain outstanding results for the Class in the face of formidable legal opposition confirms the superior quality of Class Counsel's representation. The combined cumulative lodestar and unreimbursed expenses exceed the fees being requested.

The Objection also argues that the award of attorneys' fees is unfair because it shows "warning signs" identified by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.* ("Bluetooth"), 654 F.3d 935 (9th Cir. 2011). The Objection also argues that a negotiated fee in the Settlement indicates inequitable conduct and must be subject to intense critical scrutiny. ECF Doc. No. 103 at 17. These arguments are not based on any authority in the 11th Circuit and are unfounded—there is no showing of inequitable conduct between the parties. Even if the Court were to apply an "intense critical scrutiny" standard here, the award of attorneys' fees still stands as fair and reasonable.

As an initial matter, Holyoak fails to show that she has standing to object on this issue. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014) ("If the class cannot benefit from the reduction in the award of attorneys' fees, then the objector, as a member of the class, would not have standing to object, for he would have no stake in the outcome of the dispute.").

Second, as stated above, Holyoak's estimation of the value provided through the Settlement

is purely speculative and lacks any factual basis. It is puzzling how the Objection concludes that "as a matter of law, the injunctive relief that this settlement offers is not worth anywhere near $2 million." ECF Doc. No. 103 at 14. The Objection does not specify how much time it takes to register tires at any stores owned by Defendants, nor does it discuss the cost for Defendants to change their business practice under the Settlement terms. Nonetheless, whatever the Objector viewed as the "value" for the injunctive relief does not take into account the litigation risk on establishing Class Members' standing, or the risk of summary judgment motions, especially given that Defendants claimed to have met statutory requirement, or the risk on class certification. The Objection also completely disregards the value of preventing injury and deaths of tire purchasers who own unregistered tires. *See* Complaint at 6-9. The Objection insists that the changes to defendants' sales practice are of no value because "[t]o the extent that the defendants were not previously including those disclosures on their bills of sale or updating their customers' contact information (Settlement ¶¶ 3.1, 3.2), these practice changes are not material improvements over their previous system and the parties have made no showing that they are." ECF Doc. No. 103 at 7. This argument ignores the fact that Defendants' inclusion of new language on the receipt/Bill of Sale demonstrates compliance with the tire-registration regulation. Assuming *arguendo* that Holyoak's argument were correct, it would necessarily follow that compliance with the tire-registration regulation is meaningless, and consumers, including the objector, sustained no injury through their purchase of unregistered tires, and are entitled to no remedy. This is clearly contrary to the ruling by this Court that Class Members have suffered a concrete injury through their purchase of unregistered tires. *See* ECF Doc. No. 84 at 8-13 (holding that plaintiffs alleged sufficiently concrete injury in fact to support Article III standing). Further, the argument advocates against any consumers' interest in this litigation. Thus, the argument should be rejected.

Third, "this Settlement is not dependent upon the Court's approving Class Counsel's and/or Class Plaintiffs' request for such payments or awarding the particular amounts sought by Class Counsel or Class Plaintiffs. In the event the Court declines Class Counsel's and/or Class Plaintiffs' requests or awards less than the amounts sought, this Settlement will continue to be effective and enforceable by the Parties." Settlement Agreement at § 6.3. Thus, the award of attorneys' fees in this case does not affect the benefit obtained for Class Members by Class Counsel.

As this Court is aware, "[f]ee agreements between plaintiffs and defendants in class actions are encouraged, particularly where, as here, evidence has been presented that the attorneys' fees

