UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-80121-Matthewman

Bruce Exum, Jr., and Emilie Palmer,
*individually and on behalf of*
*all others similarly situated*,

        Plaintiffs,

v.

National Tire and Battery, and
TBC Corp.,

        Defendants.
_____/

FILED BY ____KJZ____ D.C.

*Sep 1, 2020*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**
**AND**
**ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST ATTORNEY MELISSA HOLYOAK FOR MAKING FALSE REPRESENTATIONS AND STATEMENTS TO THE COURT**

THIS CAUSE is before the Court on the Plaintiffs' Unopposed Motion for Approval of Class Settlement and for Class Certification of Settlement Class, [DE 95], and upon Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses to Settlement Class Counsel and Payment of Service Award to Representative Plaintiffs. [DE 101]. The Motions are unopposed by the parties.

However, one objection was filed by a purported class member. [DE 103]. The Court ordered expedited briefing on the Objection. [DE 104]. The Court held a Final Approval Hearing, at which it also heard arguments related to the Objection, via Zoom video teleconference ("VTC") on July 17, 2020. [DE 104]. Thus, this matter is now ripe for review.

Having considered the briefing, the terms of the settlement agreement, the Objection and response thereto, the arguments of counsel and the Objector, the relevant caselaw, statutory and regulatory framework, and the other matters on file in this action, the Court GRANTS the motion for final approval.

## I. Factual Background and Procedural History

In 1966, Congress passed the Safety Act "to prescribe motor vehicle safety standards for motor vehicles and motor vehicle equipment in interstate commerce[.]" 49 U.S.C. § 30101(1). Under the Act, the Secretary of Transportation and, through the Secretary, the NHSTA, are authorized to promulgate the regulations necessary to carry out and enforce the Act. *See* 49 U.S.C. §§ 105(d), 322(a); 49 C.F.R. §§ 1.81(a)(3), 1.95(a) (2019).

The Regulation at issue in this case, 49 C.F.R. § 574.8, requires independent tire dealers to register with the manufacturer new tires sold to consumers by (1) physically giving the purchaser a paper copy of the tire registration form; (2) electronically transmitting the registration form to the purchaser within 30 days of the date of sale; or (3) providing the manufacturer with the paper tire registration form and the purchaser's contact information. *See* 49 C.F.R. § 574.8(a)(1)(i)-(iii).

The Safety Act provides "its own extensive array of administrative remedies for a violation of its notification obligations." *Ayres*, 234 F.3d at 522. For example, the Secretary may determine that a motor vehicle or a piece of a motor vehicle (such as a tire) is defective and either order the manufacturer to notify the owners of the defect or "take specified action." 49 U.S.C. §§ 30118(b), (e). Either the Secretary or "any interested person" may request a hearing to determine whether a "manufacturer has reasonably met the notification requirements under this section." *Id.* at § 30118(e). Finally, the Attorney General is authorized to bring civil actions

against dealers that violate the Safety Act's notification requirements with violations punishable by fines of up to $1,000 per violation and up to $800,000 for a series of related violations. 49 U.S.C. §§ 30163(a), 30165(a).

Defendant NTB is an independent tire dealer incorporated in Delaware with its principal place of business in Florida. NTB is a wholly-owned subsidiary of Defendant TBC. [DE 1 ¶¶ 12-14]. TBC is an independent tire dealer incorporated in Delaware with its principal place of business in Florida. [DE 1 ¶ 15]. NTB allegedly "maintains and operates more than 1200 locations in 41 states," the District of Columbia, and Canada. *Id.*

Plaintiffs Bruce Exum, Jr., and Emilie Palmer, both of Virginia, allegedly purchased tires from NTB in January, 2019. [DE 1 ¶¶ 42, 43]. But, according to the Complaint, NTB failed to provide either of them with a tire registration form or transmit their registration forms to the tire manufacturers, as required under 49 C.F.R. § 574.8. *Id.*

On January 29, 2019, Plaintiffs filed their Complaint against Defendants, asserting seven causes of action, all related to Defendants' alleged failure to comply with 49 C.F.R. § 574.8's tire registration requirement.[1] [DE 1]. Plaintiffs also sought certification of a class of similarly situated plaintiffs who all purchased allegedly unregistered tires from Defendants. [DE 49]. Defendants opposed Plaintiffs' motion to certify the class. [DE 50].