were negotiated after the terms of the Settlement have been agreed to by the parties. *In re Liberty Nat. Ins. Cases*, 2:99-cv-3262-UWC, 2006 WL 8436814, at *22 (N.D. Ala. Mar. 31, 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and *In re Continental Ill. Sec. Litig*., 962 F.2d 566, 568–70 (7th Cir. 1992)). The Court should give substantial weight to the negotiated fee amount here as there is no evidence of collusion or detriment to the class, and it represents the parties' "best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Elkins v. Equitable Life Ins. Co*., No. CivA96-296-Civ-T-17B, 1998 WL 133741 at *34 (M.D. Fla. Jan. 27, 1998) (quoting *Johnson*, 488 F.2d at 720). Plaintiffs have requested a fee and expense award of only $645,000, which is far less than the actual fees and expenses incurred in this action to date. "Obviously, the award is justified under a lodestar analysis." *In re Liberty Nat. Ins. Cases*, 2:99-cv-3262-UWC, 2006 WL 8436814, at *21 (N.D. Ala. Mar. 31, 2006). Essentially, Holyoak's objection is based not on the law as applied to the settlement here, but on policy-oriented arguments to *any* award of *any* attorneys' fees or incentive awards in Rule 23(b)(2) settlements. These arguments should be rejected.

As to the incentive award, the Objection fails to recognize the service provided by the Class Representatives in this action. The law recognizes that a modest payment is appropriate in recognition of the services that such plaintiffs perform in successful class litigation. "There is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. Am. Suzuki Motor Corp*., No. 08-CV-22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). The Class Representatives here were the principal catalysts to achieving the result attained in the Settlement. They actively participated in discovery, including in depositions, and in responding to discovery requests. They likely saved other people from injury and death. The incentive awards will not reduce the recovery to any Class Member. As the Court is aware, Florida courts "have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007). Consistent with the law and the terms of the Settlement, and in light of the Class Representatives' efforts to obtain a meaningful result for the Class, an incentive award is appropriate.

The fact that Plaintiff Emilie Palmer is the mother of Plaintiffs' counsel Christopher C. Kessler does not alter the evaluation here because Palmer demonstrated no conflict with the class interests in litigating this case. Palmer has been deposed and participated in discovery. Palmer has

16

been found to be an adequate Class representative. *See* ECF Doc. No. 98 at 9-10 & n.34. The same analysis applies to the other class representative, Bruce Exum. *Id.*; *see also In re Toys "R" Us – Delaware, Inc. –Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 372–75 (C.D. Cal. 2013) (noting that a close friendship alone does not render a plaintiff an inadequate class representative); *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 501 (N.D. Ga. 2006) (finding "there is not enough evidence for the Court to conclude that Plaintiff's interests are more closely associated with [attorney who referred case to Plaintiff's counsel] than they are with the absent class members."). No "substantial conflicts of interest" exist here and Mr. Exum—who agreed to participate in this case, was deposed, and was not shown to have any interest antagonistic to the proposed Class—lived up to his plan to "adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Holyoak's citations to *London* and *Martz* are distinguishable. In *London*, the court found the named plaintiff had a conflict of interest because of "personal *and* financial ties" with class counsel. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) (concluding that the district court "abused its discretion by ignoring London and Ader's significant personal and financial ties," including that plaintiff had been and could resume being counsel's stockbroker). In *Martz*, meanwhile, the court found the named plaintiff to be an inadequate class representative not just because of his friendship with counsel, but also because he admitted at deposition that he might not have sustained the same injury as the class. *See Martz v. PNC Bank, N.A.*, No. CIV.A.06-1075, 2007 WL 2343800, at *5 (W.D. Pa. Aug. 15, 2007) ("Martz admits he is not certain if he is a member of the Class he seeks to represent . . . . [A] potential conflict exists between his interests and those of the Class, as Martz may spend more time trying to prove his individual claim than he spends representing the claims of absent Class members who, unlike Martz, can presumably verify that they received improper notice from PNC's ATM screens.").

The Objection fails to demonstrate any sense in which Palmer or Bruce's representation of the class has been inadequate. Likewise, the Objection also fails to show why Palmer or Bruce's efforts and participation do not merit an incentive payment.