Defendants moved to dismiss the Complaint with prejudice.[2] [DE 30]. By Order dated January 28, 2020 [DE 84], the Court granted in part and denied in part the Motion to Dismiss,

---

[1] Plaintiffs asserted claims for breach of the implied warranty of merchantability under Virginia state law (Count I); violation of the Magnuson-Moss Warranty Act (Count II); violation of the Florida Deceptive and Unfair Trade Practices Act (Count III); unjust enrichment (Count IV); common law negligence (Count V); negligence per se (Count VI); and injunctive relief (Count VII).

[2] Defendants at that time sought to dismiss the putative class action with prejudice on four primary bases. First, Defendants asserted that Plaintiffs cannot establish Article III standing because they have failed to adequately allege that they suffered an injury in fact resulting from Defendants' alleged noncompliance with the Regulation. Second, Defendants argued that neither Congress nor any agency created a private right of action to enforce the Regulation

3

finding that (1) Plaintiffs had standing under Article III to bring this suit; (2) the lack of a private right of action in the Safety Act and the Regulation does not necessarily preclude Plaintiffs' claims; (3) Plaintiffs had alleged sufficient facts to support their claims; and (4) Plaintiffs had adequately pleaded Counts I, II, IV, V, and VI. Counts III and VII, however, were dismissed without prejudice.

The parties proceeded to discovery and engaged in substantial motion practice, *see* DEs 44, 48, 53, 60, 62, 63, 87.  Discovery activities included production by Defendants of nearly 3,000 documents, and depositions of the named Plaintiffs and three of Defendants' current or former employees, and a partial deposition under Fed. R. Civ. P. 30(b)(6). The parties participated in a mediation before Mediator Rodney Max. [DE 81].  The mediation took place on November 8, 2019, but was ultimately unsuccessful.  Litigation continued.  Then, on February 7, 2020, the parties filed a Stipulation of Settlement, notifying the Court that "the matter has been fully compromised and settled this day." [DE 89].  The Court entered an order staying the case and denying all pending motions as moot.

## II. The Settlement Class and the Settlement

In Plaintiffs' Unopposed Motion for Approval of Class Settlement and for Class Certification of Settlement Class [DE 95], Plaintiffs moved for class certification pursuant to Rules 23(a) and (b)(2), to be defined as:

> All persons in the United States and its territories who purchased a tire from Defendants or their company-owned subsidiaries during the Class Period for their personal use, rather than for resale or distribution, where Defendants did not provide them with a registration card, send in a card to the manufacturer for them, or electronically transmit their information to the tire manufacturer within 30 days of purchased. Excluded from this Class are

---

and accordingly it creates no duty on the part of independent tire dealers that Plaintiffs can enforce. Third, Defendants asserted that the Complaint contains mere conclusory allegations that Defendants have not complied with the Regulation. And fourth, Defendants asserted that each separate cause of action is deficient.

4

> Defendants' current or former officers, directors, employees, Defendants' parent entities, or any entity in which Defendants have a controlling interest; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

Plaintiffs also submitted to the Court the proposed Settlement Agreement [DE 95-2], where, generally, the Defendants have agreed to (1) change their tire-registration practices; (2) pay an incentive award of $7,500 to each of the two named class representatives; and (3) pay $645,000 in attorneys' fees and costs plus additional costs related to a second February 7, 2020 mediation between the parties. The primary paragraphs of the Settlement Agreement are as follows:

> (1) Defendants will include the following language on the receipt/Bill of Sale provided to consumers in connection with the purchase of tire-related goods or services: In accordance with Federal Regulations, TBC retains information related to tire sales, including the consumer's name and address, the tire identification number, and the dealer's name and address. In the event of a tire recall, TBC will provide such information to the tire manufacturer so that the tire manufacturer can send you notice of a recall. If you would prefer to register your tires directly with the manufacturer, please ask the store representative for a tire-registration card.
>
> (2) In an attempt to verify the information stored in Defendants' Tire Registration Database, when a consumer purchases tire related goods or services from a retail store operated by Defendants, the store associate interacting with the consumer will be instructed to check available records to determine whether one or more of the tires on the vehicle were purchased from Defendants. If so, the associate will be instructed to review the information contained in Defendants' Tire-Registration Database regarding the vehicle in question and, to the extent necessary, take steps to update such information."