**VI.**     **The Notice Proceeding Was Proper.**

When the proposed class settlement is under Rule 23(b)(2), notice to the class is not required when, as in this case "there is cohesiveness or unity in the class and the representation is

effective....["9"] Courts have decided not to require notice to a class in Rule 23(b)(1) or 23(b)(2) suits for various reasons, including when its members were too numerous. *Id.*[10] Notice has been held not necessary in (b)(1) or (b)(2) class actions where class members could be or were notified by other means.[11] Here, there is cohesiveness and unity in the class in that all were purchasers of tires from Defendants and were affected essentially the same way by Defendants' tire-registration practices. Additionally, the Class Members' representation by Plaintiffs and Class Counsel has been effective. Therefore, no formal notice is necessary. Notice also will be essentially achieved by Defendants' changed practices to notify tire purchasers on their invoices that Defendants have directly registered the tires with manufacturers. *See* ECF Doc No. 98 at 13-14. Finally, pursuant to 28 U.S.C. § 1715, Defendants have provided the requisite CAFA Notice of this Class Action Settlement to the applicable federal and state officials, and have received no objection.

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in Class Counsel's prior briefing, Class Counsel respectfully request that the Court: (1) grant final approval of the Settlement; (2) grant final certification of the Settlement Class for settlement purposes only; (3) confirm the appointment of Chaikin Law Firm PLLC; Cuneo Gilbert & LaDuca, LLP; Lockridge Grindal Nauen PLLP, and McDougall Law Firm, LLC as Settlement Class Counsel for the Settlement; (4) grant the requested attorneys' fees, incentive awards and reimbursement of certain litigation costs and expenses; and (6) overrule the Objection filed by Ms. Holyoak.

Dated: July 3, 2020                              Respectfully submitted,


                                                 */s/ Jordan L. Chaikin*
                                                 Jordan L. Chaikin
                                                 Florida Bar Number: 0878421
                                                 **CHAIKIN LAW FIRM PLLC**

---

[9] 7B *Fed. Prac. & Proc. Civ.* § 1793 (3d ed.), Orders Relating to the Conduct of Class Actions—Protecting the Members of the Class: Notice (citing advisory committee note).

[10] *See Childs v. U.S. Bd. of Parole*, 511 F.2d 1270, 1276 (D.C. Cir. 1974) (affirming decision that notice provision did not apply as to (b)(2) class) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 n. 14 (1974)); *Leist v. Shawano Cty.*, 91 F.R.D. 64, 69 (E.D. Wis. 1981) (notice to certain members of class not required "because they are just too numerous"); *Mungin v. Fla. E. Coast Ry. Co.*, 318 F. Supp. 720, 732 (M.D. Fla. 1970) (perceiving "no requirement nor authority" justifying notice to class), *aff'd*, 441 F.2d 728 (5th Cir. 1971).

[11] *See* 6A Fed. Proc. L. Ed. § 12:308, *Due-process requirements*.

2338 Immokalee Road, Suite 170
Naples, Florida 34110
Telephone: (239) 470-8338
Email: jordan@chaikinlawfirm.com

Cuneo Gilbert & LaDuca, LLP
*/s/* Charles J. LaDuca
Charles J. LaDuca
Brendan S. Thompson
Yifei ("Evelyn") Li
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202)789-3960
charles@cuneolaw.com
brendant@cuneolaw.com
evelyn@cuneolaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
/s/ Robert K. Shelquist
Robert K. Shelquist, #021310X (MN)
Rebecca A. Peterson, #0392663 (MN)
Eric N. Linsk, #0388827 (MN)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com
RNLinsk@locklaw.com

The Kessler Law Firm PLLC
/s/ Chris Kessler
Christopher C. Kessler, #18696 (NC)
PO Box 8064
Greenville, NC 27835
(252) 321-2535
cck@kesslerlawfirmpllc.com

MCDOUGALL LAWFIRM, LLC
/s/ J. Olin McDougall, II
J. Olin McDougall, II, Esquire
Post Office Box 1336
115 Lady's Island Commons
Beaufort, South Carolina 29901-1336
(843) 379-7000
(843) 379-7007-Fax
lin@mlf.law

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court this 3rd day of July 2020, by using the CM/ECF system which will send notice of electronic filing to all parties of record.

By:   /s/ Jordan L. Chaikin
              Jordan L. Chaikin
              Florida Bar Number 0878421
              **CHAIKIN LAW FIRM PLLC**
              2338 Immokalee Road, Suite 170
              Naples, Florida 34110
              Telephone: (239) 470-8338
              Email: Jordan@chaikinlawfirm.com

              *Counsel for Plaintiffs*