[DE 95-2, at §§ 3.1, 3.2]

The Court preliminarily approved the Class Settlement and Certified the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b)(2). *See* [DE 98]. The Court preliminarily found that (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Class; (c) Plaintiffs' claims are typical of those of the Class; and (d) Plaintiffs will fairly and adequately protect the interests of the Class.

Additionally, after balancing the benefits of formal notice to the Settlement Class with

the risks and costs associated therewith, the Court declined to require formal notice. The Court found that, because the Settlement Class was so numerous and geographically disparate, the costs would deter the pursuit of class relief, which sought to remedy a violation of important federal consumer safety regulations. To that end, the Settlement Class contained more than one thousand customers each year, *see* [DE 49-1], during the Class Period, which began on January 29, 2014, and continues to this day.  Counsel represented that the costs associated with directing notice to each member of the class could exceed $1.00 per member. Despite the foregoing, the Court ensured that Notice of the Settlement Agreement fully complied with the Class Action Fairness Act, 28 U.S.C. §1715(b), and the parties provided notice to the U.S. Attorney General, the Florida Attorney General's Office, and any other necessary parties as required by law.

### III. The Objection

No party whose notification was required by the Class Action Fairness Act objected to any aspect of the Class Settlement or award of attorneys' fees. However, on June 19, 2020, Melissa Holyoak ("Holyoak"), a Senior Attorney with the Center for Class Action Fairness ("CCAF"), and an alleged member of the settlement class, filed an objection to the Class Settlement and award of attorneys' fees. [DE 103].

#### (a). Ms. Holyoak's False Statements to the Parties and to this Court:

Ms. Holyoak's **primary** argument in her Objection was that it was "legal error" for this Court to certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(2), because class members waived their claims for monetary damages in the Settlement. If this was an accurate statement and representation by Ms. Holyoak of the Settlement, then such an argument would be supported by caselaw; however, it is not accurate. Instead, Ms. Holyoak's statements and representations to the Court are patently false.

Section 6.1 of the Settlement clearly states that "Class Members are not releasing their claims, if any, for monetary damages." To claim otherwise, as Ms. Holyoak has done, is a material misrepresentation to the parties and this Court of the terms of the Settlement. The Court is especially troubled by Ms. Holyoak's misrepresentation, because her primary argument was based upon the false premise stated above. Indeed, it was forcefully argued to the Court in her objection on the very first page ("Introduction") of her Objection. It was made again, countless times, on pages 7, 8, 9, 10, and 11. It was reiterated and reemphasized later in her Objection, including on page 15.

It would have been obvious to Ms. Holyoak—indeed, to a first-year law student—that her strenuous objections were inapplicable had she simply taken the time to actually read the Settlement. This leaves the Court with several possibilities, including the following: 1) that she failed to actually read the Settlement before she filed her frivolous Objection; 2) that she filed her frivolous Objection without properly investigating her claims; 3) that she improperly used a cookie-cutter objection in this federal case; 4) that she knowingly and willfully made a false representation to the parties and this Court for purposes of obstruction, delay, or other improper purpose, or 5) some combination of the above.

When Class Counsel pointed out this blatant falsity, Ms. Holyoak's response, which was buried on page 7 of her Reply [DE 107], was to "withdraw my objection to the Rule 23(b)(2) aspect of class certification[,]" and attempt to justify it on a misreading of the Settlement Agreement. Ms. Holyoak appears to be quite cavalier regarding the serious and misleading nature of her false statements and representations, which have delayed and obstructed this case.

The Court notes that Ms. Holyoak is an attorney and member of the District of Columbia Bar. As such, she has ethical duties which she must adhere to when filing an objection or other

7

papers in this litigation. The Court is concerned that Ms. Holyoak may have intentionally attempted to mislead the parties and the Court on a material matter in a case of national importance, which impacts the safety of every man, woman, and child who travels on American roads. If not intentional, her conduct appears to be reckless or negligent.

Ms. Holyoak's false statements and representations in this case have unnecessarily delayed and prolonged this class action litigation and have caused the Court to expend additional scarce judicial resources during a time when society, and the courts, has been severely impacted by the COVID-19 pandemic.

### (b). Order to Show Cause to Ms. Holyoak:

Based upon the false statements and representations of Ms. Holyoak, the Court is considering imposing sanctions against Ms. Holyoak, pursuant to its inherent and supervisory authority, including but not limited to, an award of costs and attorney's fees against Ms. Holyoak.[3]

Accordingly, Melissa Holyoak shall Show Cause, on or before September 16, 2020, why this Court should not issue sanctions against her, including, but not limited to, her payment of Class Counsel's attorneys' fees, costs and expenses incurred while responding to Ms. Holyoak's false statements and representations at [DE 106]. The parties shall respond to Ms. Holyoak's

---

[3] While Ms. Holyoak is an attorney, she is allegedly proceeding *pro se* in the capacity of a purported class member. However, this status does not absolve her of her duty to not litigate in bad faith. *See Blanco GmbH±Co. KG v. Vlanco Indus*., LLC, 992 F. Supp. 2d 1225 (S.D. Fla. 2014) (a court may award attorney fees and costs as a sanction for bad-faith litigation pursuant to the court's inherent authority; invocation of this inherent power allows the Court to make the prevailing party whole for expenses caused by his opponent's obstinacy). Under its inherent power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc*., 501 U.S. 32, 45-46 (1991); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). "A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes*, 158 F.3d at 1214. Further, as an attorney and member of the Bar, she is required to comply with her ethical duties and is subject to sanctions pursuant to the Court's inherent and supervisory authority. In fact, her Objection was signed by her as an attorney and member of the District of Columbia Bar [DE 103, p.28]. Thus, she is subject to this Court's inherent and supervisory authority as both a party and attorney.

response to this Order to Show Cause on or before September 30, 2020, and Ms. Holyoak shall be permitted to reply on or before October 7, 2020.

### (c). Ms. Holyoak's Remaining Arguments in her Objection:

The Court now will address the remaining aspects of Ms. Holyoak's objection. In addition to the serious lack of Ms. Holyoak's credibility as a result of her false representations of the clear terms of the Settlement, "[t]he fact that the objections are asserted by a serial or 'professional' objector, however, may be relevant in determining the weight to accord the objection, as an objection carries more credibility if asserted to benefit the class and not merely to enrich the objector or her attorney." *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1104 (D. Kan. 2018). There is ample evidence to conclude Ms. Holyoak, and the CCAF, by whom she is employed, are of the "serial" variety. *In re Equifax Inc. Customer Data Sec. Breach Litig.* at *268 (admonishing the CCAF and listing numerous cases containing similar admonishments). Based on the foregoing, the Court could summarily reject the remaining arguments in Ms. Holyoak's Objection. Nonetheless, the Court will carefully analyze them, below.

Ms. Holyoak argues that the Settlement fails to produce any compensatory value for class members, while providing $645,000 for class counsel and $7,500 for each of the named representatives. She claims the Settlement requires cosmetic business practice changes that provide no value to class members. She takes issue with the fact that Defendants can still use the same allegedly defective database to register customers' contact information with tire manufacturers. While she acknowledges that the Settlement now requires Defendants to update returning customers' contact information in the database and to disclose on tire receipts that

9

customers can request a tire registration form, she believes that is not enough relief to justify the fee award.

Class Counsel responds that Ms. Holyoak ignores the valid reasons for the Court to approve the Settlement, which is fair, reasonable, adequate, and in the best interests of the Settlement Class. Class Counsel reject Ms. Holyoak's assertion that the injunctive relief, which assures substantive safety measures to consumers, is worthless. Class Counsel argue that the injunctive relief was hard won, beneficial, and should not be abandoned. Class Counsel argue that class members should not be left alone to try their individual cases based on an undetermined theory to prove standing and injury—Class Counsel emphasize that consumers driving on unregistered tires are subject to the imminent threat of injury or death.

The Court agrees with Class Counsel and overrules Ms. Holyoak's Objection. With the proposed changes to Defendants' sales practice under the Settlement, tire purchasers can be assured that the Defendants comply with the rule and tire manufacturers can reach them in the event of a recall. Without the Settlement, tire purchasers would not know if they could be reached by the tire manufacturers in the event of a tire recall or otherwise. Now, with the Settlement, consumers can conveniently confirm tire registration with the Defendants. Plaintiffs have achieved a significant change in Defendants' practice that will protect tens of thousands of drivers and their passengers, and perhaps even more than that, by making tire purchasers reachable by tire manufacturers in the event their tires are recalled. This is typical 23(b)(2) relief. The Settlement was the result of serious, arms' length negotiations—including multiple mediations spanning several days—between the parties, and achieves favorable outcomes for all involved.

The purpose behind class actions is to eliminate the potential for repetitious litigation and provide small claimants a means of obtaining redress for claims too small to justify individual litigation. By the same token, settlement is a means by which both sides—who are well aware of the weaknesses in their respective cases—may avoid the uncertainty of litigation, which is oftentimes a zero-sum game. If Plaintiffs elected not to settle, there is a possibility they may have lost in federal court. Certainly, here, standing and damages were difficult issues and not foregone conclusions—in fact, the United States District Court for the Eastern District of Pennsylvania has found that an individual tire purchaser lacked standing to sue in a substantially similar case. *See Thorne v. Pep Boys-Manny, Moe & Jack Inc*, 2020 WL 605876 (E.D. Pa. Feb. 7, 2020). Given the uncertainty of Plaintiffs' legal position, to question the benefits of this Settlement to members of the Settlement Class defies reason and common sense. It is telling that the sole objection to the Settlement came not from a definite Class Member, not from a governmental agency, but from a serial objector, whose very membership in the class is not firmly established.[4]

## IV. **FINAL APPROVAL**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement in a class action. *See* Fed. R. Civ. P. 23(e). This can involve "a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). The decision whether to approve a proposed class action is "committed to the sound discretion of the district court." *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, district courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that

---

[4] Ms. Holyoak asserts that she purchased tires from a "wholly-owned subsidiary of a [Defendant]." [DE 103-1]. But she provided no proof of purchase. More importantly, she does not allege that the tires were unregistered; instead, she merely stated that "I do not recall whether I was provided a tire registration card." *Id*.

compromise is the essence of settlement." *See Wm. Wrigley*, 2010 WL 2401149 at *2 n.1; *see also U.S. Oil*, 967 F.2d at 493 ("Public policy strongly favors the pretrial settlement of class action lawsuits."). This strong public policy is based on a recognition that complex class-action litigation like the instant case "can occupy a court's dockets for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *See U.S. Oil*, 967 F.2d at 493.

As the Court found in its Order dated April 6, 2020, Approving the Class Settlement and Granting Certification of the Settlement Class, Plaintiffs were, and remain, in full compliance with Rule 23, federal statutory law, and all applicable case law. *See* [DE 98]. The Court has held a final approval hearing, carefully considered and rejected the sole Objection, and now, ORDERS that:

1. Final Approval to the Class Action Settlement is GRANTED. The Court finds the Settlement to be fair, adequate, and reasonable.

2. The parties are ordered to comply with and abide by the terms of the Settlement [DE 95-2], which the Court incorporates into this Order.

3. The parties shall file a Joint Notice within seven days of the entry of this Order indicating whether they desire this Court to retain jurisdiction to interpret and enforce the terms of the Class Settlement.

4. The Application for Attorneys' Fees, Costs, and Incentive Awards remains GRANTED. [DEs 101, 102]. The Court Orders that Defendants shall pay $645,000.00 in attorneys' fees and litigation costs to Class Counsel, and a $7,500.00 incentive award to each of the named class representative plaintiffs. All

other payments and costs shall be borne as set forth in the Settlement Agreement or as agreed to by the parties.

5. The Objection of Melissa Holyoak to Proposed Settlement [DE 103] is hereby OVERRULED and DENIED.

6. Melissa Holyoak, Esq., shall Show Cause, on or before September 16, 2020, why this Court should not impose sanctions against her as discussed in Sections III(a) and (b) above for her false, material representations and statements made to the parties and this Court. Sanctions against Ms. Holyoak may include, but shall not be limited to, Class Counsel's attorneys' fees, costs and expenses incurred while responding [DE 106] to Ms. Holyoak's false statements and assertions. The parties shall respond to Ms. Holyoak's response on or before September 30, 2020, and Ms. Holyoak may reply on or before October 7, 2020.

**ORDERED and ADJUDGED** in chambers at West Palm Beach, Palm Beach County, Florida, this 1st day of September, 2020.

_William Matthewman_

WILLIAM MATTHEWMAN
United States Magistrate Judge

